*19*

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

FEB 1 8 2003

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| BORDER CONTRACTORS, INC. | * | |
| | * | |
| VS. | * | Civil Action No. B-02-027 |
| | * | |
| GREAT AMERICAN INSURANCE | * | |
| COMPANY OF NEW YORK | * | |

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND
MEMORANDUM OF AUTHORITIES IN SUPPORT THEREOF**

Defendant Great American Insurance Company of New York ("Defendant" or "Great American") moves the Court for an order granting summary judgment as to all claims asserted by Plaintiff. In support, Great American shows the following:

**I.**

**FACTS**

The pleadings on file with the Court establish the following undisputed, material and dispositive facts. Plaintiff Border Construction, Inc. (hereinafter, "Border Construction" or "Plaintiff") and Great American entered into a contract for insurance, with the policy period from August 1, 2000 until August 1, 2001. *See* Plaintiff's Original Petition, Ex. 1; *see also* Affidavit of Bill Kozik In Support of Defendant's Motion for Summary Judgment ("Kozik Affidavit"), Ex. A (Inland Marine Policy Declarations and Endorsements), filed concurrently herewith. Included among the endorsements is a Businesspro General Endorsement entitled "Additional Policy Condition(s)," which states as follows (Kozik Affidavit, Ex. A at p.26):

> You agree to bring this equipment back to your yard during non-working hours or no coverage for theft or vandalism and malicious mischief applies during non-working hours.

In addition, a 2000 Caterpillar 446B Backhoe Loader (hereinafter, "Backhoe") was included among the Contractor's Equipment insured against theft under the contract. *See id.* at p.22.

Plaintiff alleges that, on or about July 12, 2001, its Backhoe was stolen "from a secure impoundment area." Plaintiff's Original Petition at 3.05. Thereafter, on July 13, 2001, Plaintiff made a claim for coverage under the insurance contract for the loss of the Backhoe. *See* Plaintiff's Original Petition at 3.06; *see also* Kozik Affidavit, Ex. B (correspondence denying claim). Upon receipt of Plaintiff's claim, Great American conducted an investigation into the circumstances of the theft of the Backhoe and determined that, contrary to the requirements of the contract, Plaintiff did not return the Backhoe to its yard during non-working hours. *See* Kozik Affidavit, Ex. B. Accordingly, Plaintiff's claim for coverage was denied. *See id.*

The language of the "Additional Policy Considerations" endorsement is clear and unambiguous. Plaintiff was required to bring the Backhoe back to its yard each night for storage. Plaintiff failed to do so, instead choosing to store the Backhoe at an onsite yard. Consequently, Plaintiff's claim for coverage under the insurance contract was denied. Moreover, Plaintiff has no evidence of any misrepresentation or breach of a duty by Defendant. Based on the foregoing, Defendant is entitled to summary judgment on all claims brought by Plaintiff in this action.

## II.

## LEGAL STANDARDS

To prevail on its motion for summary judgment, Great American must show from the evidence of record that there is "no genuine issue as to any material fact." Fed.R.Civ.Proc. 56(c). An alleged factual dispute will not defeat the motion unless it is genuine and material. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). Once the movant meets its burden of showing the absence of a factual dispute, the burden shifts to the non-movant to produce evidence or designate specific facts showing the existence of a genuine issue for trial. *See Allen v. Rapides Parish Sch. Bd.,* 204 F.3d 619, 621 (5th Cir. 2000); *see also Forsyth v. Barr,* 19 F.3d 1527 (5th Cir. 1994). A party resisting summary judgment may not rest upon mere allegations or denials within the pleadings. Where a party bears the burden of proof at trial, it must ". . . make a showing sufficient to establish the existence of each essential element to [its] case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).

The Plaintiff must present more than a scintilla of evidence to defeat a motion for summary judgment. This evidence must do more than create a metaphysical doubt. *See Matshushita Elec. Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 585-87 (1986). Rather, Border Construction must produce evidence upon which a jury could reasonably base a verdict in its favor. *See Anderson, supra,* 477 U.S. at 249. Unsubstantiated opinions and speculation do not suffice. *See Forsyth, supra.* These decisions establish that Border Construction, as the non-moving party, has an affirmative obligation to produce facts specifically showing a genuine issue for trial in a summary judgment

proceeding. Because Border Construction cannot meet this burden, Great American is entitled to summary judgment as a matter of law.

**III.**

**ANALYSIS**

**A.   PLAINTIFF'S BREACH OF CONTRACT CLAIM FAILS BECAUSE PLAINTIFF DID NOT FULLY PERFORM ITS OBLIGATIONS UNDER THE CONTRACT.**

In order to recover for breach of contract, Plaintiff must show (1) that Plaintiff and Defendant had an enforceable contract; (2) that Plaintiff performed, tendered performance, or was excused from performing its contractual obligations; (3) that Defendant breached the contract; and, (4) that Defendant's breach caused Plaintiff's injuries. *See Southwell v. University of the Incarnate Word*, 974 S.W.2d 351, 354-55 (Tex. App. – San Antonio 1998, pet. denied). In this case, the Court need only consider the second requirement – that Plaintiff must perform its contractual obligations, or, in other words, Plaintiff must not have breached the contract itself – in order to decide that Plaintiff cannot prevail on its claim for breach of contract.

**1.   The contract is clear on its face; accordingly, the Court need only consider the contract language.**

In determining the Plaintiff's obligations under the contract, the Court must consider the language of the contract. *See ITT Commercial Fin. Corp. v. Riehn*, 796 S.W.2d 248, 253 (Tex. App. – Dallas 1990, no writ) (court must examine the contract to determine what conduct is required of parties). It is well settled under Texas law that, where the contract is complete and unambiguous, extrinsic evidence is inadmissible to

vary, add to or contradict the terms of the agreement. *See Jackson v. Hernandez*, 285 S.W.2d 184, 190 (Tex. 1955). Moreover, if the Court concludes that language can be given a certain or definite meaning, the contract is not ambiguous. *See DeWitt Cty. Elec. Coop. Inc. v. Parks*, 1 S.W.3d 96, 100 (Tex. 1996).

In this case, the contract language could not be more clear. The applicable endorsement states that, with regard to Plaintiff, "You agree to bring this equipment back to your yard during non-working hours *or no coverage for theft* or vandalism and malicious mischief applies during non-working hours." *See* Kozik Affidavit, Ex. A at p.26 (emphasis added). In addition, there are no other provisions in the contract modifying this condition or promise. *See generally id.*

Because the contract is not ambiguous, the Court need not consider any evidence other than the language of the contract itself in order to ascertain Plaintiff's obligations. As stated in the contract, Plaintiff was obligated to bring its equipment back to its own yard during non-working hours.

### 2. Plaintiff breached the contract because it did not store its equipment at its own yard during non-working hours.

In this case, Plaintiff cannot recover from Defendant for breach of contract because Plaintiff has not fully performed its obligations under the contract. In other words, Plaintiff cannot recover for breach of contract because Plaintiff itself has breached the contract. *See ITT Commercial*, 796 S.W.2d at 253 n.3 (whether party breached contract is question of law for the court).

It matters not whether Plaintiff's obligation under the contract was a condition precedent or a dependent promise. *See, e.g., Harwell v. State Farm Mut. Auto Ins. Co.*, 896 S.W.2d 170, 173-74 (Tex. 1995) (insured's duty to give notice to insurer is condition precedent to the insurer's duty to perform). Under either scenario, Plaintiff failed to perform its obligation and, accordingly, Plaintiff's claim for breach of contract fails.

