20

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

MAR 1 0 2003

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| Border Contractors, Inc., | : | |
| a Texas corporation, | : | |
| | : | |
| Plaintiff | : | |
| | : | |
| vs. | : | Civil Action No. B-02-00027 |
| | : | |
| Great American Insurance | : | |
| Company of New York, | : | |
| | : | |
| Defendant | : | |

### PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Comes now Border Contractors, Inc., Plaintiff in the above entitled and numbered case, by and through its attorney, Robert J. Banks, Esq., and files this, its Memorandum of Points and Authorities in Opposition to Defendant's Motion for Summary Judgment, pursuant to Rule 56, *Federal Rules of Civil Procedure*, and for cause therefore would respectfully show unto this Court the following.

### Introduction

1.      This action is brought pursuant to Chapter 21, *Texas Insurance Code*, and Chapter 17, *Texas Business and Commerce Code*, to recover damages for the theft of construction equipment.

2.     Plaintiff seeks to recover under insurance coverage purchased by Plaintiff from Defendant.

3.     Defendant denied payment for Plaintiff's loss under the insurance policy on the sole ground that the equipment had not been returned to Plaintiff's yard during non-working hours.

4.     Plaintiff's Motion for Summary Judgment must be denied because:

a.     Defendant's use of the term "your yard" in its policy of insurance is ambiguous as a matter of law, and therefore, must be construed in favor of the insured, *i.e.*, the Plaintiff.

b.     Plaintiff complied with all terms and conditions of the contract of insurance precedent to its recovery for its loss.

### Statement of Facts

5.     Plaintiff entered into a contract of insurance with Defendant.  See copy of Inland Marine Policy attached hereto, marked Plaintiff's Exhibit No. 1 and made a part hereof. (Deposition of Robert Jeffrey Davis, Exhibit No.2; Affidavit of Vicky G. Wright).

6.     The aforesaid contract of insurance was applicable to the equipment stolen from Plaintiff, *i.e.*, a 2000 Caterpillar 446B Backhoe Loader, SN-5BL02169.  (Plaintiff's Exhibit No. 1, p.22)

7.     The aforesaid contract of insurance was in full force and effect from August 1, 2000 to August 1, 2001.  (Plaintiff's Exhibit No. 1, p.2)

8.     The afore described equipment was stolen on or about July 12, 2001, a date on which the contract of insurance was in full force and effect.  Plaintiff duly made demand of

Defendant for payment for its loss.  See Property Loss Notice attached hereto marked Plaintiff's Exhibit No. 9 (Deposition of Robert Jeffrey Davis, Exhibit No.4) and made a part hereof.

9.    The afore described equipment was stolen from Plaintiff's maintenance and storage yard located adjacent to the job site, *i.e.*, Plaintiff's "yard".  Plaintiff's maintenance and storage yard was shared by other contractor's equipment and the field office trailer of the Department of Transportation.  (Affidavit of Vicky G. Wright).

10.    Defendant denied Plaintiff's loss coverage under the contract of insurance on the sole premise that **"the unit in question was not brought back to your main location yard after business hours and that this theft was off premises."**, which language is not contained in the contract of insurance.  See Declination of Coverage letter attached hereto, marked Plaintiff's Exhibit No. 2 and made a part hereof.  (Deposition of Robert Jeffrey Davis, Exhibit No.6; Affidavit of Vicky G. Wright).

11.    Prior to entry into the contract of insurance, and as an inducement to Plaintiff to enter therein, Defendant's agent, U.S. Risk Brokers, Inc. provided Plaintiff with a quotation for the contract of insurance which stated as the only term or condition that **"equipment must be returned to fenced yard during non working hours or theft v/mm is excluded."**.  There is no reference to "your main location" or any other location contained in Defendant's offer of insurance.  See copy of Quotation attached hereto, marked Plaintiff's Exhibit No. 4 and made a part hereof.  (Deposition of Robert Jeffrey Davis, Exhibit No.8; Affidavit of Vicky G. Wright).

12.    Subsequent to entry into the contract of insurance, but prior to the delivery of the policy of insurance, Defendant's agent, U.S. Risk Brokers, Inc., provided Plaintiff with an Insurance Binder which states as the only special condition that **"Equipment must be returned**

to fenced yard during non working hours or theft & vmm is excluded.". Again, there is no reference to "your main location" or any other location contained in Defendant's Insurance Binder. See copy of Binder attached hereto, marked Plaintiff's Exhibit No. 6 and made a part hereof. (Deposition of Robert Jeffrey Davis, Exhibit No. 3; Affidavit of Vicky G. Wright).

13.    Subsequent to entry into the contract of insurance and delivery of the afore described Insurance Binder, but prior to the delivery of the policy of insurance, Defendant's agent, HR Agency, Inc., provided Plaintiff with an Insurance Binder which states as the only special condition that "**Equipment must be returned to fenced yard during non working hours or theft & vmm is excluded.**". Again, there is no reference to "your main location" or any other location contained in Defendant's Insurance Binder. See copy of Insurance Binder attached hereto, marked Plaintiff's Exhibit No. 5 and made a part hereof. (Deposition of Robert Jeffrey Davis, Exhibit No. 8).

14.    Robert Jeffrey Davis, d/b/a HR Agency, a/ka HR Agency, Inc., and U.S. Risk Brokers, Inc. were agents of Great American Insurance Company at all times complained of in Plaintiff's Original Petition. Article 21.02, *Texas Insurance Code*; *Celtic Life Insurance Company v. Coats*, 885 S.W.2d 96, 98 (Tex.1994).

15.    Subsequent to the effective date of the contract of insurance, and subsequent to the delivery of the afore described Insurance Binders, Defendant delivered its contract of insurance to Plaintiff. The exclusionary condition relied upon by Defendant states that "**you agree to bring this equipment back to your yard during non-working hours or no coverage for theft or vandalism and malicious mischief applies during non-working hours.**". Once again, there is

no reference to "your main location" contained in the contract of insurance. (Plaintiff's Exhibit No. 1, p.26),

16.    Defendant's contract of insurance contains a "definitions" section. (Plaintiff's Exhibit No. 1, p.21).  Defendant does not define "your yard", "yard", or any similar term. Should the Defendant have meant to define "your yard" as the location of Plaintiff's "main location yard", surely it would have done so in that section.

## Argument

17.    The court may grant summary judgment only if "there is no genuine issue as to any material fact". *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).  Rule 56(c), *Federal Rules of Civil Procedure*.  The burden rests on the moving party to demonstrate the lack of a genuine issue of fact.  *Adickes v. S.H. Kress & Co.*, 389 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d, 142 (1970).  The records must be viewed in the light most favorable to the party opposing the motion.  *United States v. Diebold, Inc.*, 369 U.S. 654, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962).

18.    The district court must resolve all reasonable doubts about the facts in favor of the non-movant.  *Hom v. Squire*, 81 F.3d 969, 973 (10th Cir.1996); *Pocchia v. NYNEX Corp.*, 81 F.3d 275, 277 (2d Cir.1996); *Irby v. Bittick*, 44 F.3d 949, 953 (11th Cir.1995).  Therefore, the movant for summary judgment must prove there is no genuine issue about any material fact and that it is entitled to judgment as a matter of law.  Rule 56(c), *Federal Rules of Civil Procdrue*, *Irby*, 44 F.3d at 953; *Campbell v. Hewitt, Coleman & Assocs.*, 21 F.3d 52, 55 (4th Cir.1994).

19.    A genuine issue is one that can be resolved only by a trier of fact because it may be resolved in favor of either party.  *Anderson*, 477 U.S. at 248-49, 106 S.Ct. at 2510.  A non-

movant injects a genuine issue into the summary judgment procedure when a reasonable jury could resolve the disputed facts in favor of or in the manner described by, the non-movant. *Jenkins v. Woods*, 81 F.3d 988, 990 (10th Cir. 1996); *Meadowbriar Home for Children, Inc. v. Gunn*, 81 F.3d 521, 533 (5th Cir. 1996).

20.     It is the usual and customary practice of highway contractors and subcontractors to establish maintenance and storage yards in the proximity of the construction site for the maintenance and security of their equipment during periods when work is not in progress. **This facility is referred to as their "yard".** It would be neither feasible or possible to move the heavy construction equipment to a contractor's "main location yard" at the conclusion of each work day, and then to move it back prior to the commencement of work the following day. (Affidavits of Joe Charles Ballenger and Vicky G. Wright).

21.     Defendant's agents, R. Jeffrey Davis, d/b/a HR Agency, a/ka HR Agency, Inc., and U.S. Risk Brokers, Inc., were of the opinion that Plaintiff had met all of the terms and conditions of the contract of insurance, and that Plaintiff was therefore, entitled to payment of its loss.     The only persons who claim Plaintiff's loss is not covered by Defendant's contract of insurance is, of course, Defendant. (Deposition of Robert Jeffrey Davis, p.48, lines 9-11; p.60 line 12–page 61, line 11). See letters attached hereto, marked Plaintiff's Exhibits No. 7, 8 and 10 and made a part hereof.   (Deposition of Robert Jeffrey Davis, Exhibits No. 7, 8 and 5, respectively).

22.     The general rules of contract construction govern insurance policy interpretation. *Grain Dealers Mut. Ins. Co. v. McKee*, 943 S.W.2d 455, 458 (Tex. 1997); *citing: McKeeState Farm Life Ins. Co. v. Beaston*, 907 S.W.2d 430, 433 (Tex. 1995); *Forbau v. Aetna Life Ins. Co.*,

876 S.W.2d 132, 133 (Tex.1994). If an insurance contract is subject to more than one reasonable interpretation, the contract is ambiguous and the interpretation that most favors coverage for the insured will be adopted. *Grain Dealers*, 943 S.W. 2d at 458; *citing: Kelly Assocs., Ltd. v Aetna Cas. & Sur. Co.*, 681 S.W.2d 593, 596 (Tex.1984).

<u>Conclusion</u>

23.    Predicated on the above points and authorities, Plaintiff is entitled to the recovery of its losses from Defendant under the contract of insurance. Therefore, Defendant's Motion for Summary Judgment must be denied.

Respectfully submitted,

Robert J. Banks, Esq.
Texas Bar No. 01686020
SDOT ID No. 10703
218 East Harrison Avenue
Harlingen, Texas 78550-9134
956-423-3745 (Telephone)
956-423-3746 (Telecopier)

Attorney for Plaintiff,
Border Contractors, Inc.

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

Border Contractors, Inc.,                      :
a Texas corporation,                           :
                                               :
        Plaintiff                              :
                                               :
        vs.                                    :        Civil Action No. B-02-027
                                               :
Great American Insurance                       :
Company of New York,                           :
                                               :
        Defendant                              :

AFFIDAVIT OF VICKY G. WRIGHT IN SUPPORT OF PLAINTIFF'S
OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

THE STATE OF TEXAS     )
                       )
COUNTY OF CAMERON  )

        Before me, the undersigned authority, personally appeared Vicky G. Wright, who upon
her oath deposed and stated as follows:

        "My name is Vicky G. Wright, I am the president of Border Contractors, Inc.,
plaintiff in the above entitled and numbered case.  I am over the age of twenty-one years.
I have personal knowledge of the facts contained herein and they are true and correct.  I
am competent to be a witness herein.

        "I was the president of Border Contractors, Inc. during all times complained of in
Plaintiff's Original Petition."

        "Border Contractors, Inc. was a corporation incorporated in the state of Texas and
duly authorized to transact business therein at all times complained of in Plaintiff's
Original Petition."

---

Plaintiff's Memorandum of Points Authorities in
Opposition to Defendant's Motion for Summary Judgment                    Page 8 of 13 Pages

"I submitted a Commercial Insurance Application to Great American Insurance Company through their agent, HR Agency, on July 3, 2001. (See true copy of Commercial Insurance Application attached hereto, marked Plaintiff's Exhibit No. 3 and made a part hereof). At the time, Mr. R. Jeffrey Davis, d/b/a HR Agency, was known to me to be an insurance salesman for Great American Insurance Company. I discussed the operations of Border Contractors, Inc. with Mr. Davis, including the fact that Border Contractors, Inc. maintained maintenance and storage yards at each of its active construction job sites for the purpose of maintenance and security of its equipment at night, on weekends, and at other times when work was not in progress. I further advised Mr. Davis that the maintenance and storage yards in which the equipment was parked were secure facilities. These facilities were located on property leased by Border Contractors, Inc. or shared with other contractors adjacent to the construction sites. Having advised Mr. Davis of the foregoing, I requested that he provide Border Contractors, Inc. with the requisite and necessary insurance for its protection against loss or damage of or to its equipment.

"In response to the foregoing Commercial Insurance Application, U.S. Risk Brokers, Inc. submitted a proposal dated July 27, 2001for and on behalf of Great American Insurance Company to provide the above insurance. (See true copy of proposal attached hereto, marked Plaintiff's Exhibit No. 4 and made a part hereof). The only condition of issuance of the policy was that Border Contractors, Inc. must return its equipment to a fenced yard during non-working hours.

"Subsequently, I received an Insurance Binder from Great American Insurance Company through HR Agency dated August 1, 2001. (See true copy of Insurance Binder attached hereto, marked Plaintiff's Exhibit No. 5 and made a part hereof). Again, the only condition stated was that Border Contractors, Inc. must return its equipment to a fenced yard during non-working hours.

"Subsequent to my receipt of the afore described Insurance Binder, I received a Binder from Great American Insurance Company through U.S. Risk Brokers, Inc. dated August 6, 2001. (See true copy of Binder attached hereto, marked Plaintiff's Exhibit No. 6 and made a part hereof). Once again, the only condition stated was that Border Contractors, Inc. must return its equipment to a fenced yard during non-working hours.

"Finally, Great American Insurance Company provided me with Policy Number TIM 927-36-04, a true copy of which is attached hereto, marked Plaintiff's Exhibit No. 1 and made a part hereof. Said insurance policy was in full force and effect during the period August 1, 2000 through August 1, 2001. Great American Insurance Company's insurance policy required only that the equipment be brought back to our yard during non-working hours. **I discussed this policy change with Mr. Davis, who assured me that the above described procedure for storing equipment in my maintenance and storage yards at the job sites was in compliance with the policy, and that any loss would be covered.**

"It is the usual and customary practice of highway contractors and subcontractors to establish maintenance and storage yards in the proximity of the construction sites for the maintenance and security of their equipment during periods when work is not in progress. This facility is referred to as their "yard". The construction equipment is returned to that yard each night and weekend during the progress of the construction. It would neither be feasible or possible to move the construction equipment to the site of the principal office of the company every night.

"On or about July 12, 2001, a backhoe insured under the above described policy was stolen from our maintenance and storage yard located at the construction site. This facility was shared by other contractors and the field office trailer of the Department of Transportation. Subsequently, a claim for the theft was filed with Great American Insurance Company. Great American Insurance Company rejected the claim. (See Declination of Coverage letter declining coverage, a true copy of which is attached hereto, marked Plaintiff's Exhibit No. 2 and made a part hereof).

"I am the custodian of the records of Border Contractors, Inc. Attached hereto are Plaintiff's Exhibits No. 1 through 6. Said Plaintiff's Exhibits are kept by Border Contractors, Inc. in the regular course of business, and it was the regular course of business of Border Contractors, Inc. for an employee or representative of Border Contractors, Inc., with knowledge of the act and/or event recorded, to make the record or to transmit information thereof to be included in such record; and the record was made at or near the time or reasonably soon thereafter. Plaintiff's Exhibits No. 1 through 6 attached hereto are exact duplicates of the originals."

Signed this 7th day of March 2003.

_____
Vicky G. Wright, Affiant

Subscribed and sworn to before me on this 7th day of March 2003, in witness whereof I have placed my hand and seal of office.

NOTARY PUBLIC
Jo Ellen Paschall
My Commission Expires
February 16, 2004
STATE OF TEXAS

_____
Notary Public in and
for the State of Texas

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION


Border Contractors, Inc.,                    :
a Texas corporation,                         :
                                             :
        Plaintiff                            :
                                             :
        vs.                                  :        Civil Action No. B-02-027
                                             :
Great American Insurance                     :
Company of New York,                         :
                                             :
        Defendant                            :


### AFFIDAVIT OF JOE CHARLES BALLENGER IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT


THE STATE OF TEXAS      )
                        )
COUNTY OF CAMERON       )

Before me, the undersigned authority, personally appeared Joe Charles Ballenger, who upon his oath deposed and stated as follows:

"My name is Joe Charles Ballenger. I am over the age of twenty-one years. I have personal knowledge of the facts contained herein and they are true and correct. I am competent to be a witness herein.

"I am the president of Ballenger Construction Company, a Texas corporation. I have been employed in the field of highway construction for approximately forty (40) years. I am familiar with the practices and procedures in the highway construction industry in the state of Texas. I am also familiar with the insurance practices in the state of Texas as they relate to insureds involved in the field of highway construction.

"Ballenger Construction Company is in the business of building highways in the south Texas region. Ballenger Construction Company is the prime contractor on forty-five million to seventy million dollars ($45,000,000 to $70,000,000) of highway construction contracts per year.

"It is the usual and customary practice of highway contractors and subcontractors to establish maintenance and storage yards in the proximity of the construction sites for the maintenance and security of their equipment during periods when work is not in progress. This facility is referred to as their "yard". The construction equipment is returned to that yard each night and weekend during the progress of the construction. It would neither be feasible or possible to move the construction equipment to the site of the principal office of the company every night.

"I have read the Additional Policy Condition(s) contained in Great American Insurance Company's Policy No. TIM 927-36-04-03, attached to Plaintiff's Opposition to Defendant's Motion for Summary Judgment and labeled Plaintiff's Exhibit No. 1. Wherein the reference to "you agree to bring this equipment back to your yard during non-working hours" can only be interpreted as a requirement that the equipment be returned to the maintenance and storage yard established at the job site for the maintenance and security of the equipment.

Signed this 7th day of March 2003.


_____

Joe Charles Ballenger, Affiant



Subscribed and sworn to before me on this 7th day of March 2003, in witness whereof I have placed my hand and seal of office.



_____
Notary Public in and
for the State of Texas

---

## CERTIFICATE OF SERVICE

I hereby certify that on this 10th day of March 2003, I caused to be delivered *via* telecopier a true copy of the foregoing Plaintiff's Opposition to Defendant's Motion for Summary Judgment and Memorandum of Authorities in Support thereof to the following attorney of record:

Ms. Teri L. Danish                    Telecopier No. 956-541-2170
Rodriguez, Colvin & Chaney, L.L.P.
1201 East Van Buren Street
Brownsville, Texas 78520-7057

_____
Robert J. Banks

## INDEX

| Document | Tab Number |
|---|---|
| Plaintiff's Exhibit No. 1 – Inland Marine Policy . . . . . . . . . . . . . . . . . . . . . . . . . . . | 1 |
| Plaintiff's Exhibit No. 2 – Declination of Coverage Letter . . . . . . . . . . . . . . . . . . . | 2 |
| Plaintiff's Exhibit No. 3 – Commercial Insurance Application . . . . . . . . . . . . . . . . . | 3 |
| Plaintiff's Exhibit No. 4 – Quotation for Insurance . . . . . . . . . . . . . . . . . . . . . . . | 4 |
| Plaintiff's Exhibit No. 5 – Insurance Binder . . . . . . . . . . . . . . . . . . . . . . . . . . . | 5 |
| Plaintiff's Exhibit No. 6 – Binder . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 6 |
| Plaintiff's Exhibit No. 7 – Correspondence from HR Agency . . . . . . . . . . . . . . . . . | 7 |
| Plaintiff's Exhibit No. 8 – Correspondence from HR Agency . . . . . . . . . . . . . . . . . | 8 |
| Plaintiff's Exhibit No. 9 – Property Loss Notice . . . . . . . . . . . . . . . . . . . . . . . . . | 9 |
| Plaintiff's Exhibit No. 10 – Correspondence from HR Agency . . . . . . . . . . . . . . . . . | 10 |
| Deposition of Robert Jeffrey Davis. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 11 |
| *Texas Insurance Code,* Article 21.02 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 12 |
| *Celtic Life Insurance Company v. Coats,* 885 S.W.2d 96 (Tex. 1994) . . . . . . . . . . . . | 13 |
| *Grain Dealers Mut. Ins. Co. v. McKee,* 943 S.W.2d 455 (Tex. 1997). . . . . . . . . . . . | 14 |

CM 7951 (Ed. 6/99)

*INLAND MARINE POLICY*

# BUSINESSPRO*

\*THE BUSINESS PROTECTOR® PROGRAM—
A Professional Approach For Your
Commercial Insurance Needs.



