United States District Court
Southern District of Texas
FILED

JUL 3 1 2003

Michael N. Milby
Clerk of Court

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

Border Contractors, Inc.,                  :
a Texas corporation,                       :
                                           :
     Plaintiff                         :
                                           :
     vs.                               :     CIVIL ACTION NO. B-02-027
                                           :
Great American Insurance                   :
Company of New York                        :
                                           :
     and                               :
                                           :
Robert Jeffrey Davis                       :
                                           :
     and                               :
                                           :
HR Agency, Inc., a Texas corporation       :
                                           :
     Defendants                        :


## PLAINTIFF'S FIRST AMENDED ORIGINAL PETITION


TO THE HONORABLE JUDGE OF SAID COURT:

     Comes now Border Contractors, Inc., Plaintiff in the above entitled and numbered Cause,

by and through its attorney, Robert J. Banks, Esq., and files this, its First Amended Original

Petition complaining of Great American Insurance Company of New York, Robert Jeffrey Davis

and HR Agency, Inc. a Texas corporation, and for cause therefor would show unto this court the

following:

---

I

1.01.   Plaintiff, Border Contractors, Inc., hereinafter referred to as "Border", is a Texas corporation with its principal office and place of business in Cameron County, Texas at all times complained of herein.

1.02.   Defendant, Great American Insurance Company of New York, hereinafter referred to as "Great American", is a capital stock corporation having its principal office in Cincinnati, Ohio.   Great American was an inland marine insurance company doing business in Cameron County, Texas at all times complained of herein.   Defendant, Great American Insurance Company of New York, has previously appeared herein, and therefore service shall be pursuant to Rule 5, *Federal Rules of Civil Procedure.*

1.03.   Defendant, HR Agency, Inc., hereinafter referred to as "HR Agency", is a Texas corporation having its principal office in Dallas, Texas.   HR Agency was in the business of selling insurance policies in Cameron County, Texas at all times complained of herein.   **Defendant, HR Agency, can be served by serving its President, Robert Jeffrey Davis, at its place of business located at Suite 104, 13150 Coit Road, Dallas, Dallas County, Texas 75240-5772.**

1.04.   Defendant, Robert Jeffrey Davis, hereinafter referred to as "Davis", is an individual employed by, and the sole officer, director and stockholder of Defendant, HR Agency, having his place of residence in Collin County, Texas.   **Defendant, Robert Jeffrey Davis, (SSN 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, DOB December 22, 1951,  TxDL No. 9465862) can be served at his place of business located at HR Agency, Inc., Suite 104, 13150 Coit Road, Dallas, Dallas County, Texas 75240-5772.**

1.05.   The insurance contract which is the subject of this lawsuit was entered into in Cameron County, Texas.

## Factual Allegations

### II

On or about March 27, 2001, Border purchased a new "2000 Caterpillar 446B Backhoe Loader, Serial Number 5BL02169", hereinafter referred to as "the Backhoe". The purchase price of the Backhoe, as delivered, was $111,609.26.

### III

3.01.   At all times complained of herein, Great American was engaged in the business of selling policies of insurance to the general public, a class of which Border is a member.

3.02.   At all times complained of herein, HR Agency was an independent agent of Great American, and was engaged in the business of selling policies on behalf of Great American to the general public, a class of which Border is a member.

3.03.   At all times complained of herein, Davis was an agent, servant and employee of HR Agency, and was engaged in the business of selling policies on behalf of Great American to the general public, a class of which Border is a member.

3.04.   On or about August 1, 2000, Great American, through HR Agency and Davis, sold a policy of insurance to Border insuring Border's equipment. On or about March 27, 2001, Great American added the Backhoe to the list of equipment insured against loss by Great American. The insured value of the Backhoe agreed to by HR Agency, Davis and Great American was $102,667. Border paid Great American, through HR Agency and Davis, its premium for said

insurance. Copy of Texas Inland Marine Policy Number TIM 9273604 attached hereto, marked Plaintiff's Exhibit Number 1, and made a part hereof.

3.05.    Great American's policy of insurance was effective from August 1, 2000 to 12:01 a.m., August 2, 2001.

3.06.    Amongst other perils insured against, Great American's policy insured the Backhoe against "theft". Great American's policy was in full force and effect at the time of the loss of the Backhoe.

3.07.    On or about July 12, 2001, a date within the effective dates of Great American's policy of insurance, and a date on which the Backhoe was insured by Great American, the Backhoe was stolen from an equipment storage facility designated by the general contractor for the use of the subcontractors on a construction site in Hidalgo County, Texas. It was the custom of the contractors and subcontractors to store their equipment overnight and on weekends on such storage facilities located at active construction sites.

3.08.    Subsequent to July 12, 2001, and within the effective dates of Great American's policy of insurance, Border notified Davis, who notified Great American, of the afore described theft of the Backhoe.

3.09.    On or about August 1, 2001, Great American denied Border's claim for the theft of the Backhoe. Copy of Great American's Declination of Coverage attached hereto, marked Plaintiff's Exhibit Number 2, and made a part hereof. Great American stated as its sole reason for refusing to honor Border's claim that, "It is clear that the unit in question was not brought back to your main location yard after business hours and that this theft was off premises.".

3.10.  Prior to the effective date of Great American's policy of insurance, Border had discussed with Davis the foregoing arrangements for storage of its equipment while being used on active construction sites.  Davis assured Border that its equipment would be fully covered in case of a loss while being operated or stored overnight and on weekends on such storage facilities located at active construction sites.

3.11.  To date, Great American has failed and refused, and continues to fail and to refuse to honor its policy of insurance.

3.12.  Great American's policy of insurance does not contain any exclusions applicable to the above facts.

3.13.  All notices required to have been served upon Great American, HR Agency and Davis by Border have been duly served.

## **Breach of Contract**

### IV

Plaintiff, Border Contractors, Inc., incorporates herein by reference each and every allegation set forth above, and further states:

4.01.  HR Agency and Davis contracted, warranted and agreed that they would obtain adequate and sufficient insurance coverage for Border's equipment, wherever located, to indemnify Border for any loss that may occur.  HR Agency and Davis obtained a policy of insurance from Great American which they represented to Border complied with the afore described representations.

4.02.   During the period in which Great American's policy of insurance was in full force and effect, equipment specifically identified as being insured by Great American under their policy of insurance, *i.e.*, the Backhoe, was stolen from an equipment storage facility designated by the general contractor for the use of the subcontractors on a construction site in Hidalgo County, Texas.   Pursuant to the terms of Great American's policy, Great American was obligated to pay, and Border entitled to receive, indemnification of the loss.

4.03.   Great American, HR Agency and Davis contracted, warranted and agreed that Great American would pay to Border the sum of $102,667.00 for its loss incurred by the theft of the Backhoe.

4.04.   Although demand having been made therefor, Great American has failed and refused, and continues to fail and to refuse, to pay Border the money agreed upon and owing. Said failure and refusal constitutes a material breach of Great American's contract of insurance, and HR Agency's and Davis' contract to provide adequate insurance.

V

As a direct and proximate result of Great American's, HR Agency's and Davis' breach of their  contracts, Border has suffered actual damages in the amount of $102,667.00, as herein above described.

Wherefore, Border Contractors, Inc. demands judgment against Great American, HR Agency and Davis, jointly and severally, for compensatory damages in the amount of $102,667.00, interest thereon, costs of court and reasonable attorney fees.

### Breach of the Covenant of Good Faith and
### Fair Dealing, and Unfair Settlement Practices

#### VI

Plaintiff incorporates herein by reference each and every allegation set forth above, and further states:

6.01.   At all times herein complained of, Great American agreed to act in good fath and deal fairly with Border when Great American issued its policy of insurance, and accepted payment therefor from Border.  Great American thereby assumed a fiduciary obligation to Border and agreed to abide by its fiduciary duties.  Nevertheless, Great American failed and refused to act in good faith and deal fairly with Border, thereby breaching their fiduciary obligations and engaging in unfair settlement practices.

6.02.   Great American owed Border a duty of good faith and fair dealing predicated upon their special relationship.

6.03.   In the absence of a reasonable basis for so doing, and with full knowledge and/or reckless disregard therefor, Great American failed and refused to indemnify Border under Great American's policy of insurance and the laws of the state of Texas.