If Plaintiff's obligation to store the Backhoe at its own yard is a condition precedent to Defendant's obligation to perform the contract, Plaintiff must show that the condition is satisfied according to the exact terms of the contract. *See Regent Int'l Hotels, Ltd. v. Las Colinas Hotels Corp.*, 704 S.W.2d 101, 103-04 (Tex. App. – Dallas 1985, no writ). The Court may excuse nonperformance only if requiring Plaintiff to perform would cause extreme forfeit or penalty, or if the condition is not an essential part of the contract. *See Sammons Enters., Inc. v. Manley*, 540 S.W.2d 751, 755 (Tex. App. – Texarkana 1976, writ ref'd n.r.e.). Neither of these reasons for excusing nonperformance exist here.

If Plaintiff's obligation to store the Backhoe at its own yard is a dependent promise, Plaintiff must be ready, willing and must offer to perform its promise before it can recover for breach of contract. *See Perry v. Little*, 419 S.W.2d 198, 200-01 (Tex. 1967). In this case, Plaintiff cannot possibly perform the promise to keep the Backhoe at its own yard, as the Backhoe has already been stolen from another location.

Because Plaintiff did not fulfill its obligations under the insurance contract, Plaintiff cannot recover for breach of contract from Defendant. The unambiguous language of the contract defines Plaintiff's obligation to store its equipment at its own yard during non-working hours. As the contract provides, when equipment is not stored

at Plaintiff's yard during non-working hours, there is no coverage for theft during those non-working hours. Accordingly, Defendant is entitled to summary judgment on Plaintiff's claim for breach of contract.

**B.    PLAINTIFF'S CAUSE OF ACTION FOR BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING FAILS BECAUSE DEFENDANT HAD NO OBLIGATION TO PAY FOR PLAINTIFF'S LOSS UNDER THE CONTRACT.**

Similar to Plaintiff's claim for breach of contract, Plaintiff's claim for breach of the duty of good faith and fair dealing also fails. In order to prevail on a claim for breach of the duty of good faith and fair dealing, Plaintiff must prove that Defendant breached its duty of good faith and fair dealing by denying or delaying payment of a claim if Defendant knew or should have known that it was "reasonably clear" that the claim was covered by the insurance contract. *See Universe Life Ins. Co. v. Giles*, 950 S.W.2d 48, 54-56 (Tex.1997).[1] Moreover, where, as here, there is no conflict in the evidence, the Court may decide as a matter of law that Plaintiff has failed to meet its burden. *See id.* at 56; *see also Alvarado v. Old Republic Ins. Co.*, 951 S.W.2d 254, 264 (Tex. App. – Corpus Christi 1997) (applying standard set forth in *Universe Life*, court held no conflict in the evidence and affirmed the granting of summary judgment in defendant's favor).

"As a general rule there can be no claim for bad faith when an insurer has promptly denied a claim that is in fact not covered." *Republic Ins. Co. v. Stoker*, 903

---

[1] Plaintiff also alludes to a claim for unfair settlement practices, though not specifically mentioning the Texas Insurance Code, under which any such claim would be brought. If Plaintiff has stated a claim for unfair settlement practices, the requirements and Plaintiff's burden on claims under Insurance Code article 21.21, section 4(10)(a)(ii) (unfair settlement) are the same as the common law duty of good faith and fair dealing. *See Universe Life*, 950 S.W.2d at 55-56 (adopting standards under the insurance code as applicable to common law claim).

S.W.2d 338, 341 (Tex. 1995); *see also Bartlett v. John Hancock Mut. Life Ins. Co.*, 538 A.2d 997, 1000 (R.I. 1988) (cited with approval by Texas Supreme Court, "there can be no cause of action for an insurer's bad faith refusal to pay a claim until the insured first establishes that the insurer breached its duty under the contract of insurance.")   As previously established, Plaintiff's claim for theft of the Backhoe was not covered under the insurance contract.   The contract states that Plaintiff was required to store the Backhoe at its yard.   However, Plaintiff instead chose to store the Backhoe at the job site, thereby relieving Defendant of any obligation for theft during the non-working hours.  *See* Kozik Affidavit, Ex. A at p.26.  Accordingly, Defendant is entitled to summary judgment on Plaintiff's claim for breach of the duty of good faith and fair dealing.

## C.   PLAINTIFF HAS NO EVIDENCE TO SUPPORT ITS CLAIM FOR VIOLATION OF THE TEXAS DECEPTIVE PRACTICES – CONSUMER PROTECTION ACT

Plaintiff also attempts to state a claim for violation of the Texas Deceptive Practices – Consumer Protection Act, Business and Commerce Code section 17.46(b)(12), stating that Defendant misrepresented the rights and remedies of the insurance contract. *See* Plaintiff's Original Petition at 6.08.  In the alternative, Plaintiff claims that Defendant concealed relevant terms of the contract from Plaintiff *See id.*[2] In order to prevail on this claim, Plaintiff must prove (1) Plaintiff is a consumer; (2) Defendant can be sued under the DTPA; (3) Defendant committed a wrongful act by

---

[2]  Plaintiff also alleges that Defendant wrongfully failed and refused to honor Plaintiff's claim without reasonable justification.  This claim is the same as Plaintiff's claim for breach of the duty of good faith and fair dealing (see footnote 1, *supra*) and, accordingly, will not be reargued herein.

representing that the contract conferred or involved rights, remedies or obligations that it did not have or involve (*see* Tex. Bus. & Comm. Code § 17.46(b)(12) and Plaintiff's Original Petition at 6.08); and (4) Defendant's action was a producing cause of Plaintiff's injuries. *See* Tex. Bus. & Comm. Code §§ 17.45, 17.46(b)(12), 17.50.

In this case, even if Plaintiff is a proper consumer-plaintiff and Defendant is a proper defendant, there is no evidence to support a finding of misrepresentation regarding the contract rights, remedies or obligations. In a contract setting, Texas courts have held that, even where a defendant is found to have breached a contract, that breach alone does not amount to a misrepresentation within the meaning of the statute. *See, e,g., Crawford v. Ace Sign Inc.*, 917 S.W.2d 12, 14-15 (Tex. 1996) (defendants' non-performance under contract was not sufficient alone to prove misrepresentation that they would perform); *Holloway v. Dannenmaier*, 581 S.W.2d 765, 767 (Tex. App. – Fort Worth 1979, writ dism'd) (mere failure to perform under contract does not constitute misrepresentation within meaning of DTPA).

In *Holloway*, the court stated that, even if the defendant breached the contract, there was no allegation or proof that the defendant never intended to fulfill its obligations under the contract. *See Holloway* 581 S.W.2d at 767. Accordingly, there was no evidence of an actionable misrepresentation under the DTPA. Similarly in this case, Plaintiff has no evidence that Defendant never intended to perform under the contract. In fact, as previously discussed, Defendant did not breach the contract. Accordingly, Defendant is entitled to summary judgment on Plaintiff's claim for breach of the Deceptive Trade Practices – Consumer Protection Act.

## IV.

## <u>CONCLUSION</u>

There is no evidence that Plaintiff fulfilled its obligations under the insurance contract at issue in this case. Therefore, Plaintiff's claim for breach of contract fails. In addition, Plaintiff's claim for breach of the duty of good faith and fair dealing fails because Defendant was reasonable in denying Plaintiff's claim, given that Plaintiff had not complied with the terms of the contract. Finally, Plaintiff has no evidence to support its claim for violations of the Texas Deceptive Practices – Consumer Protection Act. Therefore, summary judgment should be granted in Defendant's favor on all claims.