GREAT AM
INSURA

PLAINTIFF'S
EXHIBIT
NO.

0102699



**GREAT AMERICAN** ®
INSURANCE COMPANIES

ADMINISTRATIVE OFFICES
580 WALNUT STREET
CINCINNATI, OHIO 45202
TEL: 1-513-369-5000

*Equipment*

CM 76 32 (Ed. 09 93)

**Policy No.** TIM 927-36-04 - 03
**Renewal Of** TIM 927-36-04 - 02

## TEXAS INLAND MARINE POLICY DECLARATIONS

**NAMED INSURED** BORDER CONTRACTORS, INC.

**AND ADDRESS:** 28226 DILWORTH ROAD
HARLINGEN, TX 78562

| | |
|---|---|
| **IN RETURN FOR PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.** | **AGENT'S NAME AND ADDRESS:** U.S. RISK BROKERS, INC. <br><br> 10210 N.CENTRAL EXWY #500 DALLAS, TX 75231 3424 |

Insurance is afforded by the Company named below, a Capital Stock Corporation:
046 ~~Great American Insurance Co. of New York~~ ~~AMERICAN NATIONAL FIRE INSURANCE COMPANY~~
*8/1/00 to Cincinnati*
4/2/01

**POLICY PERIOD:** From 08/01/2000 To 08/01/2001
12:01 A.M. Standard Time at the address of the Named Insured

**BUSINESS DESCRIPTION:**

This policy consists of the following Coverage part for which a premium is indicated. This premium may be subject to adjustment.

**Premium**

Commercial Inland Marine Coverage Part                    $7,641.00

**Total Provisional Premium**     $7,641.00

Article 6.13 Policy a Liquidated Demand. A fire insurance policy, in case of a total loss by fire of property insured, shall be held and considered to be a liquidated demand against the Company for the full amount of such policy. The provisions of this Article shall not apply to personal property.

**FORMS AND ENDORSEMENTS** applicable to all Coverage Parts and made a part of this Policy at the time of issue are listed on the attached Forms and Endorsements Schedule **CM 8801 11/85.**

*RANDALL C. ROSS, CHAIRMAN/CEO*     12

Countersigned _____     By _____
                    Date                              Authorized Representative

Border Contr. v. Great American
Civil Action No. B-02-0027          0002

# IMPORTANT NOTICE
## (Texas)

| IMPORTANT NOTICE | AVISO IMPORTANTE |
|---|---|

To obtain information or make a complaint:

You may contact the Texas Department of Insurance to obtain information on companies, coverages, rights or complaints at:

### 1-800-252-3439

You may write the Texas Department of Insurance:

> P.O. BOX 149104
> Austin, TX 78714-9104
> FAX#  (512)475-1771

## PREMIUM OR CLAIM DISPUTES:

Should you have a dispute concerning your premium or about a claim you should contact the agent or the company first.  If the dispute is not resolved, you may contact the Texas department of Insurance.

## ATTACH THIS NOTICE TO YOUR POLICY:

This notice is for information only and does not become a part or condition of the attached document.

---

Para obtener informacion o para someter una queja:

Puede comunicarse con el Departamento de Seguros de Texas para obtener informacion acerca de companias, coberturas, derechos o quejas al:

### 1-800-252-3439

Puede escribir al Departamento de Seguros de Texas:

> P.O. BOX 149104
> Austin, TX 78714-9104
> FAX#  (512)475-1771

## DISPUTAS SOBRE PRIMAS O RECLAMOS:

Si tiene una disputa concerniente a su prima o a un reclamo debe comunicarse con el agente o las compania primero.  Si no se resuelve la disputa, puede entonces comunicarse con el Departamento de Seguros de Texas.

## UNA ESTE AVISO A SU POLIZA:

Este aviso es solo para proposito de informacion y no se convierte en parte o condicion del documento adjunto.

GREAT AMERICAN INSURANCE, COMPANIES ®
Subsidiaries of American Financial Corporation
580 WALNUT STREET, CINCINNATI, OHIO 45202

0102699

## POLICYHOLDER NOTICE

### (Applicable to Commercial Inland Marine, Boiler and Machinery, and Crime Policies)

**NO COVERAGE IS PROVIDED BY THIS POLICYHOLDER NOTICE NOR CAN IT BE CONSTRUED TO REPLACE ANY PROVISION OF YOUR POLICY. YOU SHOULD READ YOUR POLICY AND REVIEW YOUR DECLARATIONS PAGE FOR COMPLETE INFORMATION ON THE COVERAGES YOU ARE PROVIDED. IF THERE IS ANY CONFLICT BETWEEN THE POLICY AND THIS SUMMARY, THE PROVISIONS OF THE POLICY SHALL PREVAIL.**

An exclusion has been added to your policy to explicitly state that coverage is not provided for loss caused by a computer's inability, or that of computerized or other electronic equipment, to properly recognize a particular date or time. An example of this is a loss caused by the inability of the computer to recognize the year 2000 (Y2K). However, coverage is provided under certain circumstances: if the computer's inability to recognize a date or time results in a covered cause of loss — for example, fire — the loss resulting from that fire will be covered.

GREAT AMERICAN INSURANCE COMPANIES
Subsidiaries of American Financial Corporation
580 WALNUT STREET, CINCINNATI, OHIO 45202

IL 01 71
(Ed. 09 92)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## TEXAS CHANGES - LOSS PAYMENT

This endorsement modifies insurance provided under the following:

BOILER AND MACHINERY COVERAGE PART
COMMERCIAL CRIME COVERAGE PART
FARM COVERAGE PART – LIVESTOCK COVERAGE FORM
FARM COVERAGE PART – MOBILE AGRICULTURAL MACHINERY
                AND EQUIPMENT COVERAGE FORM
COMMERCIAL INLAND MARINE COVERAGE PART

**A. LOSS PAYMENT**

1. With respect to the **Boiler and Machinery Coverage Part** and **Commercial Crime Coverage Part,** the following conditions are added.

2. With respect to the **Commercial Inland Marine Coverage Part,** the following conditions replace Item E. **LOSS PAYMENT** in the Commercial Inland Marine Loss Conditions.

3. With respect to the **Farm Coverage Part,** the following conditions replace Paragraphs c. and f. of the Loss Payment Condition:

   **a.** claims handling

     (1) within 15 days after we receive written notice of claim, we will:

       (a) acknowledge receipt of the claim. If we do not acknowledge receipt of the claim in writing, we will keep a record of the date, method and content of the acknowledgement;

       (b) begin any investigation of the claim; and

       (c) request a signed, sworn proof of loss, specify the information you must provide and supply you with the necessary forms. We may request more information at a later date, if during the investigation of the claim such additional information is necessary.

     (2) we will notify you in writing as to whether:

       (a) the claim or part of the claim will be paid;

       (b) the claim or part of the claim has been denied, and inform you of the reason for denial;

       (c) more information is necessary; or

       (d) we need additional time to reach a decision. If we need additional time, we will inform you of the reasons for such need.

     We will provide notification, as described in (2)(a) through (2)(d) above, within:

     (i) 15 business days after we receive the signed, sworn proof of loss and all information we requested; or

     (ii) 30 days after we receive the signed, sworn proof of loss and all information we re-

Copyright, Insurance Services Office, Inc.,
(Page 1 of 3)

Border Contr. v. Great American
Civil Action No. B-02-0027

IL 01 71 (Ed. 09/92) XS

quested, if we have reason to believe the loss resulted from arson.

If we have notified you that we need additional time to reach a decision, we must then either approve or deny the claim within 45 days of such notice.

**b.** we will pay for covered loss or damage within 5 business days after:

   **(1)** we have notified you that payment of the claim or part of the claim will be made and have reached agreement with you on the amount of loss; or

   **(2)** an appraisal award has been made.

However, if payment of the claim or part of the claim is conditioned on your compliance with any of the terms of this policy, we will make payment within 5 business days after the date you have complied with such terms.

**c.** Catastrophe Claims

If a claim results from a weather related catastrophe or a major natural disaster, the claim handling and claim payment deadlines described in a. and b. above are extended for an additional 15 days.

Catastrophe or Major Natural Disaster means a weather related event which is:

   **(1)** declared a disaster under the Texas Disaster Act of 1975; or

   **(2)** determined to be a catastrophe by the State Board of Insurance.

**d.** The term "business day," as used in this endorsement, means a day other than Saturday, Sunday or holiday recognized by the state of Texas.

**B.** With respect to the Commercial Inland Marine Coverage Part the following is added:

We will not be liable for any part of a "loss" that has been paid or made good by others.

Copyright, Insurance Services Office, Inc

0102699

GREAT AMERICAN INSURANCE COMPANIES ®
Subsidiaries of American Financial Corporation
580 WALNUT STREET, CINCINNATI, OHIO 45202

IL 09 35
(Ed. 08 98)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## EXCLUSION OF CERTAIN COMPUTER-RELATED LOSSES

This endorsement modifies insurance provided under the following:

BOILER AND MACHINERY COVERAGE PART
COMMERCIAL CRIME COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
STANDARD PROPERTY POLICY

A. We will not pay for the ("loss") or damage caused directly or indirectly by the following. Such loss ("loss") or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss ("loss") or damage.

  1. The failure, malfunction or inadequacy of:

    a. any of the following, whether belonging to any Insured or to others:

      (1) computer hardware, including microprocessors;

      (2) computer application software;

      (3) computer operating systems and related software;

      (4) computer networks;

      (5) microprocessors (computer chips) not part of any computer system; or

      (6) any other computerized or electronic equipment or components; or

    b. any other products, and any services, data or functions that directly or indirectly use or rely upon, in any manner, any of the items listed in Paragraph A.1.a. of this endorsement;

    due to the inability to correctly recognize, process, distinguish, interpret or accept one or more dates or times. An example is the inability of computer software to recognize the year 2000.

  2. Any advice, consultation, design, evaluation, inspection, installation, maintenance, repair, replacement or supervision provided or done by you or for you to determine, rectify or test for, any potential or actual problems described in Paragraph A.1. of this endorsement.

B. If an excluded Cause of Loss as described in Paragraph A. of this endorsement results:

  1. in a Covered Cause of Loss under the Boiler And Machinery Coverage Part, the Commercial Crime Coverage Part, the Commercial Inland Marine Coverage Part or the Standard Property Policy; or

  2. under the Commercial Property Coverage Part:

    a. in a "Specified Cause of Loss," or in elevator collision resulting from mechanical breakdown, under the Causes of Loss – Special Form; or

    b. in a Covered Cause of Loss under the Causes of Loss – Basic Form or the Causes of Loss – Broad Form;

we will pay only for the loss ("loss") or damage caused by such "Specified Cause of Loss," elevator collision, or Covered Cause of Loss.

C. We will not pay for repair, replacement or modification of any items in Paragraph A.1.a. and A.1.b. of this endorsement to correct any deficiencies or change any features.

Border Contr. v. Great American
Civil Action No. B-02-0027

0007

0102699

**GREAT AMERICAN INSURANCE COMPANIES**
Subsidiaries of American Financial Corporation
580 WALNUT STREET, CINCINNATI, OHIO 45202

**IL 02 88**
(Ed. 11 92)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## TEXAS CHANGES - CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

BOILER AND MACHINERY COVERAGE PART
COMMERCIAL CRIME COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART

**A.** The following is added to paragraph 2. of the **CANCELLATION** Common Policy Condition:

We may cancel this policy for any reason except, that under the Texas Insurance Code, we may not cancel this policy solely because the first Named Insured is an elected official.

**B.** The following condition is added:

**NONRENEWAL**

We may elect not to renew this policy except, that under the Texas Insurance Code, we may not refuse to renew this policy solely because the first Named Insured is an elected official.

Copyright, Insurance Services Office, Inc., 1992

IL 02 88 (Ed. 11/92) XS

0102699

GREAT AMERICAN INSURANCE COMPANIES
Subsidiaries of American Financial Corporation
580 WALNUT STREET, CINCINNATI, OHIO 45202

IL 00 17
(Ed. 11 98)

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. CANCELLATION

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. CHANGES

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made part of this policy.

## C. EXAMINATION OF YOUR BOOKS AND RECORDS

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. INSPECTIONS AND SURVEYS

1. We have the right to:

   a. make inspections and surveys at any time;

   b. give you reports on the conditions we find; and

   c. recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. are safe or healthful; or

   b. comply with laws, regulations, codes or standards.

3. Paragraphs 1. and 2. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph 2. of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative

Border Contr. v. Great American
Civil Action No. B-02-0027

0009

to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. PREMIUMS

The first Named Insured shown in the Declarations:

1. is responsible for the payment of all premiums; and

2. will be the payee for any return premiums we pay.

## F. TRANSFER OF YOUR RIGHTS AND DUTIES UNDER THIS POLICY

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual Named Insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

**IN WITNESS WHEREOF,** we have caused this policy to be executed and attested, and, if required by state law, this policy shall not be valid unless countersigned by our authorized representative.

Secretary

President

Copyright, Insurance Services Office, Inc.

Border Contr. v. Great American
Civil Action No. B-02-0027

0010

0102699



GREAT AMERICAN INSURANCE COMPANIES
Subsidiaries of American Financial Corporation
580 WALNUT STREET, CINCINNATI, OHIO 45202

**CM 88 01**  (Ed. **11/85**)

**Policy:** TIM 927-36-04  03

## BUSINESSPRO FORMS AND ENDORSEMENTS SCHEDULE

It is hereby understood and agreed the following forms and endorsements are attached to and are a part of this policy:

| | Form and Edition | Date Added* or Date Deleted | Form Description |
|---|---|---|---|
| 1. | CM0001  06/95 | | COMMON INLAND MARINE CONDITIONS |
| 2. | CM0112  10/90 | | TEXAS CHANGES |
| 3. | CM7632  09/93 | | TEXAS IM COMMON DEC |
| 4. | CM7644  12/91 | | CONTR EQUIP DEC SCHEDULED FORM |
| 5. | CM7645  12/91 | | CONTR EQUIP SCHEDULED COV FORM |
| 6. | CM7870  06/92 | | CATERPILLAR FINANCIAL SERVICES |
| 7. | CM7870  06/92 | | FINANCIAL FEDERAL CREDIT, |
| 8. | CM7870  06/92 | | NUECES POWER EQUIPMENT |
| 9. | CM7879  10/92 | | FINANCIAL FEDERAL CREDIT |
| 10. | CM8802  11/85 | | ADDITIONAL POLICY CONDITION(S) |
| 11. | IL0017  11/98 | | COMMON POLICY CONDITIONS |
| 12. | IL0171  09/92 | | TEXAS CHANGES - LOSS PAYMENTS |
| 13. | IL0288  11/92 | | TEXAS CHANGES - CANC/NONRENEW |
| 14. | IL0935  08/98 | | EXCL - CERTAIN COMPUTER REL LOSSES |

* IF NOT AT INCEPTION

CM 88 01    11/85        (Page  1 of  1 )

Border Contr. v. Great American
Civil Action No. B-02-0027

0011

C · 11-08/01/00 · TIMS273604-05   ORIGINAL COPY
0102699

GREAT AMERICAN INSURANCE COMPANIES
Subsidiaries of American Financial Corporation
580 WALNUT STREET, CINCINNATI, OHIO 45202

**CM 00 01**
(Ed. 06 95)

# COMMERCIAL INLAND MARINE CONDITIONS

The following conditions apply in addition to the Common Policy Conditions and applicable Additional Conditions in Commercial Inland Marine Coverage Forms:

## LOSS CONDITIONS

### A. ABANDONMENT

There can be no abandonment of any property to us.

### B. APPRAISAL

If we and you disagree on the value of the property or the amount of "loss, " either may make written demand for an appraisal of the "loss." In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of "loss." If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

1. pay its chosen appraiser; and

2. bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

### C. DUTIES IN THE EVENT OF LOSS

You must see that the following are done in the event of "loss" to Covered Property:

1. Notify the police if a law may have been broken.

2. Give us prompt notice of the "loss." Include a description of the property involved.

3. As soon as possible, give us a description of how, when and where the "loss" occurred.

4. Take all reasonable steps to protect the Covered Property from further damage and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limit of Insurance. However, we will not pay for any subsequent "loss" resulting from a cause of loss that is not a Covered Cause of Loss. Also if feasible, set the damaged property aside and in the best possible order for examination.

5. Make no statement that will assume any obligation or admit any liability, for any "loss" for which we may be liable, without our consent.

6. Permit us to inspect the property and records proving "loss."

7. If requested, permit us to question you under oath, at such times as may be reasonably required, about any matter relating to this insurance or your claim, including your books and records. In such event, your answers must be signed.

8. Send us a signed, sworn statement of "loss" containing the information we request to settle the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

9. Promptly send us any legal papers or notices received concerning the "loss."

10. Cooperate with us in the investigation or settlement of the claim.

### D. INSURANCE UNDER TWO OR MORE COVERAGES

If two or more of this policy's coverages apply to the same "loss," we will not pay more than the actual amount of the "loss."

Copyright, Insurance Services Office, Inc.,

Border Contr. v. Great American
Civil Action No. B-02-0027

0012

## E. LOSS PAYMENT

We will pay or make good any "loss" covered under this Coverage Part within 30 days after:

1. we reach agreement with you;

2. the entry of final judgment; or

3. the filing of an appraisal award.

We will not be liable for any part of a "loss" that has been paid or made good by others.

## F. OTHER INSURANCE

If you have other insurance covering the same "loss" as the insurance under this Coverage Part, we will pay only the excess over what you should have received from the other insurance. We will pay the excess whether you can collect on the other insurance or not.

## G. PAIR, SETS OR PARTS

1. Pair or Set. In case of "loss" to any part of a pair or set we may:

   a. repair or replace any part to restore the pair or set to its value before the "loss"; or

   b. pay the difference between the value of the pair or set before and after the "loss."

2. Parts. In case of "loss" to any part of Covered Property consisting of several parts when complete, we will only pay for the value of the lost or damaged part.

## H. PRIVILEGE TO ADJUST WITH OWNER

In the event of "loss" involving property of others in your care, custody or control, we have the right to :

1. Settle the "loss" with the owners of the property. A receipt for payment from the owners of that property will satisfy any claim of yours.

2. Provide a defense for legal proceedings brought against you. If provided, the expense of this defense will be at our cost and will not reduce the applicable Limit of Insurance under this insurance.

## I. RECOVERIES

Any recovery or salvage on a "loss" will accrue entirely to our benefit until the sum paid by us has been made up.

## J. REINSTATEMENT OF LIMIT AFTER LOSS

The Limit of Insurance will not be reduced by the payment of any claim, except for total "loss" of a scheduled item, in which event we will refund the unearned premium on that item.

## K. TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US

If any person or organization to or for whom we make payment under this insurance has rights to recover damages from another, those rights are transferred to us to the extent of our payment. That person or organization must do everything necessary to secure our rights and must do nothing after "loss" to impair them.

## GENERAL CONDITIONS

## A. CONCEALMENT, MISREPRESENTATION OR FRAUD

This Coverage Part is void in any case of fraud, intentional concealment or misrepresentation of a material fact, by you or any other Insured, at any time, concerning:

1. this Coverage Part;

2. the Covered Property;

3. your interest in the Covered Property; or

4. a claim under this Coverage Part.

## B. LEGAL ACTION AGAINST US

No one may bring a legal action against us under this Coverage Part unless:

Copyright, Insurance Services Office, Inc.,

Border Contr. v. Great American
Civil Action No. B-02-0027

0013

C · PP · 08/01/00 · TYM9273604-03   ORIGINAL COPY
0102699

1. there has been full compliance with all the terms of this Coverage Part; and

2. the action is brought within 2 years after you first have knowledge of the "loss."