6.04.   Great American has failed to attempt in good faith to effectuate a prompt, fair and equitable settlement of Border's claim with respect to which Great American's liability had become reasonably clear.  Further, Great American knew or should have know that it has no reasonable basis for denying Border's claim.

6.05.   Great American has refused, failed and unreasonably delayed an offer of settlement under its policy of insurance on the basis that the Backhoe was not in a secure facility.

---

6.06.   All conditions precedent to Great American's performance in accordance with its policy of insurance have occurred or have been performed by Border.

6.07.   Great American knowingly committed the acts complained of herein, maliciously, fraudulently and/or with reckless disregard for the likelihood of causing Border severe economic damage.   Great American knowingly committed the above acts to further its own economic interest at the expense of Border's economic interest.

6.08.   Great American knowingly violated §17.46(b)(12), *Texas Business and Commerce Code, Texas Deceptive Practices–Consumer Protection Act* , in that Great American:

    a.    Represented to Border that Great American's policy of insurance conferred rights and remedies which it does not have or involve; and

    b.    Engaged in false, misleading or deceptive acts or practices in the conduct of its trade and commerce, in that it wrongfully failed and refused to honor Border's claim without reasonable justification, or in the alternative concealed relevant terms of the policy of insurance from Border.

## VII

As a direct and proximate result of Great American's breach of its covenant of good faith and fair dealing, and unfair settlement practices, Border has suffered actual damages in the amount of $102,667.00, as herein above described.

Wherefore, Plaintiff demands judgment against Great American for compensatory damages in the amount of $308,001.00, interest thereon, costs of court and reasonable attorney fees.

## Fraudulent Misrepresentation

### VIII

Plaintiff incorporates herein by reference each and every allegation set forth above, and further states:

8.01.    HR Agency and Davis represented unto Border that Great American's policy of insurance was in full force and effect at all times Border's equipment was located in the equipment storage facility designated by the general contractor for the use of the subcontractors on the construction site in Hidalgo County, Texas, and that Great American would indemnify Border against the theft of that equipment.

8.02.    HR Agency and Davis made such representation with the intent that Border would act on the representation, and Border did, in fact, act and rely on same to its injury, as is herein set forth.

8.03.    The aforesaid representation was false and fraudulent, and was known to be false and fraudulent by HR Agency and Davis, or was made with reckless disregard as to the truth of falsity of said misrepresentation at the time said misrepresentation was made, in that:

    a.    HR Agency and Davis had falsely represented to Great American that Border always brought its equipment to its Harlingen facility upon the completion of the day's work;

    b.    HR Agency and Davis had falsely represented to Border that its equipment was fully covered under the terms and conditions of Great American's policy of insurance when that equipment was located in the equipment storage facility designated by the general contractor for the use of the subcontractors on the construction site in Hidalgo County, Texas; and

    c.    HR Agency and Davis had falsely represented to Border that Great American would indemnify Border against the theft of its equipment.

8.04.  Due to the nature and complexity of the fraud undertaken, an inquiry into the conduct of HR Agency and Davis would not have revealed the foregoing fraudulent acts to a reasonably diligent person.  HR Agency and Davis fraudulently concealed from Border the aforesaid acts, knowing that if HR Agency and Davis had disclosed the truth of the matters to Border, it would not have contracted with HR Agency, Davis or Great American.

8.05.  HR Agency and Davis  were possessed of superior knowledge and at all times knew or should have known that Great American would not indemnify Border against the loss of its equipment located in the equipment storage facility designated by the general contractor for the use of the subcontractors on the construction site in Hidalgo County, Texas.  HR Agency's and Davis' active concealment and misrepresentation of such facts from and to Border constituted fraudulent misrepresentation by HR Agency and Davis.

IX

9.01.  As a direct, proximate and consequential result of HR Agency's and Davis' fraudulent misrepresentation, Border has suffered damages in the amount of $102,667.00 as herein above described.

9.02.  Wherefore, Plaintiffs demand judgment against HR Agency and Davis, jointly and severally, for compensatory damages in the amount of $102,667.00, exemplary damages in the amount of $500,000.00, interest thereon and costs of court.

## Negligent Misrepresentation

### X

Plaintiff incorporates herein by reference each and every allegation set forth above, and further states:

10.01. HR Agency and Davis represented unto Border that Great American's policy of insurance was in full force and effect at all times Border's equipment was located in the equipment storage facility designated by the general contractor for the use of the subcontractors on the construction site in Hidalgo County, Texas, and that Great American would indemnify Border against the theft of that equipment.

10.02. HR Agency and Davis made such representation with the intent that Border would act on the representation, and Border did, in fact, act and rely on same to its injury, as is herein set forth.

10.03. The aforesaid representation was false and fraudulent, and was known to be false and fraudulent by HR Agency and Davis, or was made with reckless disregard as to the truth of falsity of said misrepresentation at the time said misrepresentation was made, in that:

    a.    HR Agency and Davis had falsely represented to Great American that Border always brought its equipment to its Harlingen facility upon the completion of the day's work;

    b.    HR Agency and Davis had falsely represented to Border that its equipment was fully covered under the terms and conditions of Great American's policy of insurance when that equipment was located in the equipment storage facility designated by the general contractor for the use of the subcontractors on the construction site in Hidalgo County, Texas; and

    c.    HR Agency and Davis had falsely represented to Border that Great American would indemnify Border against the theft of its equipment.

10.04.Due to the nature and complexity of the negligent misrepresentations, an inquiry into the conduct of HR Agency and Davis would not have revealed the foregoing negligent misrepresentations to a reasonably diligent person. HR Agency and Davis fraudulently concealed from Border the aforesaid acts, knowing that if HR Agency and Davis had disclosed the truth of the matters to Border, it would not have contracted with HR Agency, Davis or Great American.

10.05.HR Agency and Davis were possessed of superior knowledge and at all times knew or should have known that Great American would not indemnify Border against the loss of its equipment located in the equipment storage facility designated by the general contractor for the use of the subcontractors on the construction site in Hidalgo County, Texas. HR Agency's and Davis' active concealment and misrepresentation of such facts from and to Border constituted negligent misrepresentation by HR Agency and Davis.

XI

11.01.As a direct, proximate and consequential result of HR Agency's and Davis' negligent misrepresentation, Border has suffered damages in the amount of $102,667.00 as herein above described.

11.02.Wherefore, Plaintiff demands judgment against HR Agency and Davis, jointly and severally, for compensatory damages in the amount of $102,667.00, exemplary damages in the amount of $500,000.00, interest thereon and costs of court.

## Negligence

### XII

Plaintiff incorporates herein by reference each and every allegation set forth above, and further states:

12.01. HR Agency and Davis had a duty at all times complained of herein to ascertain and advise Border of all conditions and exclusions affecting Border's coverage under Great American's policy of insurance.

12.02. HR Agency and Davis breached their duty of care and were negligent in the performance of the following acts or omissions:

    a.    Representing to Great American that Border always brought its equipment to its Harlingen facility upon the completion of the day's work, when Davis knew or should have known that Border did not do so;

    b.    Representing to Border that its equipment was fully covered under the terms and conditions of Great American's policy of insurance when that equipment was located in the equipment storage facility designated by the general contractor for the use of the subcontractors on the construction site in Hidalgo County, Texas, when Davis knew or should have known that Great American would not indemnify Border under those conditions;

    c.    Representing to Border that Great American would indemnify Border against the theft of its equipment, when Davis knew or should have known that Great American would not do so; and

    d.    Failing to ascertain the intent and application of all conditions and exclusions affecting Border's coverage under Great American's policy of insurance in a timely manner as requested by Border prior to the loss of its equipment.

12.03. The above described conduct of HR Agency and Davis involved an extreme degree of risk to Border of which HR Agency and Davis had actual, subjective awareness, but proceeded with conscious indifference to the rights, safety and welfare of Border.

---

XIII

13.01. As a direct, proximate and consequential result of HR Agency's and Davis' negligence, Border has suffered damages in the amount of $102,667.00, as described herein.