Respectfully submitted,

Mitchell C. Chaney
Fed. No. 1918
State Bar No. 4107500
Teri L. Danish
Fed. No. 12862
State Bar No. 05375320
RODRIGUEZ, COLVIN & CHANEY, L.L.P.
1201 East Van Buren
Brownsville, Texas 78520
Telephone: (956) 542-7441
Telefax : (956) 541-2170

ATTORNEYS FOR DEFENDANT
GREAT AMERICAN INSURANCE

## CERTIFICATE OF SERVICE

I, Teri L. Danish, hereby certify that a true and correct copy of the foregoing document has been forwarded to the following counsel of record, by certified mail, return receipt requested on February _____10th_____, 2003.

Robert J. Banks
218 East Harrison Avenue
Harlingen, Texas 78550-9134

Teri L. Danish

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

BORDER CONTRACTORS, INC.          *

VS.                                *          Civil Action No. B-02-027

GREAT AMERICAN INSURANCE          *
COMPANY OF NEW YORK               *

### AFFIDAVIT OF BILL KOZIK
### IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

STATE OF TEXAS                    *          KNOW ALL MEN BY THESE

COUNTY OF DALLAS                  *          PRESENTS:

BEFORE ME, the undersigned authority, in the State of Texas, on this day personally appeared BILL KOZIK, known to me as the person whose name is subscribed to the foregoing Affidavit, and who, being by me first duly sworn, on his oath deposed and stated as follows:

"My name is BILL KOZIK. I am over 18 years of age and competent to make this affidavit.

"I am an underwriter with Great American Insurance, a defendant in the above referenced action. I have personal knowledge of the facts surrounding the insurance contract at issue in this case, as I am the underwriter who prepared the contract. Accordingly, attached hereto as "Exhibit A" is a true and correct copy of the Inland Marine Policy issued by Great American Insurance to Border Contractors, Inc., for the period from August 1, 2000 to August 1, 2001.

"Attached hereto as "Exhibit B" is a true and correct copy of correspondence from Great American Insurance to Border Contractors, Inc., acknowledging receipt of Border Contractor's claim for theft of a 2000 Cat 446 B Backhoe and denying that claim because Border Contractor did not store the Backhoe at its own yard, as required by the insurance contract. This correspondence is of the type that is normally generated in the regular course of business and was, in this case, generated in the regular course of business by Great American."

FURTHER AFFIANT SAYETH NAUGHT.

Executed this _24_ day of _January_, 2003.

_Bill Kozik_
BILL KOZIK

SUBSCRIBED AND SWORN TO BEFORE ME the undersigned authority, on this the _24_ day of _January_, 2003.

_Malaye M. Kinder_
Notary Public
State of Texas

Malaye M. Kinder
Notary Public, State of Texas
My Comm. Expires 03/07/06

18/29/2001  12:01   9564214680        BORDER CONTRACTOR~               PAGE  03

0102699

GREATAMERICAN®

ADMINISTRATIVE OFFICES
580 WALNUT STREET
CINCINNATI, OHIO 45202
TEL: 1-813-369-5000

CM 78 32 (Ed. 09 93)

Policy No.    TIM 927-36-04  - 03
Renewal Of    TIM 927-36-04  - 02

## TEXAS INLAND MARINE POLICY DECLARATIONS

NAMED INSURED BORDER CONTRACTORS, INC.

AND ADDRESS:  28226 DILWORTH ROAD
              HARLINGEN, TX 78582

| | |
|---|---|
| IN RETURN FOR PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY. | AGENT'S NAME AND ADDRESS: U.S. RISK BROKERS, INC. 10210 N.CENTRAL EXWY #500 DALLAS, TX 75231 3424 |

Insurance is afforded by the Company named below, a Capital Stock Corporation:
046 *Great American Insurance* AMERICAN NATIONAL FIRE INSURANCE COMPANY
*Co. (reg) ym²         8/1/00 to be written*
                        *4/2/01*

POLICY PERIOD:  From   08/01/2000 To   08/01/2001
12:01 A.M. Standard Time at the address of the Named Insured

BUSINESS DESCRIPTION:

| | Premium |
|---|---|
| This policy consists of the following Coverage part for which a premium is indicated. This premium may be subject to adjustment. | |
| Commercial Inland Marine Coverage Part | $7,641.00 |
| Total Provisional Premium | $7,641.00 |

Article 6.13 Policy a Liquidated Demand. A fire insurance policy, in case of a total loss by fire of property insured, shall be held and considered to be a liquidated demand against the Company for the full amount of such policy. The provisions of this Article shall not apply to personal property.

FORMS AND ENDORSEMENTS applicable to all Coverage Parts and made a part of this Policy at the time of issue are listed on the attached Forms and Endorsements Schedule CM 8801 11/85.

Countersigned _____        By _____
         Date                              Authorized Representative

CM7276H32 (Ed. 09/93) PRO        (Page 1 of 1)        DACIDSS

EXHIBIT
A

# IMPORTANT NOTICE
## (Texas)

### IMPORTANT NOTICE

To obtain information or make a complaint:

You may contact the Texas Department of Insurance to obtain information on companies, coverages, rights or complaints at:

### 1-800-252-3439

You may write the Texas Department of Insurance:

**P.O. BOX 149104**
**Austin, TX 78714-9104**
**FAX# (512)475-1771**

### PREMIUM OR CLAIM DISPUTES:
Should you have a dispute concerning your premium or about a claim you should contact the agent or the company first. If the dispute is not resolved, you may contact the Texas department of Insurance.

### ATTACH THIS NOTICE TO YOUR POLICY:
This notice is for information only and does not become a part or condition of the attached document.

---

### AVISO IMPORTANTE

Para obtener información o para someter una queja:

Puede comunicarse con el Departamento de Seguros de Texas para obtener información acerca de companias, coberturas, derechos o quejas al:

### 1-800-252-3439

Puede escribir al Departamento de Seguros de Texas:

**P.O. BOX 149104**
**Austin, TX 78714-9104**
**FAX# (512)475-1771**

### DISPUTAS SOBRE PRIMAS O RECLAMOS:
Si tiene una disputa concerniente a su prima o a un reclamo debe comunicarse con el agente o las compania primero. Si no se resuelve la disputa, puede entonces comunicarse con el Departamento de Seguros de Texas.

### UNA ESTE AVISO A SU POLIZA:
Este aviso es solo para proposito de información y no se convierte en parte o condicion del documento adjunto.

10/29/2001  12:01    9564214b68    BORDER CONTRACTO~    PAGE  05

## POLICYHOLDER NOTICE

### (Applicable to Commercial Inland Marine, Boiler and Machinery, and Crime Policies)

**NO COVERAGE IS PROVIDED BY THIS POLICYHOLDER NOTICE NOR CAN IT BE CONSTRUED TO REPLACE ANY PROVISION OF YOUR POLICY. YOU SHOULD READ YOUR POLICY AND REVIEW YOUR DECLARATIONS PAGE FOR COMPLETE INFORMATION ON THE COVERAGES YOU ARE PROVIDED. IF THERE IS ANY CONFLICT BETWEEN THE POLICY AND THIS SUMMARY, THE PROVISIONS OF THE POLICY SHALL PREVAIL.**

An exclusion has been added to your policy to explicitly state that coverage is not provided for loss caused by a computer's inability, or that of computerized or other electronic equipment, to properly recognize a particular date or time. An example of this is a loss caused by the inability of the computer to recognize the year 2000 (Y2K). However, coverage is provided under certain circumstances: if the computer's inability to recognize a date or time results in a covered cause of loss -- for example, fire -- the loss resulting from that fire will be covered.