## C. NO BENEFIT TO BAILEE

No person or organization, other than you, having custody of Coverage Property, will benefit from this insurance.

## D. POLICY PERIOD

We cover "loss" commencing during the policy period shown in the Declarations.

## E. VALUATION

The value of property will be the least of the following amounts:

1. the actual cash value of that property;

2. the cost of reasonably restoring that property to its condition immediately before "loss"; or

3. the cost of replacing that property with substantially identical property.

In the event of "loss," the value of property will be determined as of the time of "loss."

Copyright, Insurance Services Office, Inc.,

Border Contr. v. Great American
Civil Action No. B-02-0027

0014



0102699

GREAT AMERICAN INSURANCE COMPANIES
Subsidiaries of American Financial Corporation
580 WALNUT STREET, CINCINNATI, OHIO 45202

CM 76 44 (Ed. 12/91)

Policy:TIM 927-36-04 03

## CONTRACTOR'S EQUIPMENT DECLARATIONS
## SCHEDULED FORM

**NAMED INSURED:** BORDER CONTRACTORS, INC.

**POLICY PERIOD:**
08/01/2000 to 08/01/2001

**PREMIUM FOR THIS COVERAGE FORM** $ 7,641.00

**LIMITS OF INSURANCE**
The most we will pay is:
$611,245 in any one "loss" but not more than the limit of Insurance shown opposite each item described below or in the schedule attached.

### SCHEDULE OF COVERED PROPERTY

| ITEM NO. | DESCRIPTION | LIMIT OF INSURANCE | R.C. |
|---|---|---|---|
| 0001 | CATERPILLAR 426C, SN-6XN01663. | $50,000 | < |
| 0002 | 1999 CATERPILLAR BACKHOE LOADER, MODEL #446B; SN-5BL01944. | $93,821 | |
| 0003 | CATERPILLAR MODEL 950E WHEEL LOADER, SN-22Z4512 | $58,800 | |
| 0004 | (2) CALDWELL TEA-CUP PIPE CARRIER W/SLINGS MOD PC-1 VALUED AT $1,000. EACH | $2,000 | |
| 0005 | (1) HONDA WATER PUMP SN-W2BF1102679 | $600 | |
| 0006 | (1) HONDA WATER PUMP SN-WZBE1187318 | $600 | |
| 0007 | (1) HONDA GENERATOR SN-3MN005 | $1,200 | |
| 0008 | (1) DEWALT SKILLSAW SN-DW362160145 | $150 | |
| 0009 | 1999 C3902X GME TRENCH BOX MODEL-N-816; SN-9902181-2 | $12,000 | |
| 0010 | 1999 C3542X TRENCH BOX MODEL 820DW; SN-98081189-2 | $12,000 | |
| 0011 | 1989 CATERPILLAR 966E WHEEL/LOADER, SN-99Y6701 | $80,657 | |
| 0012 | 2000 LINKBELT MODEL 4300Q HYDRAULIC EXCAVATOR, SN-LE2J0-3448 | $196,750 | |
| 0013 | 2000 CATERPILLAR 446B BACKHOE LOADER, SN-5BL02169 | $102,667 | |

**DEDUCTIBLE**
The deductible amount indicated by (X)
( ) % of the amount of insurance on the insured item(s) lost or damaged but not less than
(X) $ $1,000 ( ) see endorsement attached

CM 76 44 12/91 (Page 1 of 2)

Border Contr. v. Great American
Civil Action No. B-02-0027 0015

0102699

**GREAT AMERICAN INSURANCE COMPANIES**
Subsidiaries of American Financial Corporation
580 WALNUT STREET, CINCINNATI, OHIO 45202

**CM 76 44**   (Ed. 12/91)

**Policy:** TIM 927-36-04   03

## CONTRACTOR'S EQUIPMENT DECLARATIONS
### SCHEDULED FORM

**FORMS AND ENDORSEMENTS** applying to this Coverage Part and made part of this Policy at time of issue:
**SEE   CM 88 01   11/85**

CM 76 44      12/91                        (Page  2 of  2 )

Border Contr. v. Great American
Civil Action No. B-02-0027            0016

0102699
ORIGINAL COPY

**GREAT AMERICAN INSURANCE COMPANIES**
Subsidiaries of American Financial Corporation
580 WALNUT STREET, CINCINNATI, OHIO 45202

CM 76 45
(Ed. 12 91)

# CONTRACTOR'S EQUIPMENT

## SCHEDULED COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is or is not covered.

Throughout this policy, the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we," "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to paragraphs headed **DEFINITIONS.**

### A. COVERAGE

We will pay for "loss" to Covered Property from any of the Covered Causes of Loss.

1. **Covered Property,** as used in this Coverage Form means:

   a. your contractor's equipment and tools;

   b. similar property of others in your care, custody or control;

   described in the Declarations.

2. **Property Not Covered**

   Covered Property does not mean:

   a. property while loaned, leased or rented to others, unless you provide the operator;

   b. blue prints, mechanical drawings, plans or specifications;

   c. tires and tubes, unless "loss" is coincidental with other covered "loss;"

   d. aircraft, watercraft, motor vehicles designed for transporting passengers or freight over the highway;

   e. equipment or tools while waterborne, unless Covered Property is on regular ferries or railroad carfloats;

   f. property while underground or underwater;

   g. contraband, or property in the course of illegal transportation or trade.

3. **Covered Causes of Loss**

   Covered Causes of Loss means Risks of Direct Physical "Loss" to the Covered Property except those causes of "loss" listed in the Exclusions.

Border Contr. v. Great American
Civil Action No. B-02-0027

4. **Coverage Extension**

   a. **Debris Removal**

   (1) We will pay your expense to remove debris of Covered Property caused by or resulting from an insured peril that occurs during the policy period. The expenses will be paid only if they are reported to us within 180 days of the earlier of:

   (a) The date of direct physical loss or damage; or

   (b) The end of the policy period.

   (2) The most we will pay under this coverage is the lesser of:

   (a) 25% of the applicable Limit of Insurance for direct physical loss to Covered Property; or

   (b) $25,000.

   The limit of Debris Removal is separate from the Limit of Insurance stated elsewhere in the policy.

   The Coinsurance provision, if any, in this policy does not apply to this additional coverage.

   (3) The additional coverage does not apply to cost to:

   (a) Extract "pollutants" from land or water; or

   (b) Remove, restore or replace polluted land or water.

   b. **Additionally Acquired Property**

   We will insure additional equipment items similar to those scheduled, which you buy or lease "long term," but not beyond:

   (1) 30 days; or

   (2) the end of the policy period

   whichever occurs first.

   The most we will pay in a "loss" under this Coverage Extension is the lesser of:

   (1) 25% of the policy loss limits; or

   (2) $150,000

   You must report these items to us within thirty (30) days after you obtain them. Premium will be charged from the date of acquisition. If you fail to report new items within the thirty (30) day period coverage will end automatically at the earlier of:

   (1) 30 days after the date you acquire the property; or

(2)  the end of the policy period.

The Coinsurance Additional Condition does not apply to this Coverage Extension.

This extension of coverage applies only to equipment which you buy or lease on a "long term" basis.

## B. EXCLUSIONS

1.  We will not pay for a "loss" caused directly or indirectly by any of the following. Such "loss" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the "loss."

    **a.  Governmental Action**

    Seizure or destruction of property by order of governmental authority.

    But we will pay for acts of destruction ordered by governmental authority and taken at the time of a fire to prevent its spread if the fire would be covered under this Coverage Form.

    **b.  Nuclear Hazard**

    (1)  any weapon employing atomic fission or fusion, or

    (2)  nuclear reaction or radiation, or radioactive contamination from any other cause. But we will pay for direct "loss" caused by resulting fire if the fire would be covered under this Coverage Form.

    **c.  War and Military Action**

    (1)  war, including undeclared or civil war;

    (2)  warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

    (3)  insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.

2.  We will not pay for a "loss" caused by or resulting from any of the following:

    a.  Delay, loss of use, loss of market or any other consequential loss.

    b.  Dishonest acts by:

    (1)  You, your employees or authorized representatives;

    (2)  Anyone else with an interest in the property, or their employees or authorized representatives;

    (3)  Anyone else (other than a "carrier" for hire) to whom you entrust the property.

    This exclusion applies whether or not such persons are acting alone or in collusion with other persons or such acts occur during the hours of employment.

c.   Unexplained disappearance or shortage found upon taking inventory.

d.   Artificially generated current creating a short circuit or other electric disturbance within Covered Property.

But, we will pay for "loss" caused by resulting fire or explosion.

e.   Processing or any work upon property covered.

But, we will pay for "loss" caused by resulting fire or explosion.

f.   The weight of the load exceeding the lifting capacity of any equipment. Such lifting capacity shall be stated in the manufacturer's operating specifications for the operating conditions existing at the time of "loss."

3.   We will not pay for a "loss" caused by or resulting from any of the following. But if "loss" by a Covered Cause of Loss results, we will pay for that resulting "loss."

a.   Gradual deterioration, hidden or latent defects, any quality in the property that causes it to damage or destroy itself, wear and tear, depreciation, corrosion, rust, dampness, cold or heat.

b.   Mechanical breakdown or failure of Covered Property.

## C.  DEDUCTIBLE

We will pay the amount of the adjusted "loss" in any one occurrence in excess of the Deductible amount shown in the Declarations, up to the applicable Limit of Insurance.

## D.  ADDITIONAL CONDITIONS

The following conditions apply in addition to the Commercial Inland Marine Conditions and Common Policy Conditions:

1.   **Coverage Territory**

We cover property within:

a.   the states of the United States (excluding Alaska);

b.   Canada.

2.   **Coinsurance**

You must carry sufficient insurance in order to avoid a penalty at the time of "loss." We will pay only the proportion of any "loss" that the applicable Limits of Insurance in the Schedule bears to 80% of the actual cash value of the item(s) involved at the time of "loss." Our payments won't exceed the Limit of Insurance shown in the Schedule for the item.

3.   **Impairment of Rights of Recovery**

If you agree before or after a "loss" to waive your rights of recovery against any person or organization responsible for the "loss," we shall not cover your "loss." Nor shall we cover a "loss" when you settle or compromise with others without our consent.

Border Contr. v. Great American
Civil Action No. B-02-0027

0020

E. **DEFINITIONS**

"**Loss**" means accidental loss or damage.

"**Carrier**" means a person or organization who provides motor, rail or air transportation for compensation.

"**Long term**" means twelve (12) consecutive months or more.

"**Pollutant**" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

ORIGINAL COPY

0102699

Great American Insurance Companies
Subsidiaries of American Financial Corporation
580 Walnut Street, Cincinnati, Ohio 45202

**CM 78 70** (Ed. **06/92**)

Policy: TIM 927-36-04 03

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**LOSS PAYABLE PROVISIONS**

**This applies to coverage for Inland Marine CONTRACTOR'S EQUIPMENT**

NAME: CATERPILLAR FINANCIAL SERVICES
CORPORATION
ADDRESS: 4975 PRESTON PARK, STE 280
PLANO, TX 75093

Applies to the following listed items only:

| Item No. | Description | Limit of Insurance |
|---|---|---|
| 0001 | CATERPILLAR 426C, SN-6XN01663. | $50,000 |
| 0002 | 1999 CATERPILLAR BACKHOE LOADER, MODEL #446B; SN-5BL01944. | $93,821 |
| 0011 | 1989 CATERPILLAR 966E WHEEL/LOADER, SN-99Y6701 | $80,657 |
| 0013 | 2000 CATERPILLAR 446B BACKHOE LOADER, SN-5BL02169 | $102,667 |

**LOSS PAYABLE**

For Covered Property in which both you and a Loss Payee shown above have
an insurable interest, we will:

1. adjust losses with you; and

2. pay any claim for loss or damage jointly to you and the Loss Payee, as
   interest may appear.

OTHER TERMS REMAIN THE SAME

CM 78 70    06/92         (Page 1 of 1)

Border Contr. v. Great American
Civil Action No. B-02-0027

0022

C - 11-08/01/00-TIM9273604-03

ORIGINAL COPY

0102699

**Great American Insurance Companies**
Subsidiaries of American Financial Corporation
580 Walnut Street, Cincinnati, Ohio 45202

**CM 78 70**   (Ed. 06/92)

Policy: TIM 927-36-04  03

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### LOSS PAYABLE PROVISIONS

### This applies to coverage for Inland Marine CONTRACTOR'S EQUIPMENT

NAME:    NUECES POWER EQUIPMENT

ADDRESS: P. O. BOX 4789
         CORPUS CHRISTI, TX  78469

Applies to the following listed items only:

| Item No. | Description | Limit of Insurance |
|----------|-------------|--------------------|
| 0009 | 1999 C3902X GME TRENCH BOX MODEL-N-816; SN-9902181-2 | $12,000 |
| 0010 | 1999 C3542X TRENCH BOX MODEL 820DW; SN-98081189-2 | $12,000 |

**LOSS PAYABLE**

For Covered Property in which both you and a Loss Payee shown above have an insurable interest, we will:

1. adjust losses with you; and

2. pay any claim for loss or damage jointly to you and the Loss Payee, as interest may appear.

OTHER TERMS REMAIN THE SAME

CM 78 70      06/92            (Page  1 of  1 )

Border Contr. v. Great American
Civil Action No. B-02-0027

0023

GREAT AMERICAN INSURANCE COMPANIES
Subsidiaries of American Financial Corporation
580 WALNUT STREET, CINCINNATI, OHIO 45202

CM 01 12
(Ed. 10 90)

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## TEXAS CHANGES

This endorsement modifies insurance provided under the following:

COMMERCIAL INLAND MARINE COVERAGE PART

**A.** Commercial Inland Marine Loss Condition **B. APPRAISAL** is replaced by the following:

**B. Appraisal**

If we and you disagree on the value of the property or the amount of "loss," either may make written demand, within 60 days after our receipt of a signed, sworn statement of "loss," for an appraisal of the "loss." In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree for 15 days upon such umpire, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of "loss." If they fail to agree, they will submit their difference to the umpire. A decision agreed to by any two will be binding. Each party will:

1. pay its chosen appraiser; and

2. bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

**B.** Paragraph **8.** of Commercial Inland Marine Loss Condition **C. DUTIES IN THE EVENT OF LOSS** is replaced by the following:

8. Send us a signed, sworn statement of "loss" containing the information we request to settle the claim. You must do this within 91 days after our request. We will supply you with the necessary forms.

**C.** Paragraph **2.** of Commercial Inland Marine General Condition **B. LEGAL ACTION AGAINST US** is replaced by the following:

2. The action is brought within 2 years and 1 day after you first have knowledge of "loss."

**D.** Paragraphs **A.5.a.** and **A.5.b.** of the Coverage Extensions and paragraph **F.2.** of the Definitions in the **EQUIPMENT DEALERS COVERAGE FORM** are deleted

Copyright, Insurance Services Office, I

**GREAT AMERICAN INSURANCE COMPANIES**
Subsidiaries of American Financial Corporation
580 WALNUT STREET, CINCINNATI, OHIO 45202

**CM 78 79**
(Ed. 10 92)

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### ADDITIONAL INSURED
This applies to coverage for Inland Marine CONTRACTOR'S EQUIPMENT

Name:    FINANCIAL FEDERAL CREDIT

Address: 1300 POST OAK BLVD., STE 1300
         HOUSTON                    TX 77056

Attention:

Applies to any Covered Property in which the above Additional Insured has an interest.

**ADDITIONAL INSURED**

For Covered Property in which both you and an Additional Insured shown above have an insurable interest, we will:

1.  adjust losses with you; and

2.  pay any claim for loss or damage jointly to you and the Additional Insured, as interest may appear.

### Other Terms Remain The Same

CM 78 79 (Ed. 10/92) PRO        (Page 1 of 1)

Border Contr. v. Great American
Civil Action No. B-02-0027

0025

**GREAT AMERICAN INSURANCE COMPANIES**
Subsidiaries of American Financial Corporation
580 WALNUT STREET, CINCINNATI, OHIO 45202

**CM 88 02 (Ed. 11 85)**

## BUSINESSPRO GENERAL ENDORSEMENT

ADDITIONAL POLICY CONDITION(S)

YOU AGREE TO BRING THIS EQUIPMENT BACK TO YOUR YARD DURING NON-

WORKING HOURS OR NO COVERAGE FOR THEFT OR VANDALISM AND MALICIOUS

MISCHIEF APPLIES DURING NON-WORKING HOURS.

Border Contr. v. Great American
Civil Action No. B-02-0027    0026

## GUIDE TO POLICY CONSTRUCTION

A Great American Insurance Company Business policy consists of:

A.  A policy Jacket, containing company officers' signatures;

B.  A common Policy Declarations;

C.  Common Policy Conditions;

D.  One or more underlying lines of insurance Policy Declarations;

E.  One or more Coverage Parts (each line of insurance is a coverage part) for each line of insurance Declarations.

Each Coverage Part consists of:

1.  A line of insurance Conditions form (if applicable);

2.  One or more Cause of Loss forms (if applicable);

3.  Applicable Endorsements.

Border Contr. v. Great American
Civil Action No. B-02-0027

0027

ORIGINAL COPY

0102699

**Great American Insurance Companies**
Subsidiaries of American Financial Corporation
580 Walnut Street, Cincinnati, Ohio 45202

**CM 78 70**    (Ed. **06/92**)

Policy: TIM 927-36-04   03

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## LOSS PAYABLE PROVISIONS

## This applies to coverage for Inland Marine CONTRACTOR'S EQUIPMENT

NAME:   FINANCIAL FEDERAL CREDIT,
            INC.
ADDRESS: 1300 POST OAK BLVD., STE 1300
            HOUSTON, TX

Applies to the following listed items only:

| Item No. | Description | Limit of Insurance |
|----------|-------------|--------------------|
| 0003 | CATERPILLAR MODEL 950E WHEEL LOADER, SN-22Z4512 | $58,800 |
| 0012 | 2000 LINKBELT MODEL 4300Q HYDRAULIC EXCAVATOR, SN-LE2J0-3448 | $196,750 |

**LOSS PAYABLE**

For Covered Property in which both you and a Loss Payee shown above have an insurable interest, we will:

1.   adjust losses with you; and

2.   pay any claim for loss or damage jointly to you and the Loss Payee, as interest may appear.

OTHER TERMS REMAIN THE SAME

CM 78 70        06/92            (Page   1 of   1 )

Border Contr. v. Great American
Civil Action No. B-02-0027

0028

Property & BM Claims
49 East Fourth Street
Dixie Terminal North Building
Suite 300
Cincinnati, OH 45202-3803
513.287.8277 ph

PO Box 5440
Cincinnati, OH 45202-5440
800.584.0835 toll-free

RECEIVED

AUG 2 7 2001


GREAT**AMERICAN**.
INSURANCE GROUP

August 1, 2001

Border Contractors Inc.
28226 Dilworth Road
Harlingen, Texas 78562
ATTN: Darlene

## DECLINATION OF COVERAGE, CERTIFIED MAIL, RETURN RECEIPT REQUESTED

RE: Claim no.        :    571521248
    Insured          :    Border Contractors Inc.
    Date of loss     :    July 12, 2001

Dear Darlene,

On July 13, 2001, we received the above captioned claim. The loss pertains to the theft of a 2000 Cat 446 B Backhoe from your job site located three miles south of US 83.

The above captioned claim was presented for consideration of coverage under policy number  TIM 9273604, inception date August 1, 2000, expiration date August 1, 2001. Our policy is written under the **CONTRACTORS EQUIPMENT SCHEDULED COVERAGE FORM (CM7645 ED. 12/91).**

During our investigation, we determined that the backhoe was stolen from the job site after business hours on the date in question. It is clear that the unit in question was not brought back to your main location yard after business hours and that this theft was off premises.

**PLAINTIFF'S EXHIBIT NO. 2**

Border Contr. v. Great American
Civil Action No. B-02-0027

0041

We now refer you to your policy form (CM8802) ADDITIONAL POLICY CONDITIONS, page 1 of 1:

You agree to bring this equipment back to your yard during non working hours or no coverage for theft or vandalism and malicious mischief applies during non working hours.