13.02. Wherefore, Plaintiff demands judgment against HR Agency and Davis, jointly and severally, for compensatory damages in the amount of $102,667.00, exemplary damages in the amount of $500,000.00, interest thereon and costs of court.

**Breach of Express Warranty**

XIV

Plaintiff incorporates herein by reference each and every allegation set forth above, and further states:

14.01. That pursuant to the contract between the parties, HR Agency and Davis did promise, agree, contract and warrant:

    a.    That Border's equipment was fully covered under the terms and conditions of Great American's policy of insurance when that equipment was located in the equipment storage facility designated by the general contractor for the use of the subcontractors on the construction site in Hidalgo County, Texas;

    b.    That Great American would indemnify Border against the theft of its equipment, wherever located; and

    c.    That having knowledge of the operation of Border's business and the locale within which Border conducted its business, there were no conditions or exclusions affecting Border's coverage under Great American's policy of insurance.

14.02. HR Agency and Davis breached their express warranty in that:

    a.    HR Agency and Davis knew or should have known that Great American would assert that Border's equipment was not covered under the terms and

conditions of Great American's policy of insurance when that equipment was located in the equipment storage facility designated by the general contractor for the use of the subcontractors on the construction site in Hidalgo County, Texas;

b.    HR Agency and Davis knew or should have known that Great American would not indemnify Border against the theft of its equipment except when it was in Border's yard in Harlingen, Texas; and

c.    HR Agency and Davis knew or should have known that Great American's policy of insurance contained conditions and exclusions adversely affecting Border's coverage.

## XV

15.01. As  a direct, proximate and consequential result of HR Agency's and Davis' breach of their express warranties, Plaintiff has suffered damages in the amount of $102,667.00, as described herein.

15.02. Wherefore,  Plaintiff demands judgment against HR Agency and Davis for compensatory damages in the amount of $102,667.00, reasonable attorneys fees, interest thereon and costs of court.

## Breach of Implied Warranty

## XVI

Plaintiff incorporates herein by reference each and every allegation set forth above, and further states:

16.01. That  pursuant to the contract between the parties, HR Agency and Davis did promise, agree, contract and warrant:

a.    That Border's equipment was fully covered under the terms and conditions of Great American's policy of insurance when that equipment was located in the equipment storage facility designated by the general contractor for

---

the use of the subcontractors on the construction site in Hidalgo County, Texas;

b.    That Great American would indemnify Border against the theft of its equipment, wherever located; and

c.    That having knowledge of the operation of Border's business and the locale within which Border conducted its business, there were no conditions or exclusions affecting Border's coverage under Great American's policy of insurance.

16.02. HR Agency and Davis breached their implied warranty in that:

a.    HR Agency and Davis knew or should have known that Great American would assert that Border's equipment was not covered under the terms and conditions of Great American's policy of insurance when that equipment was located in the equipment storage facility designated by the general contractor for the use of the subcontractors on the construction site in Hidalgo County, Texas;

b.    HR Agency and Davis knew or should have known that Great American would not indemnify Border against the theft of its equipment except when it was in Border's yard in Harlingen, Texas; and

c.    HR Agency and Davis knew or should have known that Great American's policy of insurance contained conditions and exclusions adversely affecting Border's coverage.

## XVII

17.01. As a direct, proximate and consequential result of HR Agency's and Davis' breach of their implied  warranties, Border has suffered damages in the amount of $102,667.00, as described herein.

17.02. Wherefore,  Plaintiff demands judgment against HR Agency and Davis, jointly and severally, for compensatory damages in the amount of $102,667.00, reasonable attorneys fees, interest thereon and costs of court.

## Deceptive Trade Practices–Consumer Protection Act

### XVIII

Plaintiff incorporates herein by reference each and every allegation set forth above, and further states:

18.01.Border  is a consumer within the meaning of the *Texas Deceptive Trade Practices-Consumer Protection Act.*

18.02.Written  notice of the claims herein made have not been given in the manner and form required by §17.505, *Texas Deceptive Trade Practices-Consumer Protection Act*, due to the necessity of filing suit in order to prevent the expiration of the statute of limitations.

### XIX

In the course of the transactions described above, HR Agency and Davis engaged in false, misleading and deceptive acts and practices in trade and commerce in the following manner:

19.01.Pursuing  false, misleading or deceptive acts or practices as set forth in paragraphs III, VI and VIII herein, in violation of §17.46(a), *Texas Deceptive Trade Practices-Consumer Protection Act*;

19.02.Failing to disclose information concerning their services  which was known at the time of the transaction with the intent to induce Plaintiffs into a transaction into which Plaintiffs would not have entered had the information been disclosed, as set forth in paragraphs III, VI and VIII herein, in violation of §17.46(b)(24), *Texas Deceptive Trade Practices-Consumer Protection Act*;

19.03.Using or employing a false, misleading or deceptive act or practice that was relied upon by Plaintiffs to Plaintiffs' detriment, as set forth in paragraphs III, VI and XIII herein, in violation of §17.50(a)(1)(B), *Texas Deceptive Trade Practices-Consumer Protection Act*;

19.04.Breaching their express warranties to Plaintiffs, as set forth in paragraphs III and XIV herein, in violation of §17.50(a)(2), *Texas Deceptive Trade Practices-Consumer Protection Act*;

19.05 Breaching their implied warranties to Plaintiffs, as set forth in paragraphs III and XVI herein, in violation of §17.50(a)(2), *Texas Deceptive Trade Practices-Consumer Protection Act*; and

19.06.Pursuing an unconscionable action or course of action, as set forth in paragraphs III, VI, VIII, XIV and XVI herein, in violation of §17.50(a)(3), *Texas Deceptive Trade Practices-Consumer Protection Act*.

## XX

The acts of HR Agency and Davis complained of herein were committed intentionally and knowingly, with actual awareness of the falsity, deception and unfairness of the acts and practices.

## XXI

Wherefore, Border demands judgment against HR Agency and Davis, jointly and severally, for compensatory damages in the amount of $308,001.00, attorney's fees, costs of court and interest thereon.

## Attorney's Fees

### XXII

Pursuant to V.T.C.A. *Civil Practices and Remedies Code*, §38.001, and the *Texas Deceptive Trade Practices-Consumer Protection Act*, §17.50(d), Border is entitled to recover its reasonable and necessary attorneys' fees for the prosecution of this action. Border has been required to, and has, retained Robert J. Banks, Esq., an attorney duly licensed to practice law in the state of Texas, to pursue its cause and is entitled to recovery hereon of its reasonable attorney's fees, including those for any appeal of this action, if necessary, in addition to the other damages herein alleged.

### Prayer

### XXIII

Wherefore, premises considered, Plaintiff prays that this Honorable Court issue its Order that:

23.01. Defendants be cited to appear herein as provided by law;

23.02. Plaintiff be granted judgment against Defendants, jointly and severally, for compensatory damages in the amount of $308,001.00;

23.03. Plaintiff be granted judgment against Defendants, jointly and severally, for exemplary damages in the amount of $500,000.00;

23.04. P laintiff be granted judgment against Defendants, jointly and severally, for reasonable and necessary attorney's fee, including those required for an appeal of this cause, if necessary;

23.05. Plaintiff be granted judgment against Defendants, jointly and severally, for prejudgment interest;

23.06. Plaintiff be granted judgment against Defendants, jointly and severally, for post-judgment interest at the maximum legal rate on the total amount of the judgment from the date of judgment until paid;

23.07. Plaintiff be granted judgment against Defendants, jointly and severally, for all costs of court; and

23.08  Plaintiff be granted such other and further relief, special or general, at law or in equity, as to which it may be shown to be justly entitled.