SDM-329 (Ed. 04/98)

**GREAT AMERICAN INSURANCE COMPANIES**
Subsidiaries of American Financial Corporation
580 WALNUT STREET, CINCINNATI, OHIO 45202

IL 01 71
(Ed. 09 92)

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## TEXAS CHANGES - LOSS PAYMENT

This endorsement modifies insurance provided under the following:

BOILER AND MACHINERY COVERAGE PART
COMMERCIAL CRIME COVERAGE PART
FARM COVERAGE PART - LIVESTOCK COVERAGE FORM
FARM COVERAGE PART - MOBILE AGRICULTURAL MACHINERY
          AND EQUIPMENT COVERAGE FORM
COMMERCIAL INLAND MARINE COVERAGE PART

### A. LOSS PAYMENT

1. With respect to the **Boiler and Machinery Coverage Part** and **Commercial Crime Coverage Part**, the following conditions are added.

2. With respect to the **Commercial Inland Marine Coverage Part**, the following conditions replace Item E. LOSS PAYMENT in the Commercial Inland Marine Loss Conditions.

3. With respect to the **Farm Coverage Part**, the following conditions replace Paragraphs c. and f. of the Loss Payment Condition:

   a. claims handling

      (1) within 15 days after we receive written notice of claim, we will:

         (a) acknowledge receipt of the claim. If we do not acknowledge receipt of the claim in writing, we will keep a record of the date, method and content of the acknowledgement;

         (b) begin any investigation of the claim; and

         (c) request a signed, sworn proof of loss, specify the information you must provide and supply you with the

      necessary forms. We may request more information at a later date, if during the investigation of the claim such additional information is necessary.

      (2) we will notify you in writing as to whether:

         (a) the claim or part of the claim will be paid;

         (b) the claim or part of the claim has been denied, and inform you of the reason for denial;

         (c) more information is necessary; or

         (d) we need additional time to reach a decision. If we need additional time, we will inform you of the reasons for such need.

      We will provide notification, as described in (2)(a) through (2)(d) above, within:

         (i) 15 business days after we receive the signed, sworn proof of loss and all information we requested; or

         (ii) 30 days after we receive the signed, sworn proof of loss and all information we re-

Copyright, Insurance Services Office, Inc., 1992
(Page 1 of 2)

IL 01 71 (Ed. 09/92) XS

10/29/2001  12:01    9564214od8           0102099         BORDER CONTRACTORS                    PAGE  07

quested, if we have reason to believe the loss resulted from arson.

If we have notified you that we need additional time to reach a decision, we must then either approve or deny the claim within 45 days of such notice.

b.  we will pay for covered loss or damage within 5 business days after:

(1)  we have notified you that payment of the claim or part of the claim will be made and have reached agreement with you on the amount of loss; or

(2)  an appraisal award has been made.

However, if payment of the claim or part of the claim is conditioned on your compliance with any of the terms of this policy, we will make payment within 5 business days after the date you have complied with such terms.

c.  Catastrophe Claims

If a claim results from a weather related catastrophe or a major natural disaster, the claim handling and claim payment deadlines described in a. and b. above are extended for an additional 15 days.

Catastrophe or Major Natural Disaster means a weather related event which is:

(1)  declared a disaster under the Texas Disaster Act of 1975; or

(2)  determined to be a catastrophe by the State Board of Insurance.

d.  The term "business day," as used in this endorsement, means a day other than Saturday, Sunday or holiday recognized by the state of Texas.

B.  With respect to the Commercial Inland Marine Coverage Part the following is added:

We will not be liable for any part of a "loss" that has been paid or made good by others.

Copyright, Insurance Services Office, Inc., 1992
(Page 2 of 2)

IL 01 71 (Ed. 09/92) XS

10/29/2001  12:01    956421~~0          BORDER CONTRACTO~~          PAGE  88
                              0102699



GREAT AMERICAN INSURANCE COMPANIES
Subsidiaries of American Financial Corporation
580 WALNUT STREET, CINCINNATI, OHIO 45202

IL 02 88
(Ed. 11 '92)

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### TEXAS CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

BOILER AND MACHINERY COVERAGE PART
COMMERCIAL CRIME COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART

A.  The following is added to paragraph 2. of the CANCELLATION Common Policy Condition:

We may cancel this policy for any reason except, that under the Texas Insurance Code, we may not cancel this policy solely because the first Named Insured is an elected official.

B.  The following condition is added:

NONRENEWAL

We may elect not to renew this policy except, that under the Texas Insurance Code, we may not refuse to renew this policy solely because the first Named Insured is an elected official.

Copyright, Insurance Services Office, Inc., 1992

IL 02 88 (Ed. 11/92) XS

0102699

**GREAT AMERICAN INSURANCE COMPANIES** ●
Subsidiaries of American Financial Corporation
580 WALNUT STREET, CINCINNATI, OHIO 45202

IL 09 35
(Ed. 08 98)

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## EXCLUSION OF CERTAIN COMPUTER-RELATED LOSSES

This endorsement modifies insurance provided under the following:

    BOILER AND MACHINERY COVERAGE PART
    COMMERCIAL CRIME COVERAGE PART
    COMMERCIAL INLAND MARINE COVERAGE PART
    COMMERCIAL PROPERTY COVERAGE PART
    STANDARD PROPERTY POLICY

A. We will not pay for the ("loss") or damage caused directly or indirectly by the following. Such loss ("loss") or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss ("loss") or damage.

  1. The failure, malfunction or inadequacy of:

    a. any of the following, whether belonging to any insured or to others:

      (1) computer hardware, including microprocessors;

      (2) computer application software;

      (3) computer operating systems and related software;

      (4) computer networks;

      (5) microprocessors (computer chips) not part of any computer system; or

      (6) any other computerized or electronic equipment or components; or

    b. any other products, and any services, data or functions that directly or indirectly use or rely upon, in any manner, any of the items listed in Paragraph A.1.a. of this endorsement;

  due to the inability to correctly recognize, process, distinguish, interpret or accept one or more dates or times. An example is the inability of computer software to recognize the year 2000.

2. Any advice, consultation, design, evaluation, inspection, installation, maintenance, repair, replacement or supervision provided or done by you or for you to determine, rectify or test for, any potential or actual problems described in Paragraph A.1. of this endorsement.

B. If an excluded Cause of Loss as described in Paragraph A. of this endorsement results:

  1. in a Covered Cause of Loss under the Boiler And Machinery Coverage Part, the Commercial Crime Coverage Part, the Commercial Inland Marine Coverage Part or the Standard Property Policy; or

  2. under the Commercial Property Coverage Part:

    a. in a "Specified Cause of Loss," or in elevator collision resulting from mechanical breakdown, under the Causes of Loss – Special Form; or

    b. in a Covered Cause of Loss under the Causes of Loss – Basic Form or the Causes of Loss – Broad Form;

  we will pay only for the loss ("loss") or damage caused by such "Specified Cause of Loss," elevator collision, or Covered Cause of Loss.

C. We will not pay for repair, replacement or modification of any items in Paragraph A.1.a. and A.1.b. of this endorsement to correct any deficiences or change any features.