Please be advised that we have concluded our investigation of this matter. It is clear that the property in question was taken from a job site away from your storage yard after business hours. It is based on this information that we must respectfully decline any and all coverage with respect to this matter.

Please be advised that this letter does not constitute and is not intended as a waiver of any undisclosed existing or future violations of any other terms of the policy contract. If you currently possess or obtain in the future any information which may have a bearing on our decision, please forward it to us for our review and consideration.

If you have any specific questions or concerns regarding this correspondence, please contact the undersigned at 800-689-0744.

Sincerely,

Ron Henderson, AIC
Claims Specialist

c.c.     Jarrett Insurance Brokers
10210 N. Central Expressway Suite 500
Dallas, Texas 75231

# ACORD™ COMMERCIAL INSURANCE APPLICATION
## APPLICANT INFORMATION SECTION

**DATE** 07/03/2001

| PRODUCER | PHONE (A/C, No, Ext): 972-907-8160 | CARRIER | NAIC CODE: | UNDERWRITER | UNDERWRITER OFF. |
|---|---|---|---|---|---|
| | FAX (A/C, No.): | | | | |

AGENCY, INC.
50 COIT RD.
SUITE #104
DALLAS, TX 75240

| CODE: | SUB CODE: |
|---|---|

AGENCY CUSTOMER ID

**POLICIES OR PROGRAM REQUESTED**

**POLICY NUMBER**

| INDICATE SECTIONS ATTACHED | | |
|---|---|---|
| X | PROPERTY | |
| | GLASS AND SIGN | |
| | ACCOUNTS RECEIVABLE/ VALUABLE PAPERS | |
| | CRIME/ MISCELLANEOUS CRIME | X |
| | TRANSPORTATION/ MOTOR TRUCK CARGO | |

| | EQUIPMENT FLOATER | |
|---|---|---|
| | INSTALLATION/ BUILDERS RISK | |
| | ELECTRONIC DATA PROC | |
| X | COMMERCIAL GENERAL LIABILITY | |
| X | BUSINESS AUTO | |
| | TRUCKERS/ MOTOR CARRIER | |

| | GARAGE AND DEALERS | |
|---|---|---|
| | VEHICLE SCHEDULE | |
| | BOILER & MACHINERY | |
| | WORKERS COMPENSATION | |
| X | UMBRELLA | |

## STATUS OF TRANSACTION

| X | QUOTE | | | ISSUE POLICY | | RENEW |
|---|---|---|---|---|---|---|
| | BOUND (Give Date and/ or Attach Copy): | | | | | |
| | CHANGE | DATE | | TIME | | AM |
| | CANCEL | | | | | PM |

## PACKAGE POLICY INFORMATION

ENTER THE ITEMS WHICH APPLY ON COMMON DATES AND TERMS APPLY TO SEVERAL LINES, OR FOR MONOLINE POLICIES.

| PROPOSED EFF DATE | PROPOSED EXP DATE | BILLING PLAN | PAYMENT PLAN | AUDIT |
|---|---|---|---|---|
| 08/01/2001 | 08/01/2002 | DIRECT BILL | | |
| | | Z   AGENCY BILL | | |

## APPLICANT INFORMATION

| NAME (First Named Insured & Other Insureds) | FEIN OR SOC SEC # (of First Named Insured): 74-2658878 | MAILING ADDRESS INCL ZIP+4 (of First Named Insured) |
|---|---|---|
| BORDER CONTRACTORS, INC. | PHONE (A/C, No, Ext): 956-421-2755 | 28226 DILWORTH ROAD |
| | INTERNET ADDRESS: | HARLINGEN, TX 78562 |

| | INDIVIDUAL | X | CORPORATION | SUBCHAPTER "S" CORPORATION | NOT FOR PROFIT ORG | CR BUREAU NAME | ID NUMBER | YEAR BUS STARTED |
|---|---|---|---|---|---|---|---|---|
| | PARTNERSHIP | | JOINT VENTURE | LIMITED CORPORATION | | | | 3 |

| INSPECTION CONTACT | PHONE (A/C, No, Ext): 956-421-2755 | ACCOUNTING RECORDS CONTACT | PHONE (A/C, No, Ext): 956-421-2755 |
|---|---|---|---|
| VICKI WRIGHT | | SAME | |

## PREMISES INFORMATION

| LOC # | BLD # | STREET, CITY, COUNTY, STATE, ZIP+4 | CITY LIMITS | | INTEREST | | YR BUILT | PART OCCUPIED |
|---|---|---|---|---|---|---|---|---|
| 1 | 1 | 28266 DILWORTH RD. HARLINGEN, CAMERON, TEXAS 78562 | X INSIDE | X | OWNER | | | ALL |
| | | | OUTSIDE | | TENANT | | | |
| | | | INSIDE | | OWNER | | | |
| | | | OUTSIDE | | TENANT | | | |
| | | | INSIDE | | OWNER | | | |
| | | | OUTSIDE | | TENANT | | | |

## NATURE OF BUSINESS/ DESCRIPTION OF OPERATIONS BY PREMISE(S)

TELEPHONE, TELEGRAPH OR CABLE TELEVISION LINE CONSTRUCTION

## GENERAL INFORMATION

| EXPLAIN ALL "YES" RESPONSES | YES | NO | EXPLAIN ALL "YES" RESPONSES | YES | NO |
|---|---|---|---|---|---|
| 1. IS THE APPLICANT A SUBSIDIARY OF ANOTHER ENTITY OR DOES THE APPLICANT HAVE ANY SUBSIDIARIES? | | X | 7. ANY PAST LOSSES OR CLAIMS RELATING TO SEXUAL ABUSE OR MOLESTATION ALLEGATIONS, DISCRIMINATION OR NEGLIGENT HIRING? | | X |
| 2. IS A FORMAL SAFETY PROGRAM IN OPERATION? | | X | 8. DURING THE LAST FIVE YEARS (TEN IN RI), HAS ANY APPLICANT BEEN CONVICTED OF ANY DEGREE OF THE CRIME OF ARSON? In RI, this question must be answered by any applicant for property insurance. Failure to disclose the existence of an arson conviction is a misdemeanor punishable by a sentence of up to one year of imprisonment). | | X |
| 3. ANY EXPOSURE TO FLAMMABLES, EXPLOSIVES, CHEMICALS? | | X | | | |
| 4. ANY CATASTROPHE EXPOSURE? | | X | | | |
| 5. ANY OTHER INSURANCE WITH THIS COMPANY OR BEING SUBMITTED? | | X | 9. ANY UNCORRECTED FIRE CODE VIOLATIONS? | | X |
| 6. ANY POLICY OR COVERAGE DECLINED, CANCELLED OR NON-RENEWED DURING THE PRIOR 3 YEARS? NOT APPLICABLE IN MO | | X | 10. ANY BANKRUPTCIES, TAX OR CREDIT LIENS AGAINST THE APPLICANT IN THE PAST 5 YEARS? | | X |

## REMARKS/ PROCESSING INSTRUCTIONS

ANY PERSON WHO KNOWINGLY AND WITH INTENT TO DEFRAUD ANY INSURANCE COMPANY OR ANOTHER PERSON FILES AN APPLICATION FOR INSURANCE OR STATEMENT OF CLAIM CONTAINING ANY MATERIALLY FALSE INFORMATION, OR CONCEALS FOR THE PURPOSE OF MISLEADING, INFORMATION CONCERNING ANY FACT MATERIAL THERETO, COMMITS A FRAUDULENT INSURANCE ACT, WHICH IS A CRIME AND SUBJECTS THE PERSON TO CRIMINAL AND [NY: SUBSTANTIAL CIVIL PENALTIES] (NOT APPLICABLE IN CO, HI, NE, OH, OK, OR, VT; IN DC, LA, ME AND VA, INSURANCE BENEFITS MAY...)

| APPLICANT'S SIGNATURE | Vicki Wright | PRODUCER'S SIGNATURE | R. |
|---|---|---|---|

ACORD 125 (2000/ 08)     PLEASE COMPLETE REVERSE SIDE

PLAINTIFF'S EXHIBIT NO. 3

## PRIOR CARRIER INFORMATION

| LINE | CATEGORY | | | | | |
|---|---|---|---|---|---|---|
| | CARRIER | SCOTTSDALE | EMPIRE IND. | LEGION IND. | | |
| | POLICY NUMBER | CLS06697893 | CL300231 | GL20536614 | | |
| | POLICY TYPE | CLAIMS MADE X OCCURRENCE | CLAIMS MADE X OCCURRENCE | CLAIMS MADE X OCCURRENCE | CLAIMS MADE OCCURRENCE | CLAIMS MADE OCCURRENCE |
| | RETRO DATE | 08/01/00 | 07/29/99 | 07/29/98 | | |
| | EFF-EXP DATE | 08/01/01 | 08/01/00 | 07/29/99 | | |
| **COMMERCIAL GENERAL LIABILITY LIMITS** | GENERAL AGGREGATE | 2,000,000 | 2,000,000 | 2,000,000 | | |
| | PRODUCTS COMP OP AGGREGATE | 1,000,000 | 1,000,000 | 1,000,000 | | |
| | PERSONAL & ADV INJ | 1,000,000 | 1,000,000 | 1,000,000 | | |
| | EACH OCCURRENCE | 1,000,000 | 1,000,000 | 1,000,000 | | |
| | FIRE DAMAGE | 50,000 | 50,000 | 50,000 | | |
| | MEDICAL EXPENSE | 5,000 | 5,000 | 5,000 | | |
| | BODILY INJURY OCCURRENCE | | | | | |
| | BODILY INJURY AGGREGATE | | | | | |
| | PROPERTY DAMAGE OCCURRENCE | | | | | |
| | PROPERTY DAMAGE AGGREGATE | | | | | |
| | COMBINED SINGLE LIMIT | | | | | |
| | MODIFICATION FACTOR | | | | | |
| | TOTAL PREMIUM | $13,000 | $14,000 | $5,000 | | |
| **AUTOMOBILE LIABILITY** | CARRIER | STATE & COUNTY | DALLAS FIRE | DALLAS FIRE | | |
| | POLICY NUMBER | SCB100122 | DFA5090838 | DFA500838 | | |
| | POLICY TYPE | COMM AUTO | COMM AUTO | COMM AUTO | | |
| | EFF-EXP DATE | 08/01/00-01 | 08/31/99-08-01/00 | 08/31/98-99 | | |
| | COMBINED SINGLE LIMIT | 1,000,067 | 1,000,000 | 1,000,000 | | |
| | BODILY INJURY EA PERSON | | | | | |
| | BODILY INJURY EA ACCIDENT | | | | | |
| | PROPERTY DAMAGE | | | | | |
| | MODIFICATION FACTOR | | | | | |
| | TOTAL PREMIUM | $15494 | $3073 | $969 | | |
| **PROPERTY** | CARRIER | GREAT AMERICAN | GREAT AMERICAN | GREAT AMERICAN | | |
| | POLICY NUMBER | TIM9273604 | TIM9273604 | TIM9273606 | | |
| | POLICY TYPE | EQUIPMENT FLT. | EQUIPMENT FLT | EQUIPMENT FLT | | |
| | EFF-EXP DATE | 08/01/00-01 | 08/01/99/00 | 08/01/98/99 | | |
| | BUILDING AMT | | | | | |
| | PERS PROP AMT | $944.065 | $611,245 | $202,621 | | |
| | MODIFICATION FACTOR | | | | | |
| | TOTAL PREMIUM | $7641. | $3039. | $864 | | |
| **WORK COMP** | CARRIER | NORTH AMERICAN | TWCF | TWCF | | |
| | POLICY NUMBER | BWW0104319 | TSF1084107 | TSF1084107 | | |
| | POLICY TYPE | WORK COMP | WORK COMP | WORK COMP | | |
| | EFF-EXP DATE | 08/01/00-01 | 11/12/99-08/1/00 | 11/12/98-99 | | |
| | LIMIT | 1M/1M/1M | 1M/1M/1M | 1M/1M/1M | | |
| | MODIFICATION FACTOR | $37,198 | $47,936 | $34,536 | | |
| | TOTAL PREMIUM | | | | | |

## LOSS HISTORY

ENTER ALL CLAIMS OR LOSSES (REGARDLESS OF FAULT AND WHETHER OR NOT INSURED) OR OCCURRENCES THAT MAY GIVE RISE TO CLAIMS FOR THE PRIOR 5 YEARS (3 YEARS IN KS & NY)

CHK HERE IF NONE X SEE ATTACHED LOSS SUMMARY

| DATE OF OCCURRENCE | LINE | TYPE/ DESCRIPTION OF OCCURRENCE OR CLAIM | DATE OF CLAIM | AMOUNT PAID | AMOUNT RESERVED | CLAIM STATUS |
|---|---|---|---|---|---|---|
| | | | | | | OPEN |
| | | | | | | CLOSED |
| | | | | | | OPEN |
| | | | | | | CLOSED |

REMARKS    NOTE: FIDELITY REQUIRES A FIVE YEAR LOSS HISTORY

## NOTICE OF INSURANCE INFORMATION PRACTICES

PERSONAL INFORMATION ABOUT YOU, INCLUDING INFORMATION FROM A CREDIT REPORT, MAY BE COLLECTED FROM PERSONS OTHER THAN YOU IN CONNECTION WITH THIS APPLICATION FOR INSURANCE AND SUBSEQUENT POLICY RENEWALS. SUCH INFORMATION AS WELL AS OTHER PERSONAL AND PRIVILEGED INFORMATION ... TED BY US OR OUR AGENTS MAY IN CERTAIN CIRCUMSTANCES BE DISCLOSED TO THIRD PARTIES. YOU HAVE THE RIGHT TO REVIEW YOUR PERSONAL ... ATION IN OUR FILES AND CAN REQUEST CORRECTION OF ANY INACCURACIES. A MORE DETAILED DESCRIPTION OF YOUR RIGHTS AND OUR PRACTICES REGARDING SUCH INFORMATION IS AVAILABLE UPON REQUEST. CONTACT YOUR AGENT OR BROKER FOR INSTRUCTION ON HOW TO SUBMIT A REQUEST TO US.

ACORD 125 (2000/08)

Border Contr. v. Great American
Civil Action No. B-02-0027

0038

# ACORD. EQUIPMENT FLOATER SECTION

| | DATE (MM/DD/YY) |
|---|---|
| | 07/03/2001 |

| PRODUCER | 972-907-8160 | APPLICANT | BORDER CONTRACTORS, INC. | | | | |
|---|---|---|---|---|---|---|---|

| | PROPOSED EFF. DATE | PROPOSED EXP. DATE | BILLING PLAN | PAYMENT PLAN | AUDIT |
|---|---|---|---|---|---|
| ..IR AGENCY, INC.<br>13150 COIT RD.<br>SUITE #104<br>DALLAS, TX 75240 | 08/01/2001 | 08/01/2002 | X AGENCY<br>DIRECT | | |
| | FOR COMPANY USE ONLY | | | | |

| TERRITORY OF OPERATION | TYPE OF OPERATION |
|---|---|
| HARLINGEN, CAMERON COUNTY, TEXAS AREA | UNDERGROUND UTILITY PIPES - CONCRETE & PVC |

**COVERAGE/DEDUCTIBLE**

ITEMS WITH VALUE OF $5000 OR LESS SHOULD HAVE A $500 DEDUCTIBLE
ITEMS WITH VALUE OF $5000 AND MORE SHOULD HAVE $1000 DEDUCTIBLE
***ITEM LEASED SHOULD HAVE SEPARATE RATE THAN OWNED EQUIPMENT - AUDIT ANNUAL LEASED  SHOW  LMT $200,000

**EQUIPMENT STORAGE**

| Loc. # | MO. IN STORAGE | MAXIMUM VALUE | | TYPE OF SECURITY |
|---|---|---|---|---|
| | | IN BUILDING | OUTSIDE | |
| | | $ | $ | |
| | | $ | $ | |
| | | $ | $ | |

**UNSCHEDULED EQUIPMENT**

| DESCRIPTION | MAXIMUM ITEM | AMT. OF INSURANCE | % COINS |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |

## ADDITIONAL INTEREST/CERTIFICATE RECIPIENTS (Attach separate sheet if necessary)

| NAME & ADDRESS | NAME & ADDRESS |
|---|---|
| FINANCIAL FEDERAL CREDIT<br>1300 POST OAK BLVD #1300<br>HOUSTON, TX 77056<br><br>*items 3 + 8* | CATERPILLAR FINANCIAL SERVICES CORPORATION<br>4975 PRESTON PARK, SUITE #280<br>PLANO, TX 75093   #9, #11, #12, #15<br>CATERPILLAR FINANCIAL SERVICES CORPORATION<br>2120 WEST END AVE, NASHVILLE, TN 37203<br>#20 |

| INTEREST | | | INTEREST | | |
|---|---|---|---|---|---|
| ADDITIONAL INSURED | X | CERTIFICATION REQUIRED | ADDITIONAL INSURED | X | CERTIFICATION REQUIRED |

| NAME & ADDRESS | NAME & ADDRESS |
|---|---|
| NUECES POWER EQUIPMENT<br>P O BOX 4789<br>CORPUS CHRISTI, TX 78469 | VERMEER EQUIPMENT OF TEXAS, INC.<br>1025 E. EXPRESSWAY 83<br>DONNA, TX 78537<br><br>#1 #19 |

| INTEREST | | | INTEREST | | |
|---|---|---|---|---|---|
| ADDITIONAL INSURED | X | CERTIFICATION REQUIRED | ADDITIONAL INSURED | X | CERTIFICATION REQUIRED |

**GENERAL INFORMATION**

| # | EXPLAIN ALL "YES" RESPONSES. | YES | NO | # | EXPLAIN ALL "YES" RESPONSES. | YES | NO |
|---|---|---|---|---|---|---|---|
| 1. | EQUIPMENT RENTED, LOANED TO/FROM OTHERS WITH/WITHOUT OPERATORS? | | X | 3. | PROPERTY USED UNDERGROUND? | | X |
| 2. | IS APPLICANT OPERATING EQUIPMENT NOT LISTED HERE? | | X | 4. | ANY WORK DONE AFLOAT? | | X |