Respectfully submitted,

Robert J. Banks, Esq.
Texas Bar No. 01686020
218 East Harrison Avenue
Harlingen, Texas 78550-9134
956-423-3745 (Telephone)
956-423-3746 (Telecopier)

Attorney for Plaintiff,
Border Contractors, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on this 31st day of July 2003, I caused to be delivered, certified mail, return receipt requested, a true copy of the foregoing Plaintiff's First Amended Original Petition to the following attorneys of record:

Mitchell C. Chaney, Esq.
Ms. Teri L. Danish
Rodriguez, Colvin & Chaney, L.L.P.
1201 East Van Buren Street
Brownsville, Texas 78520-7057

Certified Mail – Return Receipt
No. 7001 1940 0003 1459 8464


_____
Robert J. Banks

CM 7951 (Ed. 6/99)

### INLAND MARINE POLICY

# BUSINESSPRO.

*THE BUSINESS PROTECTOR® PROGRAM—
A Professional Approach For Your
Commercial Insurance Needs.



GREATAMERICAN

INSURANCE COMPANIES

PLAINTIFF'S
EXHIBIT

NO. 1

F.70030B (6/99)

0102699

**GREATAMERICAN**
INSURANCE COMPANIES

ADMINISTRATIVE OFFICES
580 WALNUT STREET
CINCINNATI, OHIO 45202
TEL: 1-513-369-5000

CM 76 32 (Ed. 09 93)

Policy No.  TIM 927-36-04  - 03
Renewal Of  TIM 927-36-04  - 02

## TEXAS INLAND MARINE POLICY DECLARATIONS

NAMED INSURED BORDER CONTRACTORS, INC.

AND ADDRESS:  28226 DILWORTH ROAD
HARLINGEN, TX 78552

IN RETURN FOR PAYMENT OF THE
PREMIUM, AND SUBJECT TO ALL
TERMS OF THIS POLICY, WE AGREE
WITH YOU TO PROVIDE THE INSURANCE
AS STATED IN THIS POLICY.

AGENT'S NAME AND ADDRESS:
U.S. RISK BROKERS, INC.

10210 N.CENTRAL EXWY #500
DALLAS, TX 75231 3424

Insurance is afforded by the Company named below, a Capital Stock Corporation:
046 *Great American Insurance* AMERICAN NATIONAL FIRE INSURANCE COMPANY
*Co of New York* ~~"8/00 the letterhd~~
4/2/01

POLICY PERIOD:  From  08/01/2000 To  08/01/2001
12:01 A.M. Standard Time at the address of the Named Insured

BUSINESS DESCRIPTION:

| | Premium |
|---|---|
| This policy consists of the following Coverage part for which a premium is indicated. This premium may be subject to adjustment. | |
| Commercial Inland Marine Coverage Part | $7,641.00 |
| Total Provisional Premium | $7,641.00 |

Article 6.13 Policy a Liquidated Demand. A fire insurance policy, in case of a total loss by fire of property insured, shall be held and considered to be a liquidated demand against the Company for the full amount of such policy. The provisions of this Article shall not apply to personal property.

FORMS AND ENDORSEMENTS applicable to all Coverage Parts and made a part of this Policy at the time of issue are listed on the attached Forms and Endorsements Schedule CM 8801 11/85.

Countersigned _____    By _____
              Date                        Authorized Representative

# IMPORTANT NOTICE
## (Texas)

### IMPORTANT NOTICE

To obtain information or make a complaint:

You may contact the Texas Department of Insurance to obtain information on companies, coverages, rights or complaints at:

**1-800-252-3439**

You may write the Texas Department of Insurance:

P.O. BOX 149104
Austin, TX 78714-9104
FAX# (512)475-1771

### PREMIUM OR CLAIM DISPUTES:
Should you have a dispute concerning your premium or about a claim you should contact the agent or the company first. If the dispute is not resolved, you may contact the Texas department of Insurance.

### ATTACH THIS NOTICE TO YOUR POLICY:
This notice is for information only and does not become a part or condition of the attached document.

### AVISO IMPORTANTE

Para obtener informacion o para someter una queja:

Puede comunicarse con el Departamento de Seguros de Texas para obtener informacion acerca de companias, coberturas, derechos o quejas al:

**1-800-252-3439**

Puede escribir al Departamento de Seguros de Texas:

P.O. BOX 149104
Austin, TX 78714-9104
FAX# (512)475-1771

### DISPUTAS SOBRE PRIMAS O RECLAMOS:
Si tiene una disputa concerniente a su prima o a un reclamo debe comunicarse con el agente o las compania primero. Si no se resuelve la disputa, puede entonces comunicarse con el Departamento de Seguros de Texas.

### UNA ESTE AVISO A SU POLIZA:
Este aviso es solo para proposito de informacion y no se convierte en parte o condicion del documento adjunto.

GREAT AMERICAN INSURANCE COMPANIES
Subsidiaries of American Financial Corporation
580 WALNUT STREET, CINCINNATI, OHIO 45202

## POLICYHOLDER NOTICE

### (Applicable to Commercial Inland Marine, Boiler and Machinery, and Crime Policies)

NO COVERAGE IS PROVIDED BY THIS POLICYHOLDER NOTICE NOR CAN IT BE CONSTRUED TO REPLACE ANY PROVISION OF YOUR POLICY. YOU SHOULD READ YOUR POLICY AND REVIEW YOUR DECLARATIONS PAGE FOR COMPLETE INFORMATION ON THE COVERAGES YOU ARE PROVIDED. IF THERE IS ANY CONFLICT BETWEEN THE POLICY AND THIS SUMMARY, <u>THE PROVISIONS OF THE POLICY SHALL PREVAIL.</u>

An exclusion has been added to your policy to explicitly state that coverage is not provided for loss caused by a computer's inability, or that of computerized or other electronic equipment, to properly recognize a particular date or time. An example of this is a loss caused by the inability of the computer to recognize the year 2000 (Y2K). However, coverage is provided under certain circumstances: if the computer's inability to recognize a date or time results in a covered cause of loss -- for example, fire -- the loss resulting from that fire will be covered.

0102699

**GREAT AMERICAN INSURANCE COMPANIES**
Subsidiaries of American Financial Corporation
580 WALNUT STREET, CINCINNATI, OHIO 45202

IL 01 71
(Ed. 09 92)

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## TEXAS CHANGES - LOSS PAYMENT

This endorsement modifies insurance provided under the following:

BOILER AND MACHINERY COVERAGE PART
COMMERCIAL CRIME COVERAGE PART
FARM COVERAGE PART – LIVESTOCK COVERAGE FORM
FARM COVERAGE PART – MOBILE AGRICULTURAL MACHINERY
                  AND EQUIPMENT COVERAGE FORM
COMMERCIAL INLAND MARINE COVERAGE PART

### A. LOSS PAYMENT

1. With respect to the **Boiler and Machinery Coverage Part** and **Commercial Crime Coverage Part**, the following conditions are added.

2. With respect to the **Commercial Inland Marine Coverage Part**, the following conditions replace Item E. **LOSS PAYMENT** in the Commercial Inland Marine Loss Conditions.

3. With respect to the **Farm Coverage Part**, the following conditions replace Paragraphs c. and f. of the Loss Payment Condition:

   a. claims handling

   (1) within 15 days after we receive written notice of claim, we will:

   (a) acknowledge receipt of the claim. If we do not acknowledge receipt of the claim in writing, we will keep a record of the date, method and content of the acknowledgement;

   (b) begin any investigation of the claim; and

   (c) request a signed, sworn proof of loss, specify the information you must provide and supply you with the

necessary forms. We may request more information at a later date, if during the investigation of the claim such additional information is necessary.

   (2) we will notify you in writing as to whether:

   (a) the claim or part of the claim will be paid;

   (b) the claim or part of the claim has been denied, and inform you of the reason for denial;

   (c) more information is necessary; or

   (d) we need additional time to reach a decision. If we need additional time, we will inform you of the reasons for such need.

   We will provide notification, as described in (2)(a) through (2)(d) above, within:

   (i) 15 business days after we receive the signed, sworn proof of loss and all information we requested; or

   (ii) 30 days after we receive the signed, sworn proof of loss and all information we re-

Copyright, Insurance Services Office, Inc., 1992
(Page 1 of 2)

IL 01 71 (Ed. 09/92) XS

quested, if we have reason to believe the loss resulted from arson.

If we have notified you that we need additional time to reach a decision, we must then either approve or deny the claim within 45 days of such notice.

b. we will pay for covered loss or damage within 5 business days after:

(1) we have notified you that payment of the claim or part of the claim will be made and have reached agreement with you on the amount of loss; or

(2) an appraisal award has been made.