Copyright, Insurance Services Office, Inc., 1998

IL 09 35 (Ed. 08/98) XS



**GREAT AMERICAN INSURANCE COMPANIES**
Subsidiaries of American Financial Corporation
580 WALNUT STREET, CINCINNATI, OHIO 45202

IL 00 17
(Ed. 11 98)

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. CANCELLATION

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. CHANGES

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made part of this policy.

## C. EXAMINATION OF YOUR BOOKS AND RECORDS

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. INSPECTIONS AND SURVEYS

1. We have the right to:

   a. make inspections and surveys at any time;

   b. give you reports on the conditions we find; and

   c. recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. are safe or healthful; or

   b. comply with laws, regulations, codes or standards.

3. Paragraphs 1. and 2. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph 2. of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative

Copyright, Insurance Services Office, Inc. 1998
(Page 1 of 2)

10/29/2001  12:01     956421~~88               BORDER CONTRACTORS                      PAGE  11

0102699

to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. PREMIUMS

The first Named Insured shown in the Declarations:

1.  is responsible for the payment of all premiums; and

2.  will be the payee for any return premiums we pay.

## F. TRANSFER OF YOUR RIGHTS AND DUTIES UNDER THIS POLICY

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual Named Insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

IN WITNESS WHEREOF, we have caused this policy to be executed and attested, and, if required by state law, this policy shall not be valid unless countersigned by our authorized representative.

*Kenn Holley Howell*
Secretary

*Carl H. Lindner III*
President

Copyright, Insurance Services Office, Inc. 1998
(Page 2 of 2)

IL 0017 (Ed. 11/98) XS

10/29/2001  12:01   9564214680          BORDER CONTRACTORS          PAGE  12
                          0102699

**GREAT AMERICAN INSURANCE COMPANIES**          CM 88 01   (Ed. 11/85)
Subsidiaries of American Financial Corporation
580 WALNUT STREET, CINCINNATI, OHIO 45202          Policy:TIM 927-36-04   03

## BUSINESSPRO FORMS AND ENDORSEMENTS SCHEDULE

It is hereby understood and agreed the following forms and endorsements are
attached to and are a part of this policy:

|  | Form and Edition | Date Added* or Date Deleted | Form Description |
|---|---|---|---|
| 1. | CM0001   06/95 | | COMMON INLAND MARINE CONDITIONS |
| 2. | CM0112   10/90 | | TEXAS CHANGES |
| 3. | CM7632   09/93 | | TEXAS IM COMMON DEC |
| 4. | CM7644   12/91 | | CONTR EQUIP DEC SCHEDULED FORM |
| 5. | CM7645   12/91 | | CONTR EQUIP SCHEDULED COV FORM |
| 6. | CM7870   06/92 | | CATERPILLAR FINANCIAL SERVICES |
| 7. | CM7870   06/92 | | FINANCIAL FEDERAL CREDIT, |
| 8. | CM7870   06/92 | | NUECES POWER EQUIPMENT |
| 9. | CM7879   10/92 | | FINANCIAL FEDERAL CREDIT |
| 10. | CM8802   11/85 | | ADDITIONAL POLICY CONDITION(S) |
| 11. | IL0017   11/98 | | COMMON POLICY CONDITIONS |
| 12. | IL0171   09/92 | | TEXAS CHANGES - LOSS PAYMENTS |
| 13. | IL0288   11/92 | | TEXAS CHANGES - CANC/NONRENEW |
| 14. | IL0935   08/98 | | EXCL - CERTAIN COMPUTER REL LOSSES |

* IF NOT AT INCEPTION

CM 88 01   11/85          (Page  1 of  1)



GREAT AMERICAN INSURANCE COMPANIES
Subsidiaries of American Financial Corporation
580 WALNUT STREET, CINCINNATI, OHIO 45202

CM 00 01
(Ed. 06 95)

# COMMERCIAL INLAND MARINE CONDITIONS

The following conditions apply in addition to the Common Policy Conditions and applicable Additional Conditions in Commercial Inland Marine Coverage Forms:

## LOSS CONDITIONS

### A. ABANDONMENT

There can be no abandonment of any property to us.

### B. APPRAISAL

If we and you disagree on the value of the property or the amount of "loss, " either may make written demand for an appraisal of the "loss." In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of "loss." If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

1. pay its chosen appraiser; and

2. bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

### C. DUTIES IN THE EVENT OF LOSS

You must see that the following are done in the event of "loss" to Covered Property:

1. Notify the police if a law may have been broken.

2. Give us prompt notice of the "loss." Include a description of the property involved.

3. As soon as possible, give us a description of how, when and where the "loss" occurred.

4. Take all reasonable steps to protect the Covered Property from further damage and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limit of Insurance. However, we will not pay for any subsequent "loss" resulting from a cause of loss that is not a Covered Cause of Loss. Also if feasible, set the damaged property aside and in the best possible order for examination.

5. Make no statement that will assume any obligation or admit any liability, for any "loss" for which we may be liable, without our consent.

6. Permit us to inspect the property and records proving "loss."

7. If requested, permit us to question you under oath, at such times as may be reasonably required, about any matter relating to this insurance or your claim, including your books and records. In such event, your answers must be signed.

8. Send us a signed, sworn statement of "loss" containing the information we request to settle the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

9. Promptly send us any legal papers or notices received concerning the "loss."

10. Cooperate with us in the investigation or settlement of the claim.

### D. INSURANCE UNDER TWO OR MORE COVERAGES

If two or more of this policy's coverages apply to the same "loss," we will not pay more than the actual amount of the "loss."

Copyright, Insurance Services Office, Inc., 1994
(Page 1 of 3)

CM 00 01 (Ed. 06/95) XS

## E. LOSS PAYMENT

We will pay or make good any "loss" covered under this Coverage Part within 30 days after:

1. we reach agreement with you;

2. the entry of final judgment; or

3. the filing of an appraisal award

We will not be liable for any part of a "loss" that has been paid or made good by others.

## F. OTHER INSURANCE

If you have other Insurance covering the same "loss" as the Insurance under this Coverage Part, we will pay only the excess over what you should have received from the other Insurance. We will pay the excess whether you can collect on the other insurance or not.

## G. PAIR, SETS OR PARTS

1. Pair or Set. In case of "loss" to any part of a pair or set we may:

    a. repair or replace any part to restore the pair or set to its value before the "loss"; or

    b. pay the difference between the value of the pair or set before and after the "loss."

2. Parts. In case of "loss" to any part of Covered Property consisting of several parts when complete, we will only pay for the value of the lost or damaged part.

## H. PRIVILEGE TO ADJUST WITH OWNER

In the event of "loss" involving property of others In your care, custody or control, we have the right to :

1. Settle the "loss" with the owners of the property. A receipt for payment from the owners of that property will satisfy any claim of yours.

2. Provide a defense for legal proceedings brought against you. If provided, the expense of this defense will be at our cost and will not reduce the applicable Limit of Insurance under this insurance.

## I. RECOVERIES

Any recovery or salvage on a "loss" will accrue entirely to our benefit until the sum paid by us has been made up.

## J. REINSTATEMENT OF LIMIT AFTER LOSS

The Limit of Insurance will not be reduced by the payment of any claim, except for total "loss" of a scheduled item, in which event we will refund the unearned premium on that item.

## K. TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US

If any person or organization to or for whom we make payment under this insurance has rights to recover damages from another, those rights are transferred to us to the extent of our payment. That person or organization must do everything necessary to secure our rights and must do nothing after "loss" to impair them.