**REMARKS**

ACORD 146 (2000/05)          EQUIPMENT SCHEDULE ON REVERSE SIDE          ' ACORD CORPORATION 1988

**SCHEDULED EQUIPMENT**

% COINSURANCE

| # | MODEL YEAR | TYPE | MANUFACTURER | MODEL | CAPACITY | OTHER | IDW/SERIAL NO. | DATE PURCHASED | NEW/USED | AMOUNT OF INSURANCE |
|---|---|---|---|---|---|---|---|---|---|---|
| | | TRENCHER | | | | | T800HT/0326X2 | LEASED | | $ $104,000 |
| 2 | 2000 | INTERGATED TOOL CARRIER | | | | | IT28G/8CR02179 | LEASED | | $ $107,200 |
| 3 | 1994 | CATERPILLER HYDRAULIC EXCAVATOR | | | | | 330L/5YM00661 | LEASED | | $ $75.000 |
| 4 | | DYNA PAC COMPACTAOR/WITH 24" DRUM | | | | | ILP852/48610257 | OWNED | | $ $32,420 |
| 5 | | INGERSOLL RAND P185W5~~0~~ ~~P185WJD~~ AIR COMPRESSOR | | | | | 1221 | | | $ $20,000 |
| ~~6~~ | | ~~COMPRESSOR 185CFM/OSL~~ | | | | | ~~0049~~ | | | $ ~~$8,800~~ |
| 7 | | (7) 2-WAY KENWOOD TK940 RADIOS | | | | | VRS | OWNED | | $ $1400 EACH |
| 8 | | MIKEDON PIPE PULLER | | | | | PP STD | | | $ $13,000 |
| 9 | | CAPTERPILLAR | | | | | 426C/6XN01663 | OWNED | | $ $64,209 |
| 10 | 1999 | CATERPILLAR BACKHOE LOADER | | | | | 446B/5BL01944 | OWNED | | $ $113,042 |
| 11 | | CATERPILLAR WHEEL LOADER | | | | | 950E/22Z4512 | LEASED | | $ $58,800 |
| 12 | | (2) CALDWELL TEA-CUP PIPE CARRIER/W SLINGS | | | | | PC1 | | | $ $1000 EACH |
| 13 | | HONDA WATER PUMP | | | • | | W2BF1102679 | | | $ $600 |
| | | HONDA WATER PUMP | | | | | WZBE118731~~6~~ | | | $ $600 |
| 15 | | HONDA GENERATOR | | | | | 3MN005 | | | $ $1,200 |
| 16 | | DEWALT SKILLSAW | | | | | DW362160145 | | | $ $150 |
| 17 | 1999 | C3902X GME TRENCH BOX | | | | | N816/9902181-2 | | | $ $12,000 |
| 18 | 1999 | C3542X TRANCH BOX | | | | | 820DW/98081189-2 | | | $ $12,000 |
| 19 | 1989 | CATERPILLAR WHEEL LOADER | | | | | 966E/49Y6701 | | | $ $80,657 |
| 20 | 2000 | LINKBELT MD4300Q HYDRAULIC EXCAVATOR | | | | | LE2JO-3448 | LEASED | | $ $209,376 |
| ~~21~~ | ~~2000~~ | ~~CATERPILLAR 446B BACKHOE LOADER~~ | | | | | ~~5BL02169~~ | ~~LEASED~~ | | $ ~~$102,687~~ |
| 22 | | CATERPILLAR WHEEL LOADER | | | | | 950E/22Z4512 | | | $ $58,800 |
| 23 | 1993 | JOHN DEER 490E HYDRAULIC EXCAVATOR | | | | | FF490ES20677 | LEASEDS | | $ $37,187 |
| 24 | | CATERPILLAR 446B BACKHOE | | | | | 5BL01942 | LEASED | | $ $51.775 |
| 25 | 1997 | CATERPILLAR 330BL HYDRAULIC EXCAVATOR | | | | | 6DR01348 | OWNED | | $ $77,500 |
| | | | | | | | | | | $ |
| | | | | | | | | | | $ |
| | | | | | | | | | | $ |

**ACORD 146 (2000/05)**            **ATTACH TO APPLICANT INFORMATION SECTION**

07/27/2001  09:56    2146925830    JARRETT INS BROKERS    PAGE 01



**U.S. Risk Brokers, Inc.**
*a member company of U.S. Risk Insurance Group, Inc.*

10210 N. Central Expressway • Suite 500 • Dallas • Texas • 75231
(214) 696-4700 • Fax: (214) 692-5830 • Toll Free (800) 952-7738

TO: HR
(Agency)
CAROLYN GOINS
(Attention)

(Phone/Fax)

FROM: SAM MALNARD
DATE: 7-27-01
DIRECT: 214-265-3413

REFERENCE: BORDER CONTRACTORS

COVERAGE: PROPERTY                    ☒ QUOTE        ☐ INDICATION

CARRIER: GREAT AMERICAN INS. CO.        Best Rating: A

FORM:    ☐ Special    ☐ Broad    ☐ Basic    CONTRACTORS EQUIPMENT FLOAT

LIMIT: $ _____        Total Value    ☐ Blanket        ☐ Scheduled
$ 1,282,703    Loss Limit  SCHEDULE
$ _____        Sublimit _____
$ _____        Sublimit _____
$ _____        Other: _____
$ _____        Other: _____

DEDUCTIBLE:    $ 1,000    _____
$ _____    _____

COINSURANCE:    ☐ 80%    ☐ 90%    ☐ _____

VALUATION:  ☐ Replacement Cost  ☐ Buildings  ☐ Contents  ☐ _____
☒ Actual Cash Value  ☐ Buildings  ☐ Contents  ☐ _____

EXCLUDING:  ☐ Wind & Hail  ☒ Earthquake & Flood  ☐ Other: _____

TERMS & CONDITIONS: EQUIPMENT MUST BE RETURNED TO FENCED YARD DURING NON WORKING HOURS OR THEFT/VMM IS EXCLUDED

SUBJECT TO:  ☐ Complete Signed Application    ☐ Inspection    ☐ Company Loss Runs _____ Years

_____
_____

OPTION:    _____
_____

PREMIUM:    $ 19,343        ☐ Premium is Minimum
POL/INSP FEE:  $ N/A        ☐ Policy/Inspection fee
STATE TAX/FEE: $ _____        ☐ ___% Minimum Re
TOTAL:    $ 19,343        10 % Commission

**PLAINTIFF'S EXHIBIT NO.**
Border Contr. v. Great American
Civil Action No. B-02-0027

All terms and conditions are subject to carrier policy form and may not conform to those requested in t
Brokers required to bind contracts. Quote/Indication is valid for 30 days unless otherwise stated

0031

# ACORD™ INSURANCE BINDER

**DATE** 08/01/2001

**THIS BINDER IS A TEMPORARY INSURANCE CONTRACT, SUBJECT TO THE CONDITIONS SHOWN ON THE REVERSE SIDE OF THIS FORM.**

| PRODUCER | | |
|---|---|---|
| PHONE (A/C No. Ext): 972-907-8160 | | |
| FAX (A/C No): | | |

.R AGENCY, INC.
13150 COIT RD.
SUITE #104
DALLAS, TX 75240

CODE:    SUB CODE:

AGENCY CUSTOMER ID:

INSURED

BORDER CONTRACTORS, INC.
28226 DILWORTH ROAD
HARLINGEN, TX 78562

**COMPANY**
GREAT AMERICAN

**BINDER #** TIM927360404

| EFFECTIVE | | EXPIRATION | |
|---|---|---|---|
| DATE | TIME | DATE | TIME |
| 08/01/2001 | 12:01 [X] AM PM | 12/01/2001 | [X] 12:01 AM NOON |

[X] THIS BINDER IS ISSUED TO EXTEND COVERAGE IN THE ABOVE NAMED COMPANY PER EXPIRING POLICY #: TIM927360403

DESCRIPTION OF OPERATIONS/VEHICLES/PROPERTY (Including Location)
BINDER ISSUED PENDING RECEIPT OF POLICY FROM GREAT AMERICAN

## COVERAGES

**LIMITS**

| TYPE OF INSURANCE | COVERAGE/FORMS | DEDUCTIBLE | COINS % | AMOUNT |
|---|---|---|---|---|
| **PROPERTY**  CAUSES OF LOSS<br>BASIC  BROAD  SPEC<br>[X] EQUIPMENT COVERAGE | PER ATTACHED LIST OF EQUIPMENT<br>** EXCLUDES FLOOD & EARTHQUAKE<br>SEE CONDITIONS SHOWN BELOW | 1000 | ACV | 1,252,703 |

| GENERAL LIABILITY | | | |
|---|---|---|---|
| COMMERCIAL GENERAL LIABILITY | EACH OCCURRENCE | $ | |
| | DAMAGE TO RENTED PREMISES | $ | |
| CLAIMS MADE  OCCUR | MED EXP (Any one person) | $ | |
| | PERSONAL & ADV INJURY | $ | |
| | GENERAL AGGREGATE | $ | |
| RETRO DATE FOR CLAIMS MADE: | PRODUCTS › COMP/OP AGG | $ | |

| AUTOMOBILE LIABILITY | | | |
|---|---|---|---|
| ANY AUTO | COMBINED SINGLE LIMIT | $ | |
| ALL OWNED AUTOS | BODILY INJURY (Per person) | $ | |
| SCHEDULED AUTOS | BODILY INJURY (Per accident) | $ | |
| RED AUTOS | PROPERTY DAMAGE | $ | |
| NON-OWNED AUTOS | MEDICAL PAYMENTS | $ | |
| | PERSONAL INJURY PROT | $ | |
| | UNINSURED MOTORIST | $ | |
| | | $ | |

| AUTO PHYSICAL DAMAGE  DEDUCTIBLE | ALL VEHICLES  SCHEDULED VEHICLES | | |
|---|---|---|---|
| COLLISION: | ACTUAL CASH VALUE | $ | |
| OTHER THAN COL: | STATED AMOUNT | $ | |
| | OTHER | $ | |

| GARAGE LIABILITY | | | |
|---|---|---|---|
| ANY AUTO | AUTO ONLY › EA ACCIDENT | $ | |
| | OTHER THAN AUTO ONLY: | | |
| | EACH ACCIDENT | $ | |
| | AGGREGATE | $ | |

| EXCESS LIABILITY | | | |
|---|---|---|---|
| UMBRELLA FORM | EACH OCCURRENCE | $ | |
| OTHER THAN UMBRELLA FORM | AGGREGATE | $ | |
| RETRO DATE FOR CLAIMS MADE: | SELF-INSURED RETENTION | $ | |

| WORKER'S COMPENSATION AND EMPLOYER'S LIABILITY | | | |
|---|---|---|---|
| | WC STATUTORY LIMITS | | |
| | E.L. EACH ACCIDENT | $ | |
| | E.L. DISEASE › EA EMPLOYEE | $ | |
| | E.L. DISEASE › POLICY LIMIT | $ | |

| SPECIAL CONDITIONS/ OTHER COVERAGES | EQUIPMENT MUST BE RETURNED TO FENCED YARD DURING NON WORKING HOURS OR THEFT & VMM IS EXCLUDED | | |
|---|---|---|---|
| | FEES | $ | |
| | TAXES | $ | |
| | ESTIMATED TOTAL PREMIUM | $ | |

## NAME & ADDRESS

MORTGAGEE  ADDITIONAL INSURED
LOSS PAYEE
LOAN #

INSURED'S PROOF OF RENEWAL PENDING
RECEIPT OF POLICY

AUTHORIZED REPRESENTATIVE

PLAINTIFF'S EXHIBIT NO. 5

ACORD 75 (2001/01)    NOTE: IMPORTANT STATE INFORMATION ON REVERSE SIDE

08/06/2001  16:49    2146925830                    JARRETT INS BROKERS                      PAGE  01



## U.S. Risk Brokers, Inc.
a member company of U. S. Risk Insurance Group, Inc.
10210 N. Central Expressway, Suite 500
Dallas, Texas 75231 • (214) 696-4700

| | |
|---|---|
| **B** | **I** | **N** | **D** | **E** | **R** |

---

**INSURED:**            112286/263299
Border Contractors, Inc.
28226 Dilworth Road
Harlingen, TX 78562

**BINDER NBR:**
**FROM:**        12:01 a.m.
**TO:**          12:01 a.m.

---

**PRODUCER:**        12187
   Carolyn Goins
   HR Agency
   13150 Coit Road, Suite 104
   Dallas, TX 75240

   (972)907-8160   FAX: (972)907-8162

**INSURANCE COMPANY:**
Great American Insurance Company of
New York
**POLICY NBR:** TIM9273604-04
**EFFECTIVE:**   08-01-01
**EXPIRES:**     08-01-02

---

**DESCRIPTION OF OPERATION:**

---

### T E R M S  &  C O N D I T I O N S

FORM OF COVERAGE:   INLAND MARINE - CONTRACTORS EQUIPMENT FLOATER
                    ALL RISK EXCLUDING FLOOD AND EARTHQUAKE
LIMITS:          $1,252,783
DEDUCTIBLE:      $1,000
ACTUAL CASH VALUE

EQUIPMENT MUST BE RETURNED TO FENCED YARD DURING NON WORKING HOURS OR
THEFT/VMM IS EXCLUDED.
RATE:            1.56

COMMISSION: 10%              BY:  SAM MAYNARD

---

        PREMIUM:    $19,543.00
        TOTAL:      $19,543.00      * PLEASE REVIEW THIS BINDER CAREFULLY AS IT MAY    *
                                    * NOT PROVIDE THE COVERAGES OR TERMS YOU REQUESTED *

RANDALL G. GOSS, CHC

PLAINTIFF'S
EXHIBIT
NO. 6

Border Contr. v. Great American
Civil Action No. B-02-0027

0030



HR FINANCIAL SERVICES, INC.
HR GROUP, INC.

Home Office.
13150 Coit Road
Suite 104
Dallas, Texas 75240

972 / 907-8160

972 / 907-8162
FAX

www.hrcompanies.com

September 5, 2001


Mr. Sam Maynard
U.S. Risk
10210 N. Central Expressway  S-500
Dallas, TX.  75231


Re: Border Contractors
    #TIM 927-36-04


Dear Sam,

Confirming our conversation today on the above account,
I received a call from the Great American adjuster yes-
terday saying he would not reopen the claim as the equip-
ment was not returned to "your yard". When reading the
endorsement, the client did return their equipment to
"their yard."

Nowhere on the endorsement is their a reference to an
address. As the insured/client rented a storage site,
this more than meets the definition of premises and
again more than meets the qualifications of "your yard."

I strongly suggest that you send a letter from your
claims people stating that the loss meets the terms and
conditions of the policy and for Great American to
expedite the handling of this claim. Your help and co-
operation in clearing this matter is greatly appreciated.


Respectfully,

Jeff Davis



Border Contr. v. Great American
Civil Action No. B-02-0027

0034



HR FINANCIAL SERVICES, INC.
HR GROUP, INC.

*Home Office:*
13150 Coit Road
Suite 104
Dallas, Texas 75240

972 / 907-8160

972 / 907-8162
FAX

www.hrcompanies.com

December 3, 2001

Mr. Robert Banks
Attorney At Law
218 E. Harrison Ave.
Harlingen, TX. 78550-9134

Re: Front End Loader Loss

Dear Mr. Banks,

I have enclosed the two prior policies and a copy of the proposal from the General Agent and nowhere on either document does it show that the equipment must be returned to Dilworth, only.

I have also enclosed a copy of a possible loss from 2 years ago (the equipment was found) and again we never received any question about the location being only at Dilworth.

I finally spoke to the underwriter about the loss and its status as to why it has not been paid. He responded that the adjuster was standing his ground that the equipment was not on your premises even though the policy does not state that it must be on Dilworth.

Both the underwriter and myself as well as an independent adjuster for another company believe that Great American's claim representative is wrong.

It is our joint opinion that you must immediately file suit against Great American Insurance that you must ask for relief via the deceptive trade practices statutes for the State Of Texas.

Finally, I have enclosed a copy of my



PLAINTIFF'S EXHIBIT NO.

Border Contr. v. Great American
Civil Action No. B-02-0027

0035

General Agent wherein I asked for clarification which relates to paragraph three of my letter.

If I can provide any additional help or clarification, please let me know.


Respectfully,

Jeff Davis


CC: V. Wright/Border

# ACORD  PROPERTY LOSS NOTICE

DATE 07/12/2001

| | |
|---|---|
| PRODUCER (INC. A/C, Ext.) 972-907-8180 | DATE OF LOSS AND TIME 07/12/00  UNKNOWN |

HR AGENCY
13150 COIT ROAD, SUITE 104
DALLAS, TX 75240

| | COMPANY AND POLICY NUMBER | POLICY DATES |
|---|---|---|
| CO: | GREAT AMERICAN INS. CO. | EFF: 09/01/2000 |
| POL: | TUM827-38-04-03 | EXP: 09/01/2001 |

**INSURED**
ORDER CONTRACTORS, INC.
8228 DILWORTH ROAD
HARLINGEN, TX 78562

BUSINESS PHONE (A/C, No, Ext)
956-421-2755

**CONTACT**
NAME AND ADDRESS OF INSURED
DARLENE LAWLER
2822B DILWORTH ROAD
HARLINGEN, TEXAS 78562

**LOSS**
LOCATION: JR. HIGH SCHOOL, HARLINGEN, TEXAS

SHERIFF - HARLINGEN - #01-14358

| KIND OF LOSS | | | | |
|---|---|---|---|---|
| FIRE | LIGHTNING | FLOOD | OTHER | |
| X THEFT | HAIL | WIND | (Explain) | |

DESCRIPTION OF LOSS & DAMAGE:
EQUIPMENT WAS IN EMPTY LOT NEXT TO JR. HIGH AND WHEN INSURED CAME IN THE AM TO GET IT, IT WAS GONE

**POLICY INFORMATION**
MORTGAGEE: CATERPILLAR FINANCIAL SERVICES CORPORATION

| ITEM | SUBJECT OF INSURANCE | | AMOUNT | % COINS | DEDUCTIBLE | COVERAGE AND/OR DESCRIPTION OF PROPERTY INSURED |
|---|---|---|---|---|---|---|
| 13 | BLDG X EQUIPMENT | CNTS | 102,887 | 100 | 1,000 | 2000 CATERPILLAR BACKHOE 446B BACK HOE |
| | BLDG | CNTS | | | | |
| | BLDG | CNTS | | | | |

REPORTED BY: INSURED
REPORTED TO: U.S. RISK - FAX 7/12/01

*R. Jeffrey Davis* (signature)

PLAINTIFF'S
EXHIBIT
NO.

Border Contr. v. Great American
Civil Action No. B-02-0027

0029



**HR**

HR FINANCIAL SERVICES, INC.

HR GROUP, INC.

*Home Office*
15150 Cox Road
Suite 104
Dallas, Texas 75240

972 / 907-8160

972 / 907-8162
FAX

www.hrcompanies.com

*Providing opportunity
for success.™*

August 30, 2001

Mr. Sam Maynard
US Risk
P.O. Box 844521
Dallas, TX. 75284

Re: Border Contractors
     TIM9273604-04

Dear Sam,

There seems to be a misunderstanding on the loss of
a piece of equipment for the above referenced insured.

It appears that when our office reported the loss, we
did not let the carrier know that the equipment was in
a secured lot. Please see the insured letter which
states this and shows you a map of where the equipment
was when it was stolen.

Please have Great American reopen this claim and pro-
ceed with the correct completion of the claim.

Than you for your help and prompt attention to this re-
quest based on the correct information.

Respectfully,

Jeff Davis

cc: D. Wright

Received   08-31-01   07:31   From-2148925850   To-GREAT AMERICAN   Page 02



PLAINTIFF'S
EXHIBIT
NO. 10

Border Contr. v. Great American
Civil Action No. B-02-0027

0033

1      IN THE UNITED STATES DISTRICT COURT
       FOR THE SOUTHERN DISTRICT OF TEXAS
2              BROWNSVILLE DIVISION

3             C.A. NO. B-02-027

4

5          BORDER CONTRACTORS, INC.

           VS
6

     GREAT AMERICAN INSURANCE COMPANY OF NEW YORK
7

8

9        ORAL AND VIDEOTAPED DEPOSITION OF

10            ROBERT JEFFREY DAVIS

11

12             February 28, 2003

13                 COPY

14          ANSWERS AND DEPOSITION OF ROBERT

15   JEFFREY DAVIS, produced as a witness at the

16   instance of the Defendant, taken in the

17   above-styled and -numbered cause on the 28th day

18   of February, 2002, from 10:08 a.m. to 11:00 a.m.,

19   before Ronald R. Cope, a Certified Shorthand

20   Reporter in and for the State of Texas, Registered

21   Professional Reporter and Certified Realtime

22   Reporter, reported in machine shorthand at the

23   offices of MillerParker, Inc., located at 5910 N.