However, if payment of the claim or part of the claim is conditioned on your compliance with any of the terms of this policy, we will make payment within 5 business days after the date you have complied with such terms.

c. Catastrophe Claims

If a claim results from a weather related catastrophe or a major natural disaster, the claim handling and claim payment deadlines described in a. and b. above are extended for an additional 15 days.

Catastrophe or Major Natural Disaster means a weather related event which is:

(1) declared a disaster under the Texas Disaster Act of 1975; or

(2) determined to be a catastrophe by the State Board of Insurance.

d. The term "business day," as used in this endorsement, means a day other than Saturday, Sunday or holiday recognized by the state of Texas.

B. With respect to the Commercial Inland Marine Coverage Part the following is added:

We will not be liable for any part of a "loss" that has been paid or made good by others.

Copyright, Insurance Services Office, Inc., 1992
(Page 2 of 2)

IL 01 71 (Ed. 09/92) XS

**GREAT AMERICAN INSURANCE COMPANIES**
Subsidiaries of American Financial Corporation
580 WALNUT STREET, CINCINNATI, OHIO 45202

IL 02 88
(Ed. 11 '92)

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## TEXAS CHANGES - CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

BOILER AND MACHINERY COVERAGE PART
COMMERCIAL CRIME COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART

A. The following is added to paragraph 2. of the **CANCELLATION** Common Policy Condition:

We may cancel this policy for any reason except, that under the Texas Insurance Code, we may not cancel this policy solely because the first Named Insured is an elected official.

B. The following condition is added:

**NONRENEWAL**

We may elect not to renew this policy except, that under the Texas Insurance Code, we may not refuse to renew this policy solely because the first Named Insured is an elected official.

Copyright, Insurance Services Office, Inc., 1992

IL 02 88 (Ed. 11/92) XS

0102699

**GREAT AMERICAN INSURANCE COMPANIES** ®
Subsidiaries of American Financial Corporation
580 WALNUT STREET, CINCINNATI, OHIO 45202

IL 09 35
(Ed. 08 98)

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## EXCLUSION OF CERTAIN COMPUTER-RELATED LOSSES

This endorsement modifies insurance provided under the following:

BOILER AND MACHINERY COVERAGE PART
COMMERCIAL CRIME COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
STANDARD PROPERTY POLICY

A. We will not pay for the ("loss") or damage caused directly or indirectly by the following. Such loss ("loss") or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss ("loss") or damage.

  1. The failure, malfunction or inadequacy of:

    a. any of the following, whether belonging to any Insured or to others:

      (1) computer hardware, including microprocessors;

      (2) computer application software;

      (3) computer operating systems and related software;

      (4) computer networks;

      (5) microprocessors (computer chips) not part of any computer system; or

      (6) any other computerized or electronic equipment or components; or

    b. any other products, and any services, data or functions that directly or indirectly use or rely upon, in any manner, any of the items listed in Paragraph A.1.a. of this endorsement;

    due to the inability to correctly recognize, process, distinguish, interpret or accept one or more dates or times. An example is the inability of computer software to recognize the year 2000.

  2. Any advice, consultation, design, evaluation, inspection, installation, maintenance, repair, replacement or supervision provided or done by you or for you to determine, rectify or test for, any potential or actual problems described in Paragraph A.1. of this endorsement.

B. If an excluded Cause of Loss as described in Paragraph A. of this endorsement results:

  1. in a Covered Cause of Loss under the Boiler And Machinery Coverage Part, the Commercial Crime Coverage Part, the Commercial Inland Marine Coverage Part or the Standard Property Policy; or

  2. under the Commercial Property Coverage Part:

    a. in a "Specified Cause of Loss," or in elevator collision resulting from mechanical breakdown, under the Causes of Loss – Special Form; or

    b. in a Covered Cause of Loss under the Causes of Loss – Basic Form or the Causes of Loss – Brbad Form;

  we will pay only for the loss ("loss") or damage caused by such "Specified Cause of Loss," elevator collision, or Covered Cause of Loss.

C. We will not pay for repair, replacement or modification of any items in Paragraph A.1.a. and A.1.b. of this endorsement to correct any deficiences or change any features.

Copyright, Insurance Services Office, Inc., 1998

09 35 (Ed. 08/98) XS

**GREAT AMERICAN INSURANCE COMPANIES**
Subsidiaries of American Financial Corporation
580 WALNUT STREET, CINCINNATI, OHIO 45202

IL 00 17
(Ed. 11 98)

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. CANCELLATION

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. CHANGES

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made part of this policy.

## C. EXAMINATION OF YOUR BOOKS AND RECORDS

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. INSPECTIONS AND SURVEYS

1. We have the right to:

   a. make inspections and surveys at any time;

   b. give you reports on the conditions we find; and

   c. recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. are safe or healthful; or

   b. comply with laws, regulations, codes or standards.

3. Paragraphs 1. and 2. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph 2. of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative

Copyright, Insurance Services Office, Inc. 1998

IL 0017 (Ed. 11/98) XS

(Page 1 of 2)

to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. PREMIUMS

The first Named Insured shown in the Declarations:

1. is responsible for the payment of all premiums; and

2. will be the payee for any return premiums we pay.

## F. TRANSFER OF YOUR RIGHTS AND DUTIES UNDER THIS POLICY

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual Named Insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

**IN WITNESS WHEREOF,** we have caused this policy to be executed and attested, and, if required by state law, this policy shall not be valid unless countersigned by our authorized representative.

Secretary

President

Copyright, Insurance Services Office, Inc. 1998
(Page 2 of 2)

IL 0017 (Ed. 11/98) XS

0102699

**GREAT AMERICAN INSURANCE COMPANIES**
Subsidiaries of American Financial Corporation
580 WALNUT STREET, CINCINNATI, OHIO 45202

**CM 88 01**  (Ed. 11/85)

Policy: TIM 927-36-04   03

## BUSINESSPRO FORMS AND ENDORSEMENTS SCHEDULE

It is hereby understood and agreed the following forms and endorsements are attached to and are a part of this policy:

| Form and Edition | Date Added*<br>or<br>Date Deleted | Form Description |
|---|---|---|
| 1.  CM0001      06/95 | | COMMON INLAND MARINE CONDITIONS |
| 2.  CM0112      10/90 | | TEXAS CHANGES |
| 3.  CM7632      09/93 | | TEXAS IM COMMON DEC |
| 4.  CM7644      12/91 | | CONTR EQUIP DEC SCHEDULED FORM |
| 5.  CM7645      12/91 | | CONTR EQUIP SCHEDULED COV FORM |
| 6.  CM7870      06/92 | | CATERPILLAR FINANCIAL SERVICES |
| 7.  CM7870      06/92 | | FINANCIAL FEDERAL CREDIT, |
| 8.  CM7870      06/92 | | NUECES POWER EQUIPMENT |
| 9.  CM7879      10/92 | | FINANCIAL FEDERAL CREDIT |
| 10. CM8802      11/85 | | ADDITIONAL POLICY CONDITION(S) |
| 11. IL0017      11/98 | | COMMON POLICY CONDITIONS |
| 12. IL0171      09/92 | | TEXAS CHANGES - LOSS PAYMENTS |
| 13. IL0288      11/92 | | TEXAS CHANGES - CANC/NONRENEW |
| 14. IL0935      08/98 | | EXCL - CERTAIN COMPUTER REL LOSSES |

* IF NOT AT INCEPTION

CM 88 01      11/85            (Page   1 of   1)

GREAT AMERICAN INSURANCE COMPANIES
Subsidiaries of American Financial Corporation
580 WALNUT STREET, CINCINNATI, OHIO 45202

CM 00 01
(Ed. 06 95)

# COMMERCIAL INLAND MARINE CONDITIONS

The following conditions apply in addition to the Common Policy Conditions and applicable Additional Conditions in Commercial Inland Marine Coverage Forms:

## LOSS CONDITIONS

### A. ABANDONMENT

There can be no abandonment of any property to us.