## GENERAL CONDITIONS

## A. CONCEALMENT, MISREPRESENTATION OR FRAUD

This Coverage Part is void in any case of fraud, intentional concealment or misrepresentation of a material fact, by you or any other Insured, at any time, concerning:

1. this Coverage Part;

2. the Covered Property;

3. your interest in the Covered Property; or

4. a claim under this Coverage Part

## B. LEGAL ACTION AGAINST US

No one may bring a legal action against us under this Coverage Part unless:

Copyright, Insurance Services Office, Inc. 1994
(Page 2 of 3)

18/29/2001 12:01    9564214680    BORDER CONTRACTORS    PAGE 15
0102699

1. there has been full compliance with all the terms of this Coverage Part; and

2. the action is brought within 2 years after you first have knowledge of the "loss."

## C. NO BENEFIT TO BAILEE

No person or organization, other than you, having custody of Coverage Property, will benefit from this insurance.

## D. POLICY PERIOD

We cover "loss" commencing during the policy period shown in the Declarations.

## E. VALUATION

The value of property will be the least of the following amounts:

1. the actual cash value of that property;

2. the cost of reasonably restoring that property to its condition immediately before "loss"; or

3. the cost of replacing that property with substantially identical property.

In the event of "loss," the value of property will be determined as of the time of "loss."

Copyright, Insurance Services Office, Inc., 1994
(Page 3 of 3)

CM 00 01 (Ed. 06/95) XS

10/29/2001  12:01   9564214680                    BORDER CONTRACTORS              PAGE  16
                                      0102699
GREAT AMERICAN INSURANCE COMPANIES                            CM 76 44   (Ed. 12/91)
Subsidiaries of American Financial Corporation
580 WALNUT STREET, CINCINNATI, OHIO 45202
                                                              Policy:TIM 927-36-04  03

## CONTRACTOR'S EQUIPMENT DECLARATIONS
## SCHEDULED FORM

| NAMED INSURED: BORDER CONTRACTORS, INC. | POLICY PERIOD: 08/01/2000 to 08/01/2001 |
|---|---|

| PREMIUM FOR THIS COVERAGE FORM | $ | 7,641.00 |
|---|---|---|

LIMITS OF INSURANCE
The most we will pay is:
     $611,245 in any one "loss" but not more than the limit of insurance
shown opposite each item described below or in the schedule attached.

### SCHEDULE OF COVERED PROPERTY

| ITEM NO. | DESCRIPTION | LIMIT OF INSURANCE | R.C. |
|---|---|---|---|
| 0001 | CATERPILLAR 426C. SN-8XN01663. | $50,000 | |
| 0002 | 1999 CATERPILLAR BACKHOE LOADER, MODEL #446B; SN-5BL01944. | $93,821 | |
| 0003 | CATERPILLAR MODEL 950E WHEEL LOADER, SN-22Z4612 | $58,800 | |
| 0004 | (2) CALDWELL TEA-CUP PIPE CARRIER W/SLINGS MOD PC-1     VALUED AT $1,000. EACH | $2,000 | |
| 0005 | (1) HONDA WATER PUMP SN-W2BF1102679 | $600 | |
| 0006 | (1) HONDA WATER PUMP SN-WZBE1187318 | $600 | |
| 0007 | (1) HONDA GENERATOR SN-3MN005 | $1,200 | |
| 0008 | (1) DEWALT SKILLSAW SN-DW362160145 | $150 | |
| 0009 | 1999 C3902X GME TRENCH BOX MODEL-N-816; SN-9902181-2 | $12,000 | |
| 0010 | 1999 C3542X TRENCH BOX MODEL 820DW; SN-98081189-2 | $12,000 | |
| 0011 | 1989 CATERPILLAR 966E WHEEL/LOADER, SN-99Y6701 | $80,657 | |
| 0012 | 2000 LINKBELT MODEL 4300Q HYDRAULIC EXCAVATOR, SN-LE2J0-3448 | $196,750 | |
| 0013 | 2000 CATERPILLAR 446B BACKHOE LOADER, SN-5BL02169 | $102,667 | |

DEDUCTIBLE
 The deductible amount indicated by (X)
 ( )      % of the amount of insurance on the insured item(s) lost or
 damaged but not less than
 (X) $        $1,000      ( ) see endorsement attached

| CM 76 44    12/91 | (Page  1 of  2 ) |
|---|---|

10/29/2001  12:01   9564214680                    BORDER CONTRACTORS                    PAGE  17
                            0102699

GREAT AMERICAN INSURANCE COMPANIES
Subsidiaries of American Financial Corporation
580 WALNUT STREET, CINCINNATI, OHIO 45202

CM 76 44   (Ed. 12/91)

Policy:TIM 927-38-04   03

## CONTRACTOR'S EQUIPMENT DECLARATIONS
## SCHEDULED FORM

FORMS AND ENDORSEMENTS applying to this Coverage Part and made part of this Policy at time of issue:
SEE   CM 88 01   11/85

CM 76 44      12/91                    (Page  2 of  2 )

10/29/2001  12:01   9564214680        0102699      BORDER CONTRACTOR              PAGE  19

**GREAT AMERICAN INSURANCE COMPANIES**
Subsidiaries of American Financial Corporation
580 WALNUT STREET, CINCINNATI, OHIO 45202

CM 76 45
(Ed. 12 91)

# CONTRACTOR'S EQUIPMENT

## SCHEDULED COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is or is not covered.

Throughout this policy, the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we," "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to paragraphs headed DEFINITIONS.

A. **COVERAGE**

We will pay for "loss" to Covered Property from any of the Covered Causes of Loss.

1. **Covered Property**, as used in this Coverage Form means:

   a. your contractor's equipment and tools;

   b. similar property of others in your care, custody or control;

   described in the Declarations.

2. **Property Not Covered**

   Covered Property does not mean:

   a. property while loaned, leased or rented to others, unless you provide the operator;

   b. blue prints, mechanical drawings, plans or specifications;

   c. tires and tubes, unless "loss" is coincidental with other covered "loss;"

   d. aircraft, watercraft, motor vehicles designed for transporting passengers or freight over the highway;

   e. equipment or tools while waterborne, unless Covered Property is on regular ferries or railroad carfloats;

   f. property while underground or underwater;

   g. contraband, or property in the course of illegal transportation or trade.

3. **Covered Causes of Loss**

   Covered Causes of Loss means Risks of Direct Physical "Loss" to the Covered Property except those causes of "loss" listed in the Exclusions.

4. **Coverage Extension**

   a. **Debris Removal**

      (1) We will pay your expense to remove debris of Covered Property caused by or resulting from an insured peril that occurs during the policy period. The expenses will be paid only if they are reported to us within 180 days of the earlier of:

         (a) The date of direct physical loss or damage; or

         (b) The end of the policy period

      (2) The most we will pay under this coverage is the lesser of:

         (a) 25% of the applicable Limit of Insurance for direct physical loss to Covered Property; or

         (b) $25,000.

         The limit of Debris Removal is separate from the Limit of Insurance stated elsewhere in the policy.

         The Coinsurance provision, if any, in this policy does not apply to this additional coverage.

      (3) The additional coverage does not apply to cost to:

         (a) Extract "pollutants" from land or water; or

         (b) Remove, restore or replace polluted land or water.

   b. **Additionally Acquired Property**

      We will insure additional equipment items similar to those scheduled, which you buy or lease "long term," but not beyond:

      (1) 30 days; or

      (2) the end of the policy period

      whichever occurs first.