24   Central Expressway, 100 Premier Place, in the City

25   of Dallas, County of Dallas and State of Texas.

| | | |
|---|---|---|
| 10:48:40 | 1 | a letter you're referring to in your file? |
| 10:48:42 | 2 | A    Yes.   That I read to -- Sam asked me  -- |
| 10:48:45 | 3 | Sam Maynard -- I don't have it noted in my file as |
| 10:48:48 | 4 | such, but it appears that Sam must have called the |
| 10:48:54 | 5 | claims adjuster for Great American, Ron -- |
| 10:48:57 | 6 | Q    Henderson? |
| 10:48:59 | 7 | A    That's it.  -- and asked him to look at |
| 10:49:02 | 8 | it again because he was in agreement with he, he |
| 10:49:07 | 9 | being Sam Maynard.  I'm sorry.  Sam Maynard was in |
| 10:49:10 | 10 | agreement with me that it met the terms and |
| 10:49:12 | 11 | conditions of the policy and we asked Ron |
| 10:49:14 | 12 | Henderson to look at the claim again because |
| 10:49:17 | 13 | nowhere in there did it specify an address on the |
| 10:49:21 | 14 | policy as to what "your yard" is.  And that's what |
| 10:49:27 | 15 | I -- the letter then went back to Sam asking one |
| 10:49:30 | 16 | more time that he might want to look at it one |
| 10:49:33 | 17 | more time, because nowhere in the endorsement is |
| 10:49:36 | 18 | there a reference to an address as the insured |
| 10:49:39 | 19 | client rented a storage site. |
| 10:49:40 | 20 | Q    You're reading from Exhibit -- |
| 10:49:42 | 21 | A    I'm reading from Exhibit Number 7, yes. |
| 10:49:44 | 22 | Q    Okay. |
| 10:49:45 | 23 | A    I just said I strongly suggest you sent a |
| 10:49:47 | 24 | letter from your claims people, who Sam Maynard -- |
| 10:49:51 | 25 | the claims people at US Risk must have reviewed it |

| | | |
|---|---|---|
| 10:59:32 | 1 | Number 3, the binder, after we make a copy; and |
| 10:59:35 | 2 | then Exhibit Number 8 I'm going to make as the -- |
| 10:59:39 | 3 | in group, if that's okay with you, his file? |
| 10:59:41 | 4 | MR. BANKS: (Mr. Banks nods.) |
| 10:59:42 | 5 | MS. DANISH: With that, Mr. Davis, |
| 10:59:43 | 6 | I'm going to pass the witness. Thank you for your |
| 10:59:45 | 7 | time. |
| 10:59:46 | 8 | MR. BANKS: I've just got a couple |
| 10:59:47 | 9 | questions. |
| 10:59:48 | 10 | THE WITNESS: Sure. |
| | 11 | EXAMINATION |
| 10:59:50 | 12 | BY MR. BANKS: |
| 10:59:50 | 13 | Q    It's your testimony that -- and your |
| 10:59:53 | 14 | opinion that Border Contractors did comply with |
| 10:59:56 | 15 | the provisions of the policy -- |
| 10:59:57 | 16 | A    Yes. |
| 10:59:58 | 17 | Q    -- as far as returning the equipment to |
| 10:59:59 | 18 | the yard? |
| 11:00:00 | 19 | A    To the yard -- to their yard. |
| 11:00:01 | 20 | Q    And I think you said you spoke to Sam |
| 11:00:16 | 21 | Maynard about this? |
| 11:00:17 | 22 | A    Yes, sir. |
| 11:00:18 | 23 | Q    And what was Sam Maynard's job at the |
| 11:00:21 | 24 | time? |
| 11:00:21 | 25 | A    He is -- still is employed by US Risk. |

| | | |
|---|---|---|
| 11:00:24 | 1 | He's the -- a broker for US Risk. |
| 1:00:28 | 2 | Q    And he told you it was his opinion that |
| 11:00:30 | 3 | it was covered by the policy -- |
| 11:00:32 | 4 | MS. DANISH:  Objection, form. |
| 11:00:33 | 5 | Q    (By Mr. Banks)  -- so the only people who |
| 11:00:35 | 6 | said it's not covered by the policy is the |
| 11:00:38 | 7 | carrier? |
| 11:00:39 | 8 | A    To the best of my knowledge. |
| 11:00:40 | 9 | MS. DANISH:  Objection, form. |
| 11:00:41 | 10 | MR. BANKS:  Pass the witness. |
| 11:00:42 | 11 | MS. DANISH:  I don't have anything |
| 11:00:44 | 12 | else.  Thank you. |
| 1:00:44 | 13 | THE VIDEOGRAPHER:  Going off the |
| 11:00:45 | 14 | record at 11:01 a.m. |
| | 15 | - - - - - - |
| | 16 | |
| | 17 | |
| | 18 | |
| | 19 | |
| | 20 | |
| | 21 | |
| | 22 | |
| | 23 | |
| | 24 | |
| | 25 | |

1  STATE OF TEXAS       X

2  COUNTY OF DALLAS     X

3

4          I, Ronald R. Cope, a Certified

5  Shorthand Reporter duly commissioned and qualified

6  in and for the State of Texas, Registered

7  Professional Reporter and Certified Realtime

8  Reporter, do hereby certify that there came before

9  me on the 28th day of February at MillerParker,

10 Inc. located at 5910 N. Central Expressway, 100

11 Premier Place in the city of Dallas, County of

12 Dallas, State of Texas, the following named

13 person, to-wit: ROBERT JEFFREY DAVIS, who was duly

14 sworn to testify the truth, the whole truth, and

15 nothing but the truth of knowledge touching and

16 concerning the matters in controversy in this

17 cause; and that he was thereupon examined upon

18 oath and his examination reduced to typewriting

19 under my supervision; that the deposition is a

20 true record of the testimony given by the witness,

21 and signature of the witness is to be before any

22 notary public and returned within 30 days from

23 date of receipt of transcript.

24          I further certify that I am neither

25 attorney or counsel for, nor related to or

1  employed by any of the parties to the action in

2  which this deposition is taken, and further that I

3  am not a relative or employee of any attorney or

4  counsel employed by the parties hereto, or

5  financially interested in the action.

6          IN WITNESS WHEREOF, I have hereunto

7  set my hand this _5th_ day of _March_____,

8  2003.

9

10

11  _____
    RONALD R. POPE, CSR, RPR, CRR

12  Texas CSR 1813
    Expiration Date: 12/31/03

13  MillerParker, Inc.
    100 Premier Place

14  5910 North Central Expressway
    Dallas, Texas  75206-5190

15  Charge for transcript and exhibits $ _____

16  To be paid by Defendant/Ms. Teri L. Danish

17  Job Sheet No. 3962LM
    Job Reference No. 03115

18

19

20

21

22

23

24

25

(b) This section does not limit the department's authority to take any other disciplinary action against a license holder as provided under another provision of this code.

(c) If a person disputes the assessment of a fine under this section, the matter is a contested case subject to Chapter 2001, Government Code.

Sec. 6.    Repealed by Acts 2001, 77th Leg., ch. 703, § 8.01(3), eff. Sept. 1, 2001.

### Enforcement of Subchapter

Sec. 6A.    The attorney general, a district or county attorney, or the department acting through the commissioner may institute an injunction proceeding or any other proceeding to enforce this subchapter and to enjoin any person, firm, corporation, or depository institution from engaging or attempting to engage in the business of insurance in violation of this code or any other insurance law of this state. The provisions of this section are cumulative of the other penalties or remedies provided by this article.

Added by Acts 1993, 73rd Leg., ch. 685, § 12.01, eff. Sept. 1, 1993. Amended by Acts 2001, 77th Leg., ch. 703, §§ 1.03, 1.04, 1.05, 1.06, 8.01(3), eff. Sept. 1, 2001.

Section 12.53 of Acts 1993, 73rd Leg., ch. 685 provides:

"This article applies only to issuance or renewal of a license or discipline of a license holder on or after September 1, 1993. Issuance or renewal of a license or discipline of a license holder before September 1, 1993, is governed by the law in effect immediately before the effective date of this Act, and that law is continued in effect for this purpose."

## Art. 21.02.    Who Are Agents

(a) Any person who solicits insurance on behalf of any insurance company, whether incorporated under the laws of this or any other state or foreign government, or who takes or transmits other than for himself any application for insurance or any policy of insurance to or from such company, or who advertises or otherwise gives notice that he will receive or transmit the same, or who shall receive or deliver a policy of insurance of any such company, or who shall examine or inspect any risk, or receive, or collect, or transmit any premium of insurance, or make or forward any diagram of any building or buildings, or do or perform any other act or thing in the making or consummating of any contract of insurance for or with any such insurance company other than for himself, or who shall examine into, or adjust, or aid in adjusting, any loss for or on behalf of any such insurance company, whether any of such acts shall be done at the instance or request, or by the employment of such insurance

company, or of, or by, any broker or other person, shall be held to be the agent of the company for which the act is done, or the risk is taken, as far as relates to all the liabilities, duties, requirements and penalties set forth in this chapter. This article does not authorize an agent to orally, in writing, or otherwise alter, amend, modify, waive, or change a term or condition of an insurance policy or application for an insurance policy. The provisions of this subchapter shall not apply to citizens of this State who arbitrate in the adjustment of losses between the insurers and insured, nor to the adjustment of particular or general average losses of vessels or cargoes by marine adjusters who had paid an occupation tax of $200 for the year in which the adjustment is made, nor to practicing attorneys at law in the State of Texas, acting in the regular transaction of their business as such attorneys at law, and who are not local agents, nor acting as adjusters for any insurance company. Any person who shall do any of the acts mentioned in this article for or on behalf of any insurance company without such company having first complied with the requirements of the laws of this State, shall be personally liable to the holder of any policy of insurance in respect of which such act was done for any loss covered by the same.

(b) The referral by an unlicensed person of a customer or potential customer to a licensed insurance agent is not an act of an agent under this article, unless the unlicensed person discusses specific insurance policy terms or conditions with the customer or potential customer.

Acts 1951, 52nd Leg., ch. 491. Amended by Acts 1985, 69th Leg., ch. 203, § 1, eff. May 24, 1985; Acts 2001, 77th Leg., ch. 703, § 1.07, eff. Sept. 1, 2001.

Art. 21.02–1.    Repealed by Acts 2001, 77th Leg., ch. 703, § 8.01(4), eff. Sept. 1, 2001

Art. 21.02–2.    Repealed by Acts 1985, 69th Leg., ch. 203, § 2, eff. May 24, 1985

Art. 21.02–3.    Renumbered as art. 21.02–1 by Acts 1985, 69th Leg., ch. 203, § 1, eff. May 24, 1985

## Art. 21.03.    Assessment of Taxes

Whenever any person shall do or perform within this State any of the acts mentioned in the preceding article for or on behalf of any insurance company therein referred to, such company shall be held to be doing business in this State and shall be subject to the

943 S.W.2d 455, Grain Dealers Mut. Ins. Co. v. McKee, (Tex. 1997)                                    **Page 1**

**\*455**  943 S.W.2d 455

40 Tex. Sup. Ct. J. 483

Supreme Court of Texas.

**GRAIN DEALERS MUTUAL INSURANCE COMPANY, Petitioner,**
v.
**Gerald Wayne McKEE and wife, Diana Michelle McKee,**
**individually and a/n/f of Kelly McKee, a minor,**
**Respondents.**
No. 96-0022.
Argued on Dec. 18, 1996.
Decided April 18, 1997.

   Named insured's president and sole shareholder sought declaratory judgment that business automobile insurance policy covered his child for uninsured motorist (UM), underinsured motorist (UIM), and personal injury protection (PIP) benefits for injuries sustained while passenger in vehicle that was not covered auto. The 37th District Court, Bexar County, Don McManus, J., granted summary judgment finding daughter to be insured under policy. Following severance and abatement of remaining issues, insurer appealed. The Court of Appeals, Chapa, C.J., 911 S.W.2d 775, affirmed. On application for writ of error, the Supreme Court, Abbott, J., held that child could not be family member of named insured and, therefore, was not insured under the policy.

   Reversed.

   Spector, J., dissented and filed opinion.

West Headnotes

[1] Insurance ⬦⟿2661
   217 ----
       217XXII Coverage--Automobile Insurance
          217XXII(A) In General
          217k2661 Family Members; Household.

       (Formerly 217k467.51(3), 217k467.61(2.1))

   [See headnote text below]

[1] Insurance ⬦⟿2660
   217 ----
       217XXII Coverage--Automobile Insurance
          217XXII(A) In General
          217k2660 Persons Covered in General.

   (Formerly 217k467.61(2.1))
   Child of named insured's president and sole shareholder could not be "family member" of named insured, was not "insured" under business automobile insurance policy, and, therefore, was not entitled to uninsured motorist (UM), underinsured motorist (UIM), or personal injury protection (PIP) benefits for injuries as passenger of car that was not covered auto; corporation could not have family.
[2] Insurance ⬦⟿2661
   217 ----
       217XXII Coverage--Automobile Insurance
          217XXII(A) In General

Copyright (c) West Group 2002 No claim to original U.S. Govt. works

943 S.W.2d 455, Grain Dealers Mut. Ins. Co. v. McKee, (Tex. 1997)    **Page 2**

217k2661 Family Members;  Household.

(Formerly 217k467.51(3))
Corporation insured by business automobile insurance policy cannot have family as that term is used in definition of "insured" to include family member of named insured or designated person.

_ [3] Insurance ☞1806
217 ----
217XIII Contracts and Policies
217XIII(G) Rules of Construction
217k1806 Application of Rules of Contract Construction.

(Formerly 217k146)
General rules of contract construction govern insurance policy interpretation.

[4] Contracts ☞143(2)
95 ----
95II Construction and Operation
95II(A) General Rules of Construction
95k143 Application to Contracts in General
95k143(2) Existence of Ambiguity.
Contract is unambiguous as matter of law if it can be given definite or certain legal meaning.

[5] Insurance ☞1816
217 ----
217XIII Contracts and Policies
217XIII(G) Rules of Construction
217k1815 Reasonableness
217k1816 In General.

(Formerly 217k146.1(2))

[See headnote text below]

[5] Insurance ☞1832(1)
217 ----
217XIII Contracts and Policies
217XIII(G) Rules of Construction
217k1830 Favoring Insureds or Beneficiaries;  Disfavoring Insurers
217k1832 Ambiguity, Uncertainty or Conflict
217k1832(1) In General.

(Formerly 217k146.7(1))
If insurance contract is subject to more than one reasonable interpretation, contract is ambiguous, and interpretation that most favors coverage for insured will be adopted.

[6] Insurance ☞2661
217 ----
217XXII Coverage--Automobile Insurance
217XXII(A) In General
217k2661 Family Members;  Household.

(Formerly 217k467.51(3))
Status of named insured's president and sole shareholder did not create ambiguity as to whether president's

Copyright (c) West Group 2002 No claim to original U.S. Govt. works

child was "insured" as family member of named insured under business automobile insurance policy.

[7] Corporations ⬡⮞1.3
  101 ----
    101I Incorporation and Organization
    101k1.3 Distinct Entity in General, Corporation As.
    Corporation is entity separate from its shareholders.

[8] Corporations ⬡⮞1.4(4)
  101 ----
    101I Incorporation and Organization
      101k1.4 Disregarding Corporate Entity
    101k1.4(4) Instrumentality, Agency, or Alter Ego.
    While corporate fiction may be disregarded under certain extraordinary circumstances, mere control and ownership of all stock of corporation is not sufficient basis for ignoring distinction between shareholder and corporate entity.

[9] Insurance ⬡⮞1816
  217 ----
    217XIII Contracts and Policies
      217XIII(G) Rules of Construction
        217k1815 Reasonableness
        217k1816 In General.

      (Formerly 217k146.1(2))

  [See headnote text below]

[9] Insurance ⬡⮞1810
  217 ----
    217XIII Contracts and Policies
      217XIII(G) Rules of Construction
        217k1810 Construction as a Whole.

  (Formerly 217k146.2)
  Although interpreting insurance policy to give reasonable meaning to all provisions is preferable to interpreting policy in way that creates surplusage or leaves portion of policy useless or inexplicable, surplusage alone does not make insurance policy ambiguous.

[10] Insurance ⬡⮞2661
  217 ----
    217XXII Coverage--Automobile Insurance
      217XXII(A) In General
        217k2661 Family Members; Household.

  (Formerly 217k467.51(3))
  Interpreting business automobile insurance policy so that child of named insured's president and sole shareholder was not "insured" while occupying vehicle other than covered auto did not cause forfeiture, but merely restricted coverage to those who were insured; child would have been covered as passenger in covered auto or as family member of designated person, if president had been designated on policy.

[11] Insurance ⬡⮞1807
  217 ----
    217XIII Contracts and Policies

Copyright (c) West Group 2002 No claim to original U.S. Govt. works

217XIII(G) Rules of Construction
217k1807 Function of Courts.

(Formerly 217k146.1(2))
Policy provisions are not rendered ambiguous and susceptible to more than one reasonable interpretation merely by other jurisdictions reaching different conclusions about similar policy provisions; opinions from other states about insurance policy interpretation can be persuasive, but ambiguity is for court to decide.

[12]  Insurance ☞2661
    217 ----
        217XXII Coverage--Automobile Insurance
        217XXII(A) In General
        217k2661 Family Members;  Household.

    (Formerly 217k467.51(3), 217k467.61(2.1), 217k139)

[See headnote text below]

[12]  Insurance ☞2660
    217 ----
        217XXII Coverage--Automobile Insurance
        217XXII(A) In General
        217k2660 Persons Covered in General.

(Formerly 217k467.61(2.1))
Coverage for uninsured motorist (UM), underinsured motorist (UIM), and personal injury protection (PIP) benefits could be restricted to persons insured under the policy, and, thus, interpreting definition of "insured" in business automobile insurance policy so that child of named insured's president and sole shareholder was not family member and thus was not insured did not contravene public policy. V.A.T.S. Insurance Code, arts. 5.06-1(1), 5.06-3(a).

**\*456** Edward C. Mainz, Jr., San Antonio, for Petitioner.

Malcolm C. Halbardier, Corpus Christi, for Respondents.

ABBOTT, Justice, delivered the opinion of the Court, in which PHILLIPS, Chief Justice, GONZALEZ, HECHT, CORNYN, JUSTICE ENOCH, OWEN and BAKER, Justices, join.

In this case we must determine whether the Business Auto Policy that Grain Dealers Mutual Insurance Company ("Grain Dealers") issued to Future Investments, Inc. ("Future Investments"), a corporation of which Gerald McKee is the president and sole shareholder, (FN1) provides coverage for McKee's daughter. We conclude that it does not. Accordingly, we reverse the judgment of the court of appeals and render judgment for Grain Dealers.

McKee's eleven-year-old daughter, Kelly, was injured in a one-car accident while riding as a passenger in a car driven by her adult step-sister, Delane Aranda. Delane's husband owned the car. The accident occurred during the effective period of the insurance policy issued to McKee by Grain Dealers. The parties stipulated that neither Delane nor the car involved in the accident was covered under the Grain Dealers policy and that the accident occurred during an outing unrelated to any business purpose of Future Investments. Kelly resided with McKee when the accident occurred;  Delane did not.

McKee sued (1) his Texas Personal Auto Policy insurance carrier, Companion Insurance Company, for Uninsured/Underinsured Motorist Protection ("UM/UIM") coverage;  (2) Delane;  and (3) Grain Dealers. McKee settled with Companion and Delane for a total of $320,000.00.

Copyright (c) West Group 2002 No claim to original U.S. Govt. works

By counter-motions for summary judgment, McKee and Grain Dealers sought a declaratory judgment on the coverage issue. The trial court granted summary judgment in favor of McKee, finding that Kelly was entitled to coverage under the policy's UM/UIM and Personal Injury Protection ("PIP") provisions. The court of appeals affirmed, concluding that the policy was ambiguous and that the ambiguity should be resolved in favor of the insured. 911 S.W.2d 775, 779-81. We must determine the scope of coverage the UM/UIM and PIP endorsements provide and whether the endorsements are ambiguous such that a reasonable interpretation of the policy provides Kelly coverage.

[1] The UM/UIM endorsement provides three categories of "who is an insured" under the policy:

**\*457** 1. You and any **designated person** and any **family member** of either.

2. Any other person **occupying** a **covered auto.**

3. Any person or organization for damages that person or organization is entitled to recover because of **bodily injury** sustained by a person described in 1. or 2. above.

The PIP endorsement provides two categories of "who is an insured":

1. You or any **family member** while **occupying** or when struck by any **auto.**

2. Anyone else **occupying** a **covered auto** with your permission.

The insurance policies and the summary judgment evidence demonstrate that the Grain Dealers policy excludes coverage for Kelly. In order for the policy to cover Kelly, she must fall within one of the categories of "who is an insured." The Business Auto Coverage Form of the Grain Dealers policy provides: "Throughout this policy the words 'you' and 'your' refer to the Named Insured in the Declarations page." The declarations page of the Grain Dealers policy provides that Future Investments is the "named insured." Future Investments is also the "named insured" in the UM/UIM and PIP endorsements. The UM/UIM endorsement defines "designated person" as "an individual named in the schedule. By such designation, that person has the same coverage as you." Future Investments did not name a "designated person" in the space provided in the UM/UIM endorsement and did not list additional autos to be covered under either endorsement. The names of Gerald McKee and Kelly McKee do not appear anywhere in the policy or the endorsements. As a result, Kelly does not qualify as "you" or "designated person" under the endorsements.