### B. APPRAISAL

If we and you disagree on the value of the property or the amount of "loss, " either may make written demand for an appraisal of the "loss." In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of "loss." If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

1. pay its chosen appraiser; and

2. bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

### C. DUTIES IN THE EVENT OF LOSS

You must see that the following are done in the event of "loss" to Covered Property:

1. Notify the police if a law may have been broken.

2. Give us prompt notice of the "loss." Include a description of the property involved.

3. As soon as possible, give us a description of how, when and where the "loss" occurred.

4. Take all reasonable steps to protect the Covered Property from further damage and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limit of Insurance. However, we will not pay for any subsequent "loss" resulting from a cause of loss that is not a Covered Cause of Loss. Also if feasible, set the damaged property aside and in the best possible order for examination.

5. Make no statement that will assume any obligation or admit any liability, for any "loss" for which we may be liable, without our consent.

6. Permit us to inspect the property and records proving "loss."

7. If requested, permit us to question you under oath, at such times as may be reasonably required, about any matter relating to this insurance or your claim, including your books and records. In such event, your answers must be signed.

8. Send us a signed, sworn statement of "loss" containing the information we request to settle the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

9. Promptly send us any legal papers or notices received concerning the "loss."

10. Cooperate with us in the investigation or settlement of the claim.

### D. INSURANCE UNDER TWO OR MORE COVERAGES

If two or more of this policy's coverages apply to the same "loss," we will not pay more than the actual amount of the "loss."

Copyright, Insurance Services Office, Inc., 1994
(Page 1 of 3)

CM 00 01 (Ed. 06/95) XS

## E. LOSS PAYMENT

We will pay or make good any "loss" covered under this Coverage Part within 30 days after:

1. we reach agreement with you;

2. the entry of final judgment; or

3. the filing of an appraisal award.

We will not be liable for any part of a "loss" that has been paid or made good by others.

## F. OTHER INSURANCE

If you have other insurance covering the same "loss" as the insurance under this Coverage Part, we will pay only the excess over what you should have received from the other insurance. We will pay the excess whether you can collect on the other insurance or not.

## G. PAIR, SETS OR PARTS

1. Pair or Set. In case of "loss" to any part of a pair or set we may:

   a. repair or replace any part to restore the pair or set to its value before the "loss"; or

   b. pay the difference between the value of the pair or set before and after the "loss."

2. Parts. In case of "loss" to any part of Covered Property consisting of several parts when complete, we will only pay for the value of the lost or damaged part.

## H. PRIVILEGE TO ADJUST WITH OWNER

In the event of "loss" involving property of others in your care, custody or control, we have the right to :

1. Settle the "loss" with the owners of the property. A receipt for payment from the owners of that property will satisfy any claim of yours.

2. Provide a defense for legal proceedings brought against you. If provided, the expense of this defense will be at our cost and will not reduce the applicable Limit of Insurance under this insurance.

## I. RECOVERIES

Any recovery or salvage on a "loss" will accrue entirely to our benefit until the sum paid by us has been made up.

## J. REINSTATEMENT OF LIMIT AFTER LOSS

The Limit of Insurance will not be reduced by the payment of any claim, except for total "loss" of a scheduled item, in which event we will refund the unearned premium on that item.

## K. TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US

If any person or organization to or for whom we make payment under this insurance has rights to recover damages from another, those rights are transferred to us to the extent of our payment. That person or organization must do everything necessary to secure our rights and must do nothing after "loss" to impair them.

## GENERAL CONDITIONS

## A. CONCEALMENT, MISREPRESENTATION OR FRAUD

This Coverage Part is void in any case of fraud, intentional concealment or misrepresentation of a material fact, by you or any other insured, at any time, concerning:

1. this Coverage Part;

2. the Covered Property;

3. your interest in the Covered Property; or

4. a claim under this Coverage Part.

## B. LEGAL ACTION AGAINST US

No one may bring a legal action against us under this Coverage Part unless:

1. there has been full compliance with all the terms of this Coverage Part; and

2. the action is brought within 2 years after you first have knowledge of the "loss."

## C. NO BENEFIT TO BAILEE

No person or organization, other than you, having custody of Coverage Property, will benefit from this insurance.

## D. POLICY PERIOD

We cover "loss" commencing during the policy period shown in the Declarations.

## E. VALUATION

The value of property will be the least of the following amounts:

1. the actual cash value of that property;

2. the cost of reasonably restoring that property to its condition immediately before "loss"; or

3. the cost of replacing that property with substantially identical property.

In the event of "loss," the value of property will be determined as of the time of "loss."

Copyright, Insurance Services Office, Inc., 1994
(Page 3 of 3)

0102699

**GREAT AMERICAN INSURANCE COMPANIES**
Subsidiaries of American Financial Corporation
580 WALNUT STREET, CINCINNATI, OHIO 45202

CM 76 44  (Ed. 12/91)

Policy:TIM 927-36-04  03

## CONTRACTOR'S EQUIPMENT DECLARATIONS
## SCHEDULED FORM

| NAMED INSURED: BORDER CONTRACTORS, INC. | POLICY PERIOD:<br>08/01/2000 to 08/01/2001 |
|---|---|

| PREMIUM FOR THIS COVERAGE FORM | $ | 7,641.00 |
|---|---|---|

**LIMITS OF INSURANCE**
The most we will pay is:
$611,245 in any one "loss" but not more than the limit of insurance shown opposite each item described below or in the schedule attached.

### SCHEDULE OF COVERED PROPERTY

| ITEM NO. | DESCRIPTION | | LIMIT OF INSURANCE | R.C. |
|---|---|---|---|---|
| 0001 | CATERPILLAR 426C, SN-6XN01663. | | $50,000 | |
| 0002 | 1999 CATERPILLAR BACKHOE LOADER, MODEL #446B; SN-5BL01944. | | $93,821 | |
| 0003 | CATERPILLAR MODEL 950E WHEEL LOADER, SN-22Z4512 | | $58,800 | |
| 0004 | (2) CALDWELL TEA-CUP PIPE CARRIER W/SLINGS MOD PC-1 | VALUED AT $1,000. EACH | $2,000 | |
| 0005 | (1) HONDA WATER PUMP SN-W2BF1102679 | | $600 | |
| 0006 | (1) HONDA WATER PUMP SN-WZBE1187318 | | $600 | |
| 0007 | (1) HONDA GENERATOR SN-3MN005 | | $1,200 | |
| 0008 | (1) DEWALT SKILLSAW SN-DW382160145 | | $150 | |
| 0009 | 1999 C3902X GME TRENCH BOX MODEL-N-816; SN-9902181-2 | | $12,000 | |
| 0010 | 1999 C3542X TRENCH BOX MODEL 820DW; SN-98081189-2 | | $12,000 | |
| 0011 | 1989 CATERPILLAR 966E WHEEL/LOADER, SN-99Y6701 | | $80,657 | |
| 0012 | 2000 LINKBELT MODEL 4300Q HYDRAULIC EXCAVATOR, SN-LE2J0-3448 | | $196,750 | |
| 0013 | 2000 CATERPILLAR 446B BACKHOE LOADER, SN-5BL02169 | | $102,667 | |

**DEDUCTIBLE**
The deductible amount indicated by (X)
( )       % of the amount of insurance on the insured item(s) lost or damaged but not less than
(X)  $        $1,000       ( ) see endorsement attached

| CM 76 44 | 12/91 | (Page 1 of 2 ) |
|---|---|---|

0102699

GREAT AMERICAN INSURANCE COMPANIES
Subsidiaries of American Financial Corporation
580 WALNUT STREET, CINCINNATI, OHIO 45202

CM 76 44   (Ed. 12/91)

Policy:TIM 927-36-04   03

## CONTRACTOR'S EQUIPMENT DECLARATIONS
### SCHEDULED FORM

FORMS AND ENDORSEMENTS applying to this Coverage Part and made part of this Policy at time of issue:
         SEE   CM 88 01   11/85

CM 76 44       12/91            (Page   2 of   2 )

**GREAT AMERICAN INSURANCE COMPANIES**
Subsidiaries of American Financial Corporation
580 WALNUT STREET, CINCINNATI, OHIO 45202

CM 76 45
(Ed. 12 91)

# CONTRACTOR'S EQUIPMENT

## SCHEDULED COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is or is not covered.

Throughout this policy, the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we," "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to paragraphs headed DEFINITIONS.