      The most we will pay in a "loss" under this Coverage Extension is the lesser of:

      (1) 25% of the policy loss limits; or

      (2) $150,000

      You must report these items to us within thirty (30) days after you obtain them. Premium will be charged from the date of acquisition. If you fail to report new items within the thirty (30) day period coverage will end automatically at the earlier of:

      (1) 30 days after the date you acquire the property; or

(2)  the end of the policy period.

The Coinsurance Additional Condition does not apply to this Coverage Extension.

This extension of coverage applies only to equipment which you buy or lease on a "long term" basis.

## B.  EXCLUSIONS

1.  We will not pay for a "loss" caused directly or indirectly by any of the following. Such "loss" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the "loss."

   a.  **Governmental Action**

   Seizure or destruction of property by order of governmental authority.

   But we will pay for acts of destruction ordered by governmental authority and taken at the time of a fire to prevent its spread if the fire would be covered under this Coverage Form.

   b.  **Nuclear Hazard**

   (1)  any weapon employing atomic fission or fusion, or

   (2)  nuclear reaction or radiation, or radioactive contamination from any other cause. But we will pay for direct "loss" caused by resulting fire if the fire would be covered under this Coverage Form.

   c.  **War and Military Action**

   (1)  war, including undeclared or civil war;

   (2)  warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

   (3)  insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.

2.  We will not pay for a "loss" caused by or resulting from any of the following:

   a.  Delay, loss of use, loss of market or any other consequential loss.

   b.  Dishonest acts by:

   (1)  You, your employees or authorized representatives;

   (2)  Anyone else with an interest in the property, or their employees or authorized representatives;

   (3)  Anyone else (other than a "carrier" for hire) to whom you entrust the property.

   This exclusion applies whether or not such persons are acting alone or in collusion with other persons or such acts occur during the hours of employment.

CM 76 45 (Ed. 12/91) XS                        (Page 3 of 5)

c.  Unexplained disappearance or shortage found upon taking inventory.

d.  Artificially generated current creating a short circuit or other electric disturbance within Covered Property.

But, we will pay for "loss" caused by resulting fire or explosion.

e.  Processing or any work upon property covered.

But, we will pay for "loss" caused by resulting fire or explosion.

f.  The weight of the load exceeding the lifting capacity of any equipment. Such lifting capacity shall be stated in the manufacturer's operating specifications for the operating conditions existing at the time of "loss."

3.  We will not pay for a "loss" caused by or resulting from any of the following. But if "loss" by a Covered Cause of Loss results, we will pay for that resulting "loss."

a.  Gradual deterioration, hidden or latent defects, any quality in the property that causes it to damage or destroy itself, wear and tear, depreciation, corrosion, rust, dampness, cold or heat.

b.  Mechanical breakdown or failure of Covered Property.

## C.  DEDUCTIBLE

We will pay the amount of the adjusted "loss" in any one occurrence in excess of the Deductible amount shown in the Declarations, up to the applicable Limit of Insurance.

## D.  ADDITIONAL CONDITIONS

The following conditions apply in addition to the Commercial Inland Marine Conditions and Common Policy Conditions:

1.  Coverage Territory

We cover property within:

a.  the states of the United States (excluding Alaska);

b.  Canada.

2.  Coinsurance

You must carry sufficient insurance in order to avoid a penalty at the time of "loss." We will pay only the proportion of any "loss" that the applicable Limits of Insurance in the Schedule bears to 80% of the actual cash value of the item(s) involved at the time of "loss." Our payments won't exceed the Limit of Insurance shown in the Schedule for the item.

3.  Impairment of Rights of Recovery

If you agree before or after a "loss" to waive your rights of recovery against any person or organization responsible for the "loss," we shall not cover your "loss." Nor shall we cover a "loss" when you settle or compromise with others without our consent.

CM 76 45 (Ed. 12/91) XS                    (Page 4 of 5)

### E.  DEFINITIONS

"Loss" means accidental loss or damage.

"Carrier" means a person or organization who provides motor, rail or air transportation for compensation.

"Long term" means twelve (12) consecutive months or more.

"Pollutant" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

10/29/2001  12:01   9564214600                      BORDER CONTRACTORS                    PAGE  23

                                         0102099
**Great American Insurance Companies**
Subsidiaries of American Financial Corporation          CM 78 70   (Ed.06/92)
580 Walnut Street, Cincinnati, Ohio 45202

                                                   Policy: TIM 927-36-04  03

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### LOSS PAYABLE PROVISIONS

### This applies to coverage for Inland Marine CONTRACTOR'S EQUIPMENT

| NAME: | CATERPILLAR FINANCIAL SERVICES |
| | CORPORATION |
| ADDRESS: | 4975 PRESTON PARK, STE 280 |
| | PLANO, TX  75093 |

Applies to the following listed items only:

| Item No. | Description | Limit of Insurance |
|---|---|---|
| 0001 | CATERPILLAR 426C, SN-8XN01663. | $50,000 |
| 0002 | 1999 CATERPILLAR BACKHOE LOADER, MODEL #446B; SN-5BL01944. | $93,821 |
| 0011 | 1989 CATERPILLAR 966E WHEEL/LOADER, SN-99Y6701 | $80,657 |
| 0013 | 2000 CATERPILLAR 446B BACKHOE LOADER, SN-5BL02169 | $102,667 |

LOSS PAYABLE

For Covered Property in which both you and a Loss Payee shown above have
an insurable interest, we will:

1.   adjust losses with you; and

2.   pay any claim for loss or damage jointly to you and the Loss Payee, as
     interest may appear.

OTHER TERMS REMAIN THE SAME

CM 78 70      06/92              (Page  1 of  1 )

10/29/2001  12:01    9564214680                                BORDER CONTRACTORS                        PAGE  24
                                                      0102699
                                                                                    CM 78 70    (Ed. 06/92)

Great American Insurance Companies
Subsidiaries of American Financial Corporation
580 Walnut Street, Cincinnati, Ohio 45202

Policy: TIM 927-38-04  03

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## LOSS PAYABLE PROVISIONS

## This applies to coverage for Inland Marine CONTRACTOR'S EQUIPMENT

NAME:    FINANCIAL FEDERAL CREDIT,
              INC.
ADDRESS: 1300 POST OAK BLVD., STE 1300
              HOUSTON, TX

Applies to the following listed items only:

| Item No. | Description | Limit of Insurance |
|---|---|---|
| 0003 | CATERPILLAR MODEL 950E WHEEL LOADER, SN-2224512 | $58,800 |
| 0012 | 2000 LINKBELT MODEL 4300Q HYDRAULIC EXCAVATOR, SN-LE2J0-3448 | $196,750 |

LOSS PAYABLE

For Covered Property in which both you and a Loss Payee shown above have an insurable interest, we will:

1.    adjust losses with you; and

2.    pay any claim for loss or damage jointly to you and the Loss Payee, as interest may appear.