[2] Additionally, Kelly does not qualify as a "family member" under the endorsements. "Family member" is defined in both endorsements as "a person related to you [Future Investments] by blood, marriage, or adoption who is a resident of your [Future Investments] household, including a ward or foster child." Kelly is obviously not related to Future Investments by blood, marriage, or adoption. Of course, she also does not reside in Future Investments' household. A corporation simply cannot have a "family" as that term is defined in the policy. *See Webster v. U.S. Fire Ins. Co.,* 882 S.W.2d 569, 572 (Tex.App.--Houston [1st Dist.] 1994, writ denied) (citing *Sproles v. Greene,* 329 N.C. 603, 407 S.E.2d 497, 500 (1991)).

Because Kelly does not qualify as a "designated person," a "family member," or "you," she does not fall within the first classification of who is an insured under the UM/UIM and PIP endorsements. The parties agree that Kelly was not occupying a covered auto when the accident occurred. As a result, Kelly does not fall within category 2 of either the UM/UIM or PIP endorsements. In order to recover under category 3 of the UM/UIM endorsement, Kelly would have to be a person described in categories 1 or 2. Because she is not, it is clear that Kelly does not fall within any of the endorsement classifications of "who is an insured."

Nevertheless, McKee argues that the policy is ambiguous because the "family member" language contained in the PIP and UM/UIM endorsements, when viewed from his perspective as the president and sole shareholder of Future Investments, is susceptible to the reasonable interpretation that the endorsements provided coverage for his family members. McKee maintains that *"he is the corporation* " and, consequently, his daughter is a family

Copyright (c) West Group 2002 No claim to original U.S. Govt. works

member covered by the endorsement language. In finding ambiguity, the court of appeals agreed that the family-owned nature of Future Investments was a significant factor. The court of appeals explained:

> When the contract is considered in the surrounding circumstances, namely, providing insurance coverage to a sole shareholder corporation, it is entirely reasonable that "[a]n endorsement that specifically added coverage for 'family members,' as did this one, would reasonably be understood as providing [underinsured] motorist insurance for members of the [McKee] family independent of whether they were occupying a covered automobile at the time of the injury."

**\*458** 911 S.W.2d at 781 (quoting *Ceci v. National Indem. Co.,* 225 Conn. 165, 622 A.2d 545, 549 (1993)).

[3][4][5] The general rules of contract construction govern insurance policy interpretation. *State Farm Life Ins. Co. v. Beaston,* 907 S.W.2d 430, 433 (Tex.1995); *Forbau v. Aetna Life Ins. Co.,* 876 S.W.2d 132, 133 (Tex.1994). "Whether a contract is ambiguous is a question of law that must be decided by examining the contract as a whole in light of the circumstances present when the contract was entered." *Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.,* 940 S.W.2d 587 (Tex.1996); *National Union Fire Ins. Co. v. CBI Indus., Inc.,* 907 S.W.2d 517, 520 (Tex.1995). A contract is unambiguous as a matter of law if it can be given a definite or certain legal meaning. *Columbia Gas,* 940 S.W.2d at 589; *CBI,* 907 S.W.2d at 520. Conversely, if an insurance contract is subject to more than one reasonable interpretation, the contract is ambiguous and the interpretation that most favors coverage for the insured will be adopted. *Kelly Assocs., Ltd. v. Aetna Cas. & Sur. Co.,* 681 S.W.2d 593, 596 (Tex.1984). Therefore, we must discern whether there is more than one reasonable interpretation of the UM/UIM and PIP endorsements. In making this determination, we note that an ambiguity does not arise simply because the parties advance conflicting interpretations of the contract. *Columbia Gas,* 940 S.W.2d at 589.

[6][7][8] McKee's status as president and sole shareholder of the named insured Future Investments, combined with the "family member" language in the PIP and UM/UIM, does not create an ambiguity. There is no reasonable interpretation of the policy that can construe McKee as the "you" to whom the covered family members are linked in the endorsements. McKee, unambiguously, is not the named insured under the policy, and his status as president and sole shareholder does not equate him with the insured company. Under Texas law, a corporation is an entity separate from its shareholders. *See Massachusetts v. Davis,* 140 Tex. 398, 168 S.W.2d 216, 222 (1942), *cert. denied,* 320 U.S. 210, 63 S.Ct. 1447, 87 L.Ed. 1848 (1943). While under certain extraordinary circumstances the corporate fiction may be disregarded, mere control and ownership of all the stock of a corporation is not a sufficient basis for ignoring the distinction between the shareholder and the corporate entity. *See id.* at 224; *Commercial Escrow Co. v. Rockport Rebel, Inc.,* 778 S.W.2d 532, 540 (Tex.App.--Corpus Christi 1989, writ denied). Thus, McKee's sole shareholder status is immaterial because Future Investments is a distinct legal entity, separate and apart from McKee. Because Future Investments, not McKee, is the insured, Kelly, unambiguously, does not fall within the ambit of the "family member" language.

[9] McKee tries to support his ambiguity claim by arguing that the "family member" language would be rendered a nullity if we do not interpret the policy to cover McKee's family members. Although interpreting an insurance policy to give a reasonable meaning to all provisions is preferable to interpreting the policy in a way that creates surplusage or leaves a portion of the policy useless or inexplicable, *Liberty Mut. Ins. Co. v. American Employers Ins. Co.,* 556 S.W.2d 242, 245 (Tex.1977), surplusage alone does not make an insurance policy ambiguous. Unlike a unique contract tailor-made to the interests peculiar to each party, the UM/UIM and PIP endorsements are standard forms crafted to accommodate a wide variety of insurance needs. Elections made by the insured may invoke or render inert various provisions of insurance policy endorsements. For example, Future Investments could have named a designated person in the UM/UIM endorsement, (FN2) which would have created coverage for the designee as well as the designee's family members. The corporation's failure to designate such a person rendered the policy language regarding a "designated person" and the person's "family" inapplicable **\*459** in this instance, but does not nullify the endorsements or create an ambiguity.

[10] McKee claims that any policy interpretation that denies family member status to Kelly is illusory and, consequently, "abhorrent to Texas law" because it "would constitute a forfeiture, i.e. the policy would provide

Copyright (c) West Group 2002 No claim to original U.S. Govt. works

coverage to no person in the Class 1 (you ... family member) portion of the UM/UIM and PIP coverages." We disagree. While the family member language provides no coverage for Kelly in this instance, the endorsements provide other types of coverage. For example, the PIP and category 2 of the UM/UIM would have covered Kelly if she had been riding in a covered auto. Additionally, Future Investments had the opportunity to activate coverage under category 1 of the UM/UIM simply by designating a person in the endorsement. Designating either McKee or Kelly would have triggered coverage in this instance. Our interpretation of the policy does not cause a forfeiture, it merely restricts coverage to those who are insured.

Other jurisdictions have analyzed policy language similar to that in the Grain Dealers policy. A majority of jurisdictions have found that the combination of "family language" and an entity's being the "named insured" does not create an ambiguity. *See, e.g., Guarantee Ins. Co. v. Anderson,* 585 F.Supp. 408, 411 (E.D.Pa.1984); *Nicks v. Hartford Ins. Group,* 291 So.2d 673, 674 (Fla.Dist.Ct.App.1974); *Hogan v. Mayor & Aldermen of Savannah,* 171 Ga.App. 671, 320 S.E.2d 555, 557-58 (1984); *Economy Preferred Ins. Co. v. Jersey County Const., Inc.,* 246 Ill.App.3d 387, 186 Ill.Dec. 233, 236-37, 615 N.E.2d 1290, 1293-94 (1993); *Peterson v. Universal Fire & Cas. Ins. Co.,* 572 N.E.2d 1309, 1311 (Ind.Ct.App.1991); *Andrade v. Aetna Life & Cas. Co.,* 35 Mass.App.Ct. 175, 617 N.E.2d 1015, 1017 (1993); *Kaysen v. Federal Ins. Co.,* 268 N.W.2d 920, 923-24 (Minn.1978); *Cutter v. Maine Bonding & Cas. Co.,* 133 N.H. 569, 579 A.2d 804, 808 (1990); *Buckner v. Motor Vehicle Accident Indem. Corp.,* 66 N.Y.2d 211, 495 N.Y.S.2d 952, 486 N.E.2d 810, 812 (1985); *Sproles v. Greene,* 329 N.C. 603, 407 S.E.2d 497, 500 (1991); *Meyer v. American Econ. Ins. Co.,* 103 Or.App. 160, 796 P.2d 1223, 1225 (1990); *General Ins. Co. of Am. v. Icelandic Builders, Inc.,* 24 Wash.App. 656, 604 P.2d 966, 968 (1979).

In a minority of jurisdictions, courts have concluded that similar policy endorsements do create an ambiguity. *See, e.g., Hager v. American W. Ins. Co.,* 732 F.Supp. 1072, 1075 (D.Mont.1989); *Hawkeye-Security Ins. Co. v. Lambrecht & Sons, Inc.,* 852 P.2d 1317, 1319 (Colo.Ct.App.1993); *Ceci v. National Indem. Co.,* 225 Conn. 165, 622 A.2d 545, 549-50 (1993); *King v. Nationwide Ins. Co.,* 35 Ohio St.3d 208, 519 N.E.2d 1380, 1384 (1988). We concur with the majority of jurisdictions that the family member language does not create an ambiguity.

[11] We reject McKee's position that the policy provisions are ambiguous and susceptible to more than one reasonable interpretation merely because other jurisdictions have reached differing conclusions about similar policy provisions. Opinions from other states about insurance policy interpretation can be persuasive, but ambiguity is for this Court to decide.

[12] Finally, McKee proposes that his daughter is covered as a matter of public policy under articles 5.06-1(1) and 5.06-3(a) of the Insurance Code. He argues that these provisions require that Texas auto liability insurance policies include UM/UIM and PIP endorsements and allow insurance companies to collect premiums for these endorsements. *See* TEX. INS.CODE arts. 5.06-1(1), 5.06-3(a). McKee contends that allowing insurance companies to provide limited coverage while at the same time collecting premium dollars on these endorsements contravenes public policy. This argument fails because, while the Insurance Code does require UM/UIM and PIP coverage to be offered, it explicitly provides that UM/UIM coverage may be limited to "persons insured [under the policy]," TEX. INS.CODE art. 5.06-1(1), and to "the named insured in the ... policy and members of the insured's household." TEX. INS.CODE art. 5.06-3(b). Because Kelly is not covered under the liability section of the policy, the Insurance Code does not require Grain Dealers to provide her with UM/UIM or PIP coverage. Moreover, the Code also **\*460** allows "any insured named in the policy" or the "named insured" to reject UM/UIM and PIP coverage in writing. TEX. INS.CODE arts. 5.06-1(1), 5.06-3(a). Even in cases where we have held policy provisions to violate the PIP and UM/UIM sections of the Code, we have not attempted to provide coverage for persons who are not insured under the policy. *See Stracener v. United Servs. Auto. Ass'n,* 777 S.W.2d 378, 380 (Tex.1989); *American Liberty Ins. Co. v. Ranzau,* 481 S.W.2d 793, 795 (Tex.1972).

For the foregoing reasons, McKee's proposed interpretations of the Grain Dealers policy are not reasonable. The only reasonable interpretation leads to the conclusion that the policy does not cover Kelly. Because we hold, as a matter of law, that the policy does not cover McKee's daughter, we reverse the judgment of the court of appeals and render judgment that McKee take nothing from Grain Dealers on his coverage-related claims.

Copyright (c) West Group 2002 No claim to original U.S. Govt. works

943 S.W.2d 455, Grain Dealers Mut. Ins. Co. v. McKee, (Tex. 1997)                    **Page 8**

SPECTOR, J., filed a dissenting opinion.

SPECTOR, Justice, dissenting.

Both the trial court and the court of appeals agreed that the insurance policy at issue in this case covered Kelly McKee's claim. Nevertheless, this Court concludes that the disputed policy provisions lend themselves to only one reasonable interpretation so that Kelly's claims are not covered. 943 S.W.2d at 459. Because I believe that the policy is ambiguous, I dissent.

As the majority acknowledges, we determine whether a contract is ambiguous by examining the contract in light of the circumstances present at the time the parties entered into it. *Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.,* 940 S.W.2d 587, 589 (Tex.1996). In this case, the named insured under the policy in question was a corporation solely owned by Gerald McKee. (FN1) The uninsured motorist and personal injury protection endorsements under which Kelly sought coverage applied to "family member" claims. The court of appeals and, presumably, the trial court concluded that the policy was ambiguous under the circumstances present at the time these endorsements were added to the policy. I agree that, in light of Gerald McKee's sole ownership of the corporation, the "family member" language in the PIP and UM/UIM endorsements created an ambiguity. *Accord Hager v. American W. Ins. Co.,* 732 F.Supp. 1072, 1075 (D.Mont.1989) ("family member" language in policy issued to closely held family corporation created ambiguity so that minority shareholder family member's claims were covered); *Hawkeye-Security Ins. Co. v. Lambrecht & Sons, Inc.,* 852 P.2d 1317, 1319 (Colo.Ct.App.1993) (wife of sole shareholder of named insured corporation was covered under uninsured motorist policy provisions making "any family member" an additional insured); *Ceci v. National Indem. Co.,* 225 Conn. 165, 622 A.2d 545, 549 (1993) (uninsured motorist endorsement providing coverage to "family members" was ambiguous and thus covered claims of brother of sole shareholder of named insured corporation); *see also Roepke v. Western Nat'l Mut. Ins. Co.,* 302 N.W.2d 350, 353 (Minn.1981) (survivors of named corporate insured's sole shareholder were entitled to stack coverage because decedent should be viewed as an "insured" under reverse corporate veil piercing theory); *American Bankers Ins. Co. of Florida v. Stack,* 208 N.J.Super. 75, 504 A.2d 1219, 1222 (1984) (policy issued to unincorporated trade name business covered company owner's son's claim); *King v. Nationwide Ins. Co.,* 35 Ohio St.3d 208, 519 N.E.2d 1380, 1383-84 (1988) (policy issued to community action agency containing family-oriented language was ambiguous so that employee's claim was covered); *Carrington v. St. Paul Fire & Marine Ins. Co.,* 169 Wis.2d 211, 485 N.W.2d 267, 270 (1992) (corporate youth home's policy containing "family member" language covered claims of children residing at the home). Because the policy is ambiguous, it must be construed in favor of coverage. *See Kelly Assocs., Ltd. v. Aetna Cas. & Sur.,* 681 *461. S.W.2d 593, 596 (Tex.1984); *Blaylock v. American Guar. Bank Liab. Ins. Co.,* 632 S.W.2d 719, 721 (1982).

The majority's conclusion that the policy language at issue here is not ambiguous defies common sense: the two lower courts in this case and the courts of several other states have discerned a lack of clarity that escapes the majority. I would affirm the judgment of the court of appeals and render judgment for the McKees.

(FN1.) Grain Dealers disputes whether there is competent summary judgment evidence supporting McKee's contention that he is the sole shareholder of Future Investments. For purposes of this opinion, we assume that McKee is Future Investments' sole shareholder.

(FN2.) McKee argues that it was Grain Dealers' custom not to name a designated person in business automobile coverage policies in which a corporation is the named insured. There is no evidence, however, that McKee or Future Investments sought to name a designee or that Grain Dealers refused to allow such a designation.

(FN1.) I agree with the court of appeals' conclusion that attorney Scott Stolley's coverage letter produced by Grain Dealers in response to the McKees' request for production of documents constitutes valid summary judgment proof that Gerald McKee was the sole shareholder of the corporation. *See* 943 S.W.2d 456.

Copyright (c) West Group 2002 No claim to original U.S. Govt. works

885 S.W.2d 96, Celtic Life Ins. Co. v. Coats, (Tex. 1994)                                    **Page 1**

**\*96   885 S.W.2d 96**

38 Tex. Sup. Ct. J. 63

Supreme Court of Texas.

**CELTIC LIFE INSURANCE COMPANY, Petitioner,**
v.
**John D. COATS, Jr., Respondent.**
No. D-2775.
June 22, 1994.
Opinion Concurring on Rehearing by
Chief Justice Phillips Nov. 3, 1994.

Insured brought action against insurer and its agent with respect to agent's misrepresentations as to psychiatric benefits provided under health insurance policy. The 98th Judicial District Court, Travis County, Jon N. Wisser, J., entered judgment for insured, and insurer appealed. The Austin Court of Appeals, Marilyn Aboussie, J., 831 S.W.2d 592, affirmed, and appeal was taken. The Supreme Court, Spector, J., held that: (1) under common-law rules of agency, insurer was liable for misrepresentations agent made in explaining policy, and (2) jury's finding that agent did not act knowingly precluded award of trebled damages to insured under either Insurance Code statute prohibiting unfair competition and unfair practices or under Deceptive Trade Practices-Consumer Protection Act (DTPA).

Modified, and as modified, affirmed.

Enoch, J., filed concurring opinion.

Phillips, C.J., concurred and filed opinion in which Hecht and Enoch, JJ., joined.

West Headnotes

[1] Insurance ⬤➝1604
217 ----
217XI Agents and Agency
217XI(A) In General
217k1604 In General.

(Formerly 217k73)
In the contexts of life, health and accident insurance, Insurance Code makes no distinction between recording agents and soliciting agents; rather, agents are defined generally. V.A.T.S. Insurance Code, art. 21.21.

[2] Insurance ⬤➝1606
217 ----
217XI Agents and Agency
217XI(A) In General
217k1605 Agency for Insurer or Insured
217k1606 In General.

(Formerly 217k73.2)
Individual who performed, on insurer's behalf, at least some of the acts listed in Insurance Code section, defining who are agents, was insurer's agent. V.A.T.S. Insurance Code, art. 21.02.

[3] Insurance ⬤➝3417
217 ----

Copyright (c) West Group 2002 No claim to original U.S. Govt. works

217XXVIII Miscellaneous Duties and Liabilities
217k3416 Of Insurers
217k3417 In General.

(Formerly 217k92.1)
Insurance company is generally liable for any misconduct by agent that is within the actual or apparent scope of agent's authority and this rule is based on notions of fairness; since principal selected agent to act in venture in which principal is interested, it is fair, as between him and third person, to impose upon him the risk that agent may exceed his instructions.

[4] Insurance 3424(1)
217 ----
217XXVIII Miscellaneous Duties and Liabilities
217k3416 Of Insurers
217k3424 Fraud or Misrepresentation
217k3424(1) In General.

(Formerly 217k92.1)
Under common-law rules of agency, insurer was liable for representations that its agent made in explaining health insurance policy, in that agent's representations were not so absurd that no reasonable person could have believed agent was acting within scope of his authority.

[5] Principal and Agent 131
308 ----
308III Rights and Liabilities as to Third Persons
308III(A) Powers of Agent
308k130 Liabilities Incurred
308k131 Agent's Acts in General.
In determining principal's vicarious liability, proper question is not whether principal authorized the specific wrongful act, but whether agent was acting within scope of agency relationship at time of committing the act.

[6] Insurance 3424(1)
217 ----
217XXVIII Miscellaneous Duties and Liabilities
217k3416 Of Insurers
217k3424 Fraud or Misrepresentation
217k3424(1) In General.

(Formerly 217k92.1)
Insurer could not escape liability for representations that its agent made on basis that it did not authorize agent's representations concerning health insurance policy, where misrepresentation by agent was made in course of explaining terms of the policy, a task within scope of agent's authority.