### A. COVERAGE

We will pay for "loss" to Covered Property from any of the Covered Causes of Loss.

1. **Covered Property**, as used in this Coverage Form means:

   a. your contractor's equipment and tools;

   b. similar property of others in your care, custody or control;

   described in the Declarations.

2. **Property Not Covered**

   Covered Property does not mean:

   a. property while loaned, leased or rented to others, unless you provide the operator;

   b. blue prints, mechanical drawings, plans or specifications;

   c. tires and tubes, unless "loss" is coincidental with other covered "loss;"

   d. aircraft, watercraft, motor vehicles designed for transporting passengers or freight over the highway;

   e. equipment or tools while waterborne, unless Covered Property is on regular ferries or railroad carfloats;

   f. property while underground or underwater;

   g. contraband, or property in the course of illegal transportation or trade.

3. **Covered Causes of Loss**

   Covered Causes of Loss means Risks of Direct Physical "Loss" to the Covered Property except those causes of "loss" listed in the Exclusions.

**4. Coverage Extension**

    **a. Debris Removal**

        (1)  We will pay your expense to remove debris of Covered Property caused by or resulting from an insured peril that occurs during the policy period. The expenses will be paid only if they are reported to us within 180 days of the earlier of:

            (a)  The date of direct physical loss or damage; or

            (b)  The end of the policy period.

        (2)  The most we will pay under this coverage is the lesser of:

            (a)  25% of the applicable Limit of Insurance for direct physical loss to Covered Property; or

            (b)  $25,000.

        The limit of Debris Removal is separate from the Limit of Insurance stated elsewhere in the policy.

        The Coinsurance provision, if any, in this policy does not apply to this additional coverage.

        (3)  The additional coverage does not apply to cost to:

            (a)  Extract "pollutants" from land or water; or

            (b)  Remove, restore or replace polluted land or water.

    **b. Additionally Acquired Property**

        We will insure additional equipment items similar to those scheduled, which you buy or lease "long term," but not beyond:

        (1)  30 days; or

        (2)  the end of the policy period

        whichever occurs first.

        The most we will pay in a "loss" under this Coverage Extension is the lesser of:

        (1)  25% of the policy loss limits; or

        (2)  $150,000

        You must report these items to us within thirty (30) days after you obtain them. Premium will be charged from the date of acquisition. If you fail to report new items within the thirty (30) day period coverage will end automatically at the earlier of:

        (1)  30 days after the date you acquire the property; or

CM 76 45 (Ed. 12/91) XS                (Page 2 of 5)

(2)   the end of the policy period.

The Coinsurance Additional Condition does not apply to this Coverage Extension.

This extension of coverage applies only to equipment which you buy or lease on a "long term" basis.

## B.   EXCLUSIONS

1.   We will not pay for a "loss" caused directly or indirectly by any of the following. Such "loss" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the "loss."

   a.   **Governmental Action**

   Seizure or destruction of property by order of governmental authority.

   But we will pay for acts of destruction ordered by governmental authority and taken at the time of a fire to prevent its spread if the fire would be covered under this Coverage Form.

   b.   **Nuclear Hazard**

   (1)   any weapon employing atomic fission or fusion, or

   (2)   nuclear reaction or radiation, or radioactive contamination from any other cause. But we will pay for direct "loss" caused by resulting fire if the fire would be covered under this Coverage Form.

   c.   **War and Military Action**

   (1)   war, including undeclared or civil war;

   (2)   warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

   (3)   insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.

2.   We will not pay for a "loss" caused by or resulting from any of the following:

   a.   Delay, loss of use, loss of market or any other consequential loss.

   b.   Dishonest acts by:

   (1)   You, your employees or authorized representatives;

   (2)   Anyone else with an interest in the property, or their employees or authorized representatives;

   (3)   Anyone else (other than a "carrier" for hire) to whom you entrust the property.

   This exclusion applies whether or not such persons are acting alone or in collusion with other persons or such acts occur during the hours of employment.

c. Unexplained disappearance or shortage found upon taking inventory.

d. Artificially generated current creating a short circuit or other electric disturbance within Covered Property.

But, we will pay for "loss" caused by resulting fire or explosion.

e. Processing or any work upon property covered.

But, we will pay for "loss" caused by resulting fire or explosion.

f. The weight of the load exceeding the lifting capacity of any equipment. Such lifting capacity shall be stated in the manufacturer's operating specifications for the operating conditions existing at the time of "loss."

3. We will not pay for a "loss" caused by or resulting from any of the following. But if "loss" by a Covered Cause of Loss results, we will pay for that resulting "loss."

a. Gradual deterioration, hidden or latent defects, any quality in the property that causes it to damage or destroy itself, wear and tear, depreciation, corrosion, rust, dampness, cold or heat.

b. Mechanical breakdown or failure of Covered Property.

## C. DEDUCTIBLE

We will pay the amount of the adjusted "loss" in any one occurrence in excess of the Deductible amount shown in the Declarations, up to the applicable Limit of Insurance.

## D. ADDITIONAL CONDITIONS

The following conditions apply in addition to the Commercial Inland Marine Conditions and Common Policy Conditions:

1. **Coverage Territory**

We cover property within:

a. the states of the United States (excluding Alaska);

b. Canada.

2. **Coinsurance**

You must carry sufficient insurance in order to avoid a penalty at the time of "loss." We will pay only the proportion of any "loss" that the applicable Limits of Insurance in the Schedule bears to 80% of the actual cash value of the item(s) involved at the time of "loss." Our payments won't exceed the Limit of Insurance shown in the Schedule for the item.

3. **Impairment of Rights of Recovery**

If you agree before or after a "loss" to waive your rights of recovery against any person or organization responsible for the "loss," we shall not cover your "loss." Nor shall we cover a "loss" when you settle or compromise with others without our consent.

### E. DEFINITIONS

**"Loss"** means accidental loss or damage.

**"Carrier"** means a person or organization who provides motor, rail or air transportation for compensation.

**"Long term"** means twelve (12) consecutive months or more.

**"Pollutant"** means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

10/29/2001  12:01   9564214680   BORDER CONTRACTORS   PAGE  23

0102899

Great American Insurance Companies
Subsidiaries of American Financial Corporation
580 Walnut Street, Cincinnati, Ohio 45202

**CM 78 70   (Ed.06/92)**

Policy: TIM 927-36-04   03

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## LOSS PAYABLE PROVISIONS

## This applies to coverage for Inland Marine CONTRACTOR'S EQUIPMENT

NAME:    CATERPILLAR FINANCIAL SERVICES
         CORPORATION
ADDRESS: 4975 PRESTON PARK, STE 280
         PLANO, TX  75093

Applies to the following listed items only:

| Item No. | Description | Limit of Insurance |
|---|---|---|
| 0001 | CATERPILLAR 426C, SN-6XN01663. | $50,000 |
| 0002 | 1999 CATERPILLAR BACKHOE LOADER, MODEL #446B; SN-5BL01944. | $93,821 |
| 0011 | 1989 CATERPILLAR 966E WHEEL/LOADER, SN-99Y6701 | $80,657 |
| 0013 | 2000 CATERPILLAR 446B BACKHOE LOADER, SN-5BL02169 | $102,667 |

**LOSS PAYABLE**

For Covered Property in which both you and a Loss Payee shown above have an insurable interest, we will:

1. adjust losses with you; and

2. pay any claim for loss or damage jointly to you and the Loss Payee, as interest may appear.