OTHER TERMS REMAIN THE SAME

CM 78 70        06/92                (Page  1 of  1 )

Great American Insurance Companies
Subsidiaries of American Financial Corporation
580 Walnut Street, Cincinnati, Ohio 45202

0102899

CM 78 70    (Ed. 06/92)

Policy: TIM 927-36-04  03

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## LOSS PAYABLE PROVISIONS

## This applies to coverage for Inland Marine CONTRACTOR'S EQUIPMENT

NAME:  NUECES POWER EQUIPMENT

ADDRESS: P. O. BOX 4789
         CORPUS CHRISTI, TX  78469

Applies to the following listed items only:

| Item No. | Description | Limit of Insurance |
|---|---|---|
| 0009 | 1999 C3902X GME TRENCH BOX MODEL-N-816; SN-9902181-2 | $12,000 |
| 0010 | 1899 C3542X TRENCH BOX MODEL 820DW; SN-98081189-2 | $12,000 |

## LOSS PAYABLE

For Covered Property in which both you and a Loss Payee shown above have an insurable interest, we will:

1.  adjust losses with you; and

2.  pay any claim for loss or damage jointly to you and the Loss Payee, as interest may appear.

### OTHER TERMS REMAIN THE SAME

10/29/2001  12:01   9564214688               BORDER CONTRACTORS                  PAGE  26
                                        0102699

**GREAT AMERICAN INSURANCE COMPANIES**
Subsidiaries of American Financial Corporation
580 WALNUT STREET, CINCINNATI, OHIO 45202

CM 78 79
(Ed. 10 92)

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### ADDITIONAL INSURED
This applies to coverage for Inland Marine CONTRACTOR'S EQUIPMENT

Name:    FINANCIAL FEDERAL CREDIT

Address: 1300 POST OAK BLVD., STE 1300
         HOUSTON                      TX 77056

Attention:

Applies to any Covered Property in which the above Additional Insured
has an interest.

ADDITIONAL INSURED

For Covered Property in which both you and an Additional Insured
shown above have an insurable interest, we will:

1.   adjust losses with you; and

2.   pay any claim for loss or damage jointly to you and the Additional
     Insured, as interest may appear.

Other Terms Remain The Same

CM 78 79 (Ed. 10/82) PRO              (Page 1 of 1)

0102899

GREAT AMERICAN INSURANCE COMPANIES
Subsidiaries of American Financial Corporation
580 WALNUT STREET, CINCINNATI, OHIO 45202

CM 88 02 (Ed. 11 85)

## BUSINESSPRO GENERAL ENDORSEMENT

### ADDITIONAL POLICY CONDITION(S)

YOU AGREE TO BRING THIS EQUIPMENT BACK TO YOUR YARD DURING NON-WORKING HOURS OR NO COVERAGE FOR THEFT OR VANDALISM AND MALICIOUS MISCHIEF APPLIES DURING NON-WORKING HOURS.



**GREAT AMERICAN INSURANCE COMPANIES**
Subsidiaries of American Financial Corporation
580 WALNUT STREET, CINCINNATI, OHIO 45202

CM 01 12
(Ed. 10 80)

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## TEXAS CHANGES

This endorsement modifies insurance provided under the following:

    COMMERCIAL INLAND MARINE COVERAGE PART

A.  Commercial Inland Marine Loss Condition B. APPRAISAL is replaced by the following:

   **B.  Appraisal**

   If we and you disagree on the value of the property or the amount of "loss," either may make written demand, within 60 days after our receipt of a signed, sworn statement of "loss," for an appraisal of the "loss." In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree for 15 days upon such umpire, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of "loss." If they fail to agree, they will submit their difference to the umpire. A decision agreed to by any two will be binding. Each party will:

   1.  pay its chosen appraiser; and

   2.  bear the other expenses of the appraisal and umpire equally.

   If there is an appraisal, we will still retain our right to deny the claim.

B.  Paragraph 8. of Commercial Inland Marine Loss Condition C. DUTIES IN THE EVENT OF LOSS is replaced by the following:

   8.  Send us a signed, sworn statement of "loss" containing the information we request to settle the claim. You must do this within 91 days after our request. We will supply you with the necessary forms.

C.  Paragraph 2. of Commercial Inland Marine General Condition B. LEGAL ACTION AGAINST US is replaced by the following:

   2.  The action is brought within 2 years and 1 day after you first have knowledge of "loss."

D.  Paragraphs A.5.a. and A.5.b. of the Coverage Extensions and paragraph F.2. of the Definitions in the EQUIPMENT DEALERS COVERAGE FORM are deleted

Copyright, Insurance Services Office, Inc., 1990

# GUIDE TO POLICY CONSTRUCTION

A Great American Insurance Company Business policy consists of:

A.  A policy Jacket, containing company officers' signatures;

B.  A common Policy Declarations;

C.  Common Policy Conditions;

D.  One or more underlying lines of insurance Policy Declarations,

E.  One or more Coverage Parts (each line of insurance is a coverage part) for each line of insurance Declarations.

Each Coverage Part consists of:

1.  A line of insurance Conditions form (if applicable);

2.  One or more Cause of Loss forms (if applicable);

3.  Applicable Endorsements.

F.700308 (6/99)

10/03/2001  18:19   214692    0                    JARRETT INS BRO    PAGE  03
09/05/2001  17:23   972-807-8162                 H R AGENCY        PAGE  03
11:08/01/00 T  1273604-03                                         ORIGINAL COPY
                         0T02892

GREAT AMERICAN INSURANCE COMPANIES
Subsidiaries of American Financial Corporation
580 WALNUT STREET, CINCINNATI, OHIO 45202

CM 88 02 (Ed. 11 85)

## BUSINESSPRO GENERAL ENDORSEMENT

ADDITIONAL POLICY CONDITION(S)

YOU AGREE TO BRING THIS EQUIPMENT BACK TO YOUR YARD DURING NON-

WORKING HOURS OR NO COVERAGE FOR THEFT OR VANDALISM AND MALICIOUS

MISCHIEF APPLIES DURING NON-WORKING HOURS.

BUSINESSPRO (Reg. U.S. Pat. Off.)


EXHIBIT
B

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| BORDER CONTRACTORS, INC. | * | |
| | * | |
| VS. | * | Civil Action No. B-02-027 |
| | * | |
| GREAT AMERICAN INSURANCE | * | |
| COMPANY OF NEW YORK | * | |

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
## AND MEMORANDUM OF AUTHORITIES IN SUPPORT THEREOF

On this day came on to be considered, Defendant, **GREAT AMERICAN INSURANCE COMPANY OF NEW YORK**'s Motion for Summary Judgment and Memorandum of Authorities in Support Thereof and the Court after hearing argument of counsel is of the opinion that said Motion should and is hereby GRANTED;

IT IS THEREFORE, ORDERED, ADJUDGED AND DECREED that Defendant's Motion for Summary Judgment and Memorandum of Authorities in Support Thereof, is hereby **GRANTED.**

Signed on this _____ day of _____, 2003.

_____
UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

BORDER CONTRACTORS, INC.                *
                                        *
VS.                                     *        Civil Action No. B-02-027
                                        *
GREAT AMERICAN INSURANCE                *
COMPANY OF NEW YORK                     *

## ORDER SETTING HEARING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM OF AUTHORITIES IN SUPPORT THEREOF

On the _____ day of _____, 2003, came on for consideration

Defendant, GREAT AMERICAN INSURANCE COMPANY OF NEW YORK's Motion

for Summary Judgment and Memorandum of Authorities in Support Thereof, having

considered same, is of the opinion that a hearing should be held thereon.

IT IS THEREFORE ORDERED, that Defendant's Motion for Summary Judgment

and Memorandum of Athorities in Support Thereof, is hereby set for hearing on the _____

day of _____, 2003at _____o'clock ___ .m.


SIGNED this _____ day of _____, 2003.


_____
UNITED STATES DISTRICT JUDGE