[7] Consumer Protection 36.1
92H ----
92HII Remedies of Consumer
92Hk36 Actions
92Hk36.1 In General.
Question submitted by trial court to jury asking whether insurance agent made any misrepresentations regarding health insurance policy that were a "producing cause of damages" to insured fairly presented issue of producing cause to jury for purposes of insured's claim under Deceptive Trade Practices--Consumer Protection Act (DTPA). V.T.C.A., Bus. & C. §§ 17.41-17.63.

[8] Limitation of Actions 43

Copyright (c) West Group 2002 No claim to original U.S. Govt. works

885 S.W.2d 96, Celtic Life Ins. Co. v. Coats, (Tex. 1994)                                        **Page 3**

241 ----
   241II Computation of Period of Limitation
     241II(A) Accrual of Right of Action or Defense
   241k43 Causes of Action in General.
   Cause of action generally accrues at time when facts come into existence that authorize claimant to seek a judicial remedy.

[9] Insurance ☞3362
   217 ----
     217XXVII Claims and Settlement Practices
       217XXVII(C) Settlement Duties;  Bad Faith
         217k3358 Settlement by First-Party Insurer
         217k3362 Misrepresentation.

   (Formerly 217k4.4)
   Insured's claim under Insurance Code statute prohibiting unfair competition and unfair practices accrued on date that health insurer first denied coverage for insured's son's psychiatric care and since denial of coverage occurred after effective date of amendments to Code's unfair competition statute, requiring knowing conduct before damages may be trebled, insured was not entitled to award of trebled damages in light of jury's finding that insurance agent did not act knowingly in misrepresenting amount of psychiatric benefits available under health insurance policy.  V.A.T.S. Insurance Code, art. 21.21, § 16(b)(1).

[10]  Insurance ☞1654
   217 ----
     217XI Agents and Agency
       217XI(C) Agents for Insurers
       217k1654 Duties and Liabilities to Insureds or Other Third Persons.

   (Formerly 217k92.1)
   Jury's finding that insurance agent did not act knowingly in misrepresenting amount of psychiatric benefits available under health insurance policy precluded award of trebled damages to insured under either Insurance Code statute prohibiting unfair competition and unfair practices or under Deceptive Trade Practices--Consumer Protection Act (DTPA).  V.A.T.S. Insurance Code, art. 21.21, § 16(b)(1);  V.T.C.A., Bus. & C. §§ 17.41-17.63.

**\*97**  Alice M. Giessel and James E. Ebanks, Houston, for petitioner.

Joe K. Longley, Tim Labadie and Philip K. Maxwell, Austin, for respondent.

SPECTOR, Justice, delivered the opinion of the Court, in which PHILLIPS, Chief Justice, and GONZALEZ, HIGHTOWER, HECHT, DOGGETT, CORNYN and GAMMAGE, Justices, join.

   We grant John D. Coats' motion for rehearing and withdraw our prior opinion and judgment.  The following is now the opinion of the Court.

   This case presents three issues relating to an insurance company's liability for its agent's representations:  first, whether the company's liability depends on its authorization of misrepresentations;  second, whether reliance on the representations is an element of recovery;  and third, whether the insured's damages should be trebled when the misrepresentations were not committed "knowingly."  The court of appeals affirmed the trial court's judgment on a jury verdict against the insurer.  831 S.W.2d 592.  We likewise affirm, but modify the court of appeals' judgment by deleting the award of trebled damages.

I.

Copyright (c) West Group 2002 No claim to original U.S. Govt. works

Kenneth Harrell, a duly-appointed agent for Celtic Life Insurance Co., (FN1) visited Aloha Pools in September 1984 and met with its owner, John Coats, to discuss health insurance for Aloha's employees and their families. Coats stated that he wanted a policy providing benefits for psychiatric care that would be equal to or better than the $20,000 coverage provided by his current policy. Coats explained that he needed such coverage because his oldest son had previously required psychiatric care, and he was concerned that his younger son might require similar care. Harrell responded that he understood Coats' needs fully, having experienced similar financial difficulties in providing psychiatric care for his own son.

Harrell subsequently proposed that Coats purchase a specific policy written by Celtic--a policy that provided a maximum lifetime hospitalization benefit of $1 million. Harrell did not point out that psychiatric benefits under the policy were limited to $10,000.

Coats asked his business manager, Paula Englemann, to review Celtic's brochure and discuss the matter further with Harrell. Englemann noticed the $10,000 limit on benefits for psychiatric care, and questioned Harrell about its meaning. Harrell assured her that the $10,000 limit applied only to out-patient psychiatric care. Based on that representation, Englemann recommended to Coats that **\*98** he purchase the Celtic policy, and Coats agreed.

In January of 1985, Kenneth Harrell obtained enrollment cards, filled out an application, and collected an initial premium in order to obtain Celtic coverage for Aloha's employees. He then forwarded the enrollment cards, the application, and the premium check to Celtic. Celtic then sent an insurance policy to Harrell, who delivered it to Coats.

During the following August, Coats' son was admitted to Shoal Creek Hospital for psychiatric care. Coats filed a claim for his son's treatment; but despite Harrell's continued assurances that the in-hospital psychiatric treatment was covered by the $1 million hospitalization limit, Celtic paid only $10,000 of the $27,000 in medical expenses.

Coats filed this suit seeking relief under article 21.21 of the Texas Insurance Code and the Texas Deceptive Trade Practices-Consumer Protection Act (DTPA), TEX.BUS. & COM.CODE § 17.41-.63. After hearing the evidence, the jury made the following findings:

(1) Harrell made misrepresentations concerning the terms, benefits, provisions, or conditions of the insurance policy such as to be a producing cause of damages to Coats, but he did not do so knowingly;

(2) Harrell had authority to explain, on Celtic's behalf, the benefits of the insurance policy; and

(3) Harrell did not have the authority of Celtic to make representations concerning the insurance policy's terms, benefits, provisions, or conditions which were outside the scope of the written document.

The jury also found that $17,000 would fairly and reasonably compensate Coats for his damages. (FN2)

The trial court rendered judgment on the verdict in favor of Coats, and the court of appeals affirmed. 831 S.W.2d 592.

## II.

Celtic argues that it should not be held responsible for Harrell's representations for two reasons: first, Harrell was a mere soliciting agent, and as such lacked authority to bind Celtic; and second, the jury's answer to the third question--which was submitted over Coats' objection--establishes that Harrell was acting outside of his authority as Celtic's agent. We reject both arguments.

[1] In the contexts of life, health, and accident insurance, the Texas Insurance Code makes no distinction between recording agents and soliciting agents. *See May v. United Serv. Ass'n of America*, 844 S.W.2d 666, 669 n. 8 (Tex.1992) (discussing TEX.INS.CODE art. 21.14, § 20). Rather, agents are defined generally: section

Copyright (c) West Group 2002 No claim to original U.S. Govt. works

21.02 of the Code lists various acts performed in the ordinary course of providing insurance, (FN3) and states that any person who performs these acts "shall be held to be the agent of the company for which the act is done, or the risk is taken, as far as relates to all liabilities, duties, requirements and penalties set forth in this chapter."

[2] There is no dispute that Harrell performed, on Celtic's behalf, at least some of the acts listed in section 21.02. Thus, under that provision, Harrell was clearly Celtic's agent.

[3] An insurance company is generally liable for any misconduct by an agent that is within the actual or apparent scope of the agent's authority. *See, e.g., Royal Globe Ins. Co. v. Bar Consultants,* 577 S.W.2d 688, 693-94 (Tex.1979); *Grand Lodge Free and Accepted Masons v. Walker,* 110 S.W.2d 945, 949 (Tex.Civ.App.-- Dallas 1937, no writ); *see generally* George J. Couch et al., COUCH ON INSURANCE 2D § 26A:265, at 506 (rev. ed. **\*99** 1984). This rule is based on notions of fairness: "since the principal has selected the agent to act in a venture in which the principal is interested, it is fair, as between him and a third person, to impose upon him the risk that the agent may exceed his instructions." *Royal Globe,* 577 S.W.2d at 694 (quoting *Standard Distributors v. FTC,* 211 F.2d 7, 15 (2d Cir.1954) (Hand, J.)).

In the present case, the jury was asked whether Harrell had authority to explain, on Celtic's behalf, the benefits of the insurance policy. The instructions accompanying this question explained that "authority" of an insurance agent can be actual or apparent; and in defining apparent authority, the instructions explained, among other things, that "[a]n insurance company may so clothe the agent with signs or indications of authority so as to lead a reasonably prudent person to believe that the agent actually has such authority." The jury answered the question affirmatively.

[4] Celtic does not contend that Harrell's representations were so absurd that no reasonable person could have believed Harrell was acting within the scope of his authority. (FN4) Nor does Celtic assert any other challenge to the jury's finding that Coats had authority to explain the policy. Thus, under common-law rules of agency, Celtic is liable for the representations Harrell made in explaining the policy.

[5][6] Celtic's liability is not affected by the finding that Harrell lacked authority to make representations outside the scope of the written document. In determining a principal's vicarious liability, the proper question is not whether the principal authorized the specific wrongful act; if that were the case, principals would seldom be liable for their agents' misconduct. Rather, the proper inquiry is whether the agent was acting within the scope of the agency relationship at the time of committing the act. *See* Leonard Lakin and Martin Schiff, THE LAW OF AGENCY 144-45 (1984). The misrepresentation in the present case was made in the course of explaining the terms of the policy--a task the jury specifically found to be within the scope of Harrell's authority. Thus, Celtic cannot escape liability on the basis that it did not authorize particular representations concerning the policy.

III.

Celtic asserts that Harrell is not entitled to recover under the DTPA because there has been no showing that Coats relied on Harrell's representations. The trial court refused Celtic's requested issue on reliance after Coats objected on the basis of *Weitzel v. Barnes,* 691 S.W.2d 598 (Tex.1985).

In *Weitzel,* we determined that the legislature had specifically rejected reliance as an element of recovery under the DTPA. 691 S.W.2d at 600. The legislature chose, instead, to allow recovery when there is proof of a deceptive act or practice that is a "producing cause" of the consumer's actual damages. *Id.* (discussing TEX.BUS. & COM.CODE § 17.50(a)).

[7] In the present case, the trial court submitted a question asking whether Harrell made any misrepresentations that were a "producing cause of damages" to Coats. This question, we hold, fairly presented the issue of producing cause to the jury. We decline Celtic's invitation to overrule *Weitzel.*

IV.

Copyright (c) West Group 2002 No claim to original U.S. Govt. works

Finally, Celtic argues that the trebling of actual damages was erroneous in view of the jury's finding that Harrell's misrepresentations were not made "knowingly." Celtic points out that since 1979, the DTPA has required that conduct be committed knowingly before damages may be trebled. TEX.BUS. & COM.CODE § 17.50(b)(1). Additionally, by amendment effective April 4, 1985, article 21.21 of the Texas Insurance Code has included a similar requirement of knowing conduct before damages may be trebled. TEX.INS.CODE art. 21.21 § 16(b)(1). Celtic argues that Coats' cause of action did not accrue until August 1985, when his benefits were **\*100** denied, so that knowing conduct is required for trebling of damages under either article 21.21 or the DTPA.

[8][9][10] We agree. A cause of action generally accrues at the time when facts come into existence that authorize a claimant to seek a judicial remedy. *Murray v. San Jacinto Agency, Inc.,* 800 S.W.2d 826, 828 (Tex.1990); *Robinson v. Weaver,* 550 S.W.2d 18, 19 (Tex.1977). In *Murray,* we held that a first-party bad faith claim against an insurer generally accrues on the date the insurer denies coverage. 800 S.W.2d at 828. Likewise, in the present case, we hold that Coats' claim under article 21.21 accrued on the date that Celtic first denied coverage for his son's psychiatric care. Accordingly, Coats' claim is governed by the 1985 amendment to article 21.21. *See* Act of March 19, 1985, 69th Leg., R.S., ch. 22, § 4, 1985 Tex.Gen.Laws 395, 396 ("This Act applies to a cause of action that accrues on or after the effective date of this Act."). Because the DTPA contained a "knowingly" requirement at all times relevant to this case, we need not determine the accrual date of Coats' DTPA claim. (FN5) Under either statute, the jury's finding that Harrell did not act knowingly bars an award of trebled damages. (FN6)

\* \* \* \* \* \*

We conclude that Celtic is responsible for its agent's misrepresentations. We modify the court of appeals' judgment to reflect an award of only actual damages, rather than trebled damages; and because attorney's fees were awarded on a percentage basis, we also modify the award of attorney's fees. In all other respects, the judgment of the court of appeals is affirmed.

ENOCH, Justice, concurring.

I agree with the result in this case and join in Parts I and IV of Justice Spector's opinion, but write separately to note that the mere authority of an agent to explain the terms of a policy does not render an insurer liable for all of that agent's representations. Several states have limited the insurer's liability to interpretations of the policy that are plausible or not patently absurd. *See Mutual Benefits Life Ins. Co. v. Bailey,* 55 Del. 215, 190 A.2d 757 (1963) (noting that an insured may rely upon a plausible interpretation by an agent); *Flamme v. Wolf Ins. Co.,* 239 Neb. 465, 476 N.W.2d 802, 807-08 (1991) (stating that insured could rely on agent's interpretation of policy that is plausible and not in patent conflict with the printed policy); *Farley v. United Pacific Ins. Co.,* 269 Or. 549, 525 P.2d 1003, 1006 (1974) (quoting Couch on Insurance and finding that representative of insurer's agent had ostensible authority to interpret the insurance contract unless the agent's interpretation is "patently absurd" from the insured's perspective).

I note that in Texas reliance is not an independent element of recovery under the DTPA. *Weitzel v. Barnes,* 691 S.W.2d 598, 600 (Tex.1985). However, it is obvious that "reliance on the deceptive act or conduct is necessarily a factor of *producing cause."* *Id.* at 602 (Gonzalez, J., dissenting). I would conclude that producing cause is present only where the agent's explanation of the policy's coverage is not patently absurd, which necessarily results in the insured's reliance on the agent's explanation being reasonable. *See, e.g., Lewis v. Citizens Agency of Madelia, Inc.,* 306 Minn. 194, 235 N.W.2d 831 (1975) (finding coverage where agent misrepresented to widow the type and amount of coverage on a policy and she relied on the agent's expertise); *Crawley v. American Public Life Ins. Co.,* 603 So.2d 835 (Miss.1992) (estopping insurer from denying coverage where agent represented to divorced father that his children, **\*101** who lived with their mother, would be covered).

In this case, though, we are unable to examine whether Harrell's representations were in fact the producing cause of Coats' damages because the reasonableness of Harrell's explanation is not presented to us for review. Consequently, I join in the Court's judgment.

Copyright (c) West Group 2002 No claim to original U.S. Govt. works

885 S.W.2d 96, Celtic Life Ins. Co. v. Coats, (Tex. 1994)                    **Page 7**

Chief Justice PHILLIPS concurs on rehearing, joined by Justice HECHT and Justice ENOCH.

I concur in the judgment of the Court and join in its opinion, so far as it goes. As the Court makes clear, our holding that an insurer is liable for the tortious misrepresentations of its soliciting agent made in the course of the agent's authority is consistent with fundamental agency principles as applied in most other jurisdictions. On rehearing, however, Celtic, along with *amicus curiae* Jackson National Life Insurance Company, complains that our decision cannot be reconciled with the specific language of articles 21.02 and 21.04 of the Texas Insurance Code. Because I believe the Court should have addressed these contentions, I write separately.

Article 21.02 provides in part as follows:

Any person who solicits insurance on behalf of any insurance company ... shall be held to be the agent of the company for which the act is done, or the risk is taken, as far as relates to all the liabilities, duties, requirements and penalties set forth in this chapter. *This article does not authorize an agent to orally, in writing, or otherwise alter, amend, modify, waive, or change a term or condition of an insurance policy or application for an insurance policy....*

Tex.Ins. Code art. 21.02 (emphasis added). Article 21.04 similarly provides as follows:

Any person who solicits an application for life, accident, or health insurance, or property or casualty insurance, shall, in any controversy between the insured or the insured's beneficiary and the company issuing any policy upon such application or between the insured or the insured's dependents and that company, be regarded as the agent of the company, and not the agent of the insured, *but such agent shall not have the power to waive, change or alter any of the terms or conditions of the application or policy.*

Tex.Ins. Code art. 21.04 (emphasis added).

These provisions prevent a soliciting agent from contractually modifying the terms of a policy. Our decision does not conflict with this rule. We do not hold Celtic contractually liable because its agent modified the policy; rather, we hold Celtic vicariously liable under the Insurance Code and the Deceptive Trade Practices Act for its agent's tortious misrepresentation.

Jackson contends that this is a distinction without a difference. Imposing liability on Celtic for Harrell's misrepresentations, according to Jackson, is tantamount to allowing the agent to modify the policy. I disagree. Although in this case Coats recovered the expense of his son's treatment as if it had been covered under the policy, he was able to do so only because the jury found that Harrell's conduct was a producing cause of such damages. That finding is not before us for review, as Celtic does not challenge the measure of damages. But Coats *did not* obtain a policy covering psychiatric treatment in excess of $10,000, and Harrell's misrepresentations did not, standing alone, make Celtic liable for non-covered treatments during the policy period. (FN1)

Our holding is merely an extension of the Court's decision in *Royal Globe Ins. Co. v. Bar Consultants,* 577 S.W.2d 688, 693 (Tex.1979). There, we recognized that article 21.02 does not authorize a soliciting agent to bind the insurer to terms contrary to those of **\*102.** the written policy, (FN2) but we nevertheless held that the insurer could not escape liability for its agents' misrepresentations that violate article 21.21 of the Texas Insurance Code or section 17.46 of the Deceptive Trade Practices Act.

(FN1.) *See* TEX.INS.CODE art. 21.07, § 1(a) (requiring that any person desiring to act as an insurance agent be appointed by a duly-authorized insurance carrier).

(FN2.) This figure apparently represents Coats' expenses for psychiatric care, minus the $10,000 that Celtic actually covered. Celtic does not challenge this measure of damages.

(FN3.) The acts listed include, among other things, soliciting insurance on behalf of an insurance company; transmitting an application or policy to or from the insurance company; receiving, collecting or transmitting an insurance premium; and adjusting a loss on behalf of an insurance company.

Copyright (c) West Group 2002 No claim to original U.S. Govt. works

885 S.W.2d 96, Celtic Life Ins. Co. v. Coats, (Tex. 1994)                                        **Page 8**

(FN4.) *Cf. Farley v. United Pac. Ins. Co.,* 269 Or. 549, 525 P.2d 1003, 1007 (1974) (agent's representative had authority to interpret contract unless interpretation was "patently absurd");   *see generally* JOHN ALAN APPLEMAN AND JEAN APPLEMAN, INSURANCE LAW AND PRACTICE § 9168 (1981).

(FN5.) Coats argues that his claim is governed by the version of the DTPA in effect at the time the misrepresentations were made;  and that the DTPA incorporated the then-existing version of article 21.21, which did not include a "knowingly" requirement for trebled damages.  *See Vail v. Texas Farm Bureau Mut. Ins. Co.,* 754 S.W.2d 129, 137 (Tex.1988) (construing DTPA to allow incorporation of treble-damage provision in article 21.21).  Incorporating a remedy, however, necessarily means incorporating an accrual date. Thus, Coats' article 21.21 claim accrued on the date benefits were denied, whether the claim is asserted directly under article 21.21 or through the DTPA.

(FN6.) Because of our holding on this issue, we do not reach Celtic's argument that the courts below erred in awarding trebled prejudgment interest.

(FN1.) The extent of damages produced by a misrepresentation concerning the scope of coverage might depend on such factors as when the representation was made, whether the represented coverage was in fact available from other sources, the difference in value between the policy as represented and the policy as actually delivered, and whether the insured incurred expenses that otherwise would not have been incurred based on the representation.

(FN2.) The Court recognized this limitation even though at that time article 21.02 did not expressly so provide. The present language expressly limiting a soliciting agent's authority to alter or modify policy terms was added by the Legislature in 1985.  *See* Acts 1985, 69th Leg., ch. 203, § 1, eff. May 24, 1985.

Copyright (c) West Group 2002 No claim to original U.S. Govt. works