OTHER TERMS REMAIN THE SAME

CM 78 70     06/92          (Page  1 of  1 )

0102699

Great American Insurance Companies
Subsidiaries of American Financial Corporation
580 Walnut Street, Cincinnati, Ohio 45202

CM 78 70 (Ed. 06/92)

Policy: TIM 927-36-04 03

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## LOSS PAYABLE PROVISIONS

### This applies to coverage for Inland Marine CONTRACTOR'S EQUIPMENT

NAME: FINANCIAL FEDERAL CREDIT, INC.
ADDRESS: 1300 POST OAK BLVD., STE 1300
HOUSTON, TX

Applies to the following listed items only:

| Item No. | Description | Limit of Insurance |
|---|---|---|
| 0003 | CATERPILLAR MODEL 950E WHEEL LOADER, SN-22Z4512 | $58,800 |
| 0012 | 2000 LINKBELT MODEL 4300Q HYDRAULIC EXCAVATOR, SN-LE2J0-3448 | $196,750 |

**LOSS PAYABLE**

For Covered Property in which both you and a Loss Payee shown above have an insurable interest, we will:

1. adjust losses with you; and

2. pay any claim for loss or damage jointly to you and the Loss Payee, as interest may appear.

OTHER TERMS REMAIN THE SAME

CM 78 70     06/92          (Page 1 of 1 )

0102699

**Great American Insurance Companies**
Subsidiaries of American Financial Corporation
580 Walnut Street, Cincinnati, Ohio 45202

**CM 78 70**    (Ed. 06/92)

**Policy: TIM 927-36-04   03**

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### LOSS PAYABLE PROVISIONS

### This applies to coverage for Inland Marine CONTRACTOR'S EQUIPMENT

NAME:    NUECES POWER EQUIPMENT

ADDRESS: P. O. BOX 4789
         CORPUS CHRISTI, TX   78469

Applies to the following listed items only:

| Item No. | Description | Limit of Insurance |
|----------|-------------|-------------------|
| 0009 | 1999 C3902X GME TRENCH BOX MODEL-N-816; SN-9902181-2 | $12,000 |
| 0010 | 1999 C3542X TRENCH BOX MODEL 820DW; SN-98081189-2 | $12,000 |

**LOSS PAYABLE**

For Covered Property in which both you and a Loss Payee shown above have an insurable interest, we will:

1. adjust losses with you; and

2. pay any claim for loss or damage jointly to you and the Loss Payee, as interest may appear.

OTHER TERMS REMAIN THE SAME

CM 78 70    06/92    (Page   1 of   1 )

0102699

**GREAT AMERICAN INSURANCE COMPANIES**
Subsidiaries of American Financial Corporation
580 WALNUT STREET, CINCINNATI, OHIO 45202

CM 78 79
(Ed. 10 92)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

### ADDITIONAL INSURED
This applies to coverage for Inland Marine CONTRACTOR'S EQUIPMENT

Name:    FINANCIAL FEDERAL CREDIT

Address: 1300 POST OAK BLVD., STE 1300
         HOUSTON                    TX 77056

Attention:

Applies to any Covered Property in which the above Additional Insured has an interest.

ADDITIONAL INSURED

For Covered Property in which both you and an Additional Insured shown above have an insurable interest, we will:

1.  adjust losses with you; and

2.  pay any claim for loss or damage jointly to you and the Additional Insured, as interest may appear.

**Other Terms Remain The Same**

CM 78 79 (Ed. 10/92) PRO          (Page 1 of 1)

0102699

GREAT AMERICAN INSURANCE COMPANIES
Subsidiaries of American Financial Corporation
580 WALNUT STREET, CINCINNATI, OHIO 45202

CM 88 02 (Ed. 11 85)

## BUSINESSPRO GENERAL ENDORSEMENT

### ADDITIONAL POLICY CONDITION(S)

YOU AGREE TO BRING THIS EQUIPMENT BACK TO YOUR YARD DURING NON-WORKING HOURS OR NO COVERAGE FOR THEFT OR VANDALISM AND MALICIOUS MISCHIEF APPLIES DURING NON-WORKING HOURS.

0102699

GREAT AMERICAN INSURANCE COMPANIES
Subsidiaries of American Financial Corporation
580 WALNUT STREET, CINCINNATI, OHIO 45202

CM 01 12
(Ed. 10 90)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## TEXAS CHANGES

This endorsement modifies insurance provided under the following:

COMMERCIAL INLAND MARINE COVERAGE PART

A. Commercial Inland Marine Loss Condition **B. APPRAISAL** is replaced by the following:

B. **Appraisal**

If we and you disagree on the value of the property or the amount of "loss," either may make written demand, within 60 days after our receipt of a signed, sworn statement of "loss," for an appraisal of the "loss." In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree for 15 days upon such umpire, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of "loss." If they fail to agree, they will submit their difference to the umpire. A decision agreed to by any two will be binding. Each party will:

1. pay its chosen appraiser; and

2. bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

B. Paragraph 8. of Commercial Inland Marine Loss Condition **C. DUTIES IN THE EVENT OF LOSS** is replaced by the following:

8. Send us a signed, sworn statement of "loss" containing the information we request to settle the claim. You must do this within 91 days after our request. We will supply you with the necessary forms.

C. Paragraph 2. of Commercial Inland Marine General Condition **B. LEGAL ACTION AGAINST US** is replaced by the following:

2. The action is brought within 2 years and 1 day after you first have knowledge of "loss."

D. Paragraphs **A.5.a.** and **A.5.b.** of the Coverage Extensions and paragraph **F.2.** of the Definitions in the EQUIPMENT DEALERS COVERAGE FORM are deleted

Copyright, Insurance Services Office, Inc., 1990

CM 01 12 (Ed. 10/90) XS

## GUIDE TO POLICY CONSTRUCTION

A Great American Insurance Company Business policy consists of:

A. A policy Jacket, containing company officers' signatures;

B. A common Policy Declarations;

C. Common Policy Conditions;

D. One or more underlying lines of insurance Policy Declarations;

E. One or more Coverage Parts (each line of insurance is a coverage part) for each line of insurance Declarations.

Each Coverage Part consists of:

1. A line of insurance Conditions form (if applicable);

2. One or more Cause of Loss forms (if applicable);

3. Applicable Endorsements.

F.700308 (6/99)

Property & IM Claims
49 East Fourth Street
Dixie Terminal North Building
Suite 300
Cincinnati, OH 45202-3803
513.287.8277 ph

PO Box 5440
Cincinnati, OH 45202-5440
800 584 0835 toll-free

RECEIVED

AUG 2 7 2001



**GREATAMERICAN.**

INSURANCE GROUP

August 1, 2001

Border Contractors Inc.
28226 Dilworth Road
Harlingen, Texas 78562
ATTN: Darlene

## DECLINATION OF COVERAGE, CERTIFIED MAIL, RETURN RECEIPT REQUESTED

RE: Claim no.          :      571521248
    Insured            :      Border Contractors Inc.
    Date of loss       :      July 12, 2001

Dear Darlene,

On July 13, 2001, we received the above captioned claim. The loss pertains to the theft of a 2000 Cat 446 B Backhoe from your job site located three miles south of US 83.

The above captioned claim was presented for consideration of coverage under policy number TIM 9273604, inception date August 1, 2000, expiration date August 1, 2001. Our policy is written under the **CONTRACTORS EQUIPMENT SCHEDULED COVERAGE FORM (CM7645 ED. 12/91).**

During our investigation, we determined that the backhoe was stolen from the job site after business hours on the date in question. It is clear that the unit in question was not brought back to your main location yard after business hours and that this theft was off premises.

**PLAINTIFF'S EXHIBIT NO. 2**

We now refer you to your policy form (CM8802) ADDITIONAL POLICY CONDITIONS, page 1 of 1:

You agree to bring this equipment back to your yard during non working hours or no coverage for theft or vandalism and malicious mischief applies during non working hours.

Please be advised that we have concluded our investigation of this matter. It is clear that the property in question was taken from a job site away from your storage yard after business hours. It is based on this information that we must respectfully decline any and all coverage with respect to this matter.

Please be advised that this letter does not constitute and is not intended as a waiver of any undisclosed existing or future violations of any other terms of the policy contract. If you currently possess or obtain in the future any information which may have a bearing on our decision, please forward it to us for our review and consideration.

If you have any specific questions or concerns regarding this correspondence, please contact the undersigned at 800-689-0744.

Sincerely,

Ron Henderson, AIC
Claims Specialist

c.c.    Jarrett Insurance Brokers
        10210 N. Central Expressway Suite 500
        Dallas, Texas  